FILED

2012 FEB 10  PM 2: 04

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

1  Steve W. Berman
   steve@hbsslaw.com
2  Thomas E. Loeser (Cal. Bar No. 202724)
   toml@hbsslaw.com
3  **HAGENS BERMAN SOBOL SHAPIRO LLP**
4  1918 Eighth Avenue, Suite 3300
   Seattle, WA 98101
5  Telephone: (206) 623-7292
   Facsimile:  (206) 623-0594
6

7  Elaine Byszewski (Cal. Bar No. 222304)
   Elaine@hbsslaw.com
8  **HAGENS BERMAN SOBOL SHAPIRO LLP**
   700 South Flower Street, Suite 2940
9  Los Angeles, CA  90017
   Telephone: (213) 330-7150
10 Facsimile:  (213) 330-7152

11
12 *Attorneys for Plaintiffs*

13               UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15 JON REGO, CAROLINE KHRIPIN,        Case No. CV12 1193-PSG
   RON BIERMANN, SR., LANI and                        (JEMx)
16 TREVER BUTTON, husband and wife,   Case No.
   REBECCA and IAN SCHRADER,
17 husband and wife, STEPHEN          **CLASS ACTION COMPLAINT**
   PUSTELNIK, and all persons similarly
18 situated,

19                      Plaintiffs,

20
                                     JURY TRIAL DEMANDED
21 v.

22 AMERICAN HONDA MOTOR CO.,
   INC.,
23
                       Defendant
24

25

26

27

28

010296-11 501535 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................ 1

II.     FACTUAL ALLEGATIONS .............................................................. 3

III.    JURISDICTION AND VENUE ........................................................ 15

IV.     PARTIES ......................................................................................... 15

        A.     Plaintiffs ............................................................................... 15

               1.     Jon Rego ..................................................................... 15

               2.     Caroline Khripin ........................................................ 16

               3.     Ron Biermann, Sr. ...................................................... 18

               4.     Lani and Trever Button .............................................. 20

               5.     Rebecca and Ian Schrader .......................................... 21

               6.     Stephen Pustelnik ....................................................... 23

        B.     Defendant ............................................................................. 24

V.      CLASS ALLEGATIONS ................................................................. 24

COUNT I:  VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
        (15 U.S.C. § 2301, *et seq.*) ................................................................ 32

STATE LAW COUNTS ............................................................................ 35

ALABAMA ............................................................................................... 35

        COUNT II:  VIOLATION OF ALABAMA DECEPTIVE TRADE
        PRACTICES ACT  (Ala. Code § 8-19-1, *et seq.*) ............................. 35

        COUNT III:  BREACH OF EXPRESS WARRANTY (Ala. Code § 7-2-313). 36

        COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
        MERCHANTABILITY  (Ala. Code § 7-2-314) ................................... 38

        COUNT V:  BREACH OF CONTRACT/COMMON LAW WARRANTY
        (Based On Alabama Law) ..................................................................... 39

ALASKA ................................................................................................... 40

COUNT II:  VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES  AND CONSUMER PROTECTION ACT (Alaska Stat. § 45.50.471, *et seq.*)........................................................40

COUNT III:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (Alaska Stat. § 45.02.314) ........................41

ARIZONA ........................................................................................43

COUNT II:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (Arizona Common Law)............................43

ARKANSAS ........................................................................................44

COUNT II:  ARKANSAS PRODUCTS LIABILITY ACT (Ark. Code Ann. § 16-116-101, *et seq.*)........................................44

COUNT III:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY   (Ark. Code Ann. §§ 4-2-314) ..................46

CALIFORNIA ........................................................................................46

COUNT II:  VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES (Cal. Civ. Code §§ 1793.2(D) & 1791.2)............................................46

COUNT III:  VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY  (Cal. Civ. Code §§ 1792 & 1791.1)........................48

COUNT IV:  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *et seq.*)..........50

COUNT V:  BREACH OF EXPRESS WARRANTY (CAL. COM. CODE § 2313) ........................................................52

COUNT VI:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (CAL. COM. CODE § 2314)........................55

COUNT VII:  BREACH OF CONTRACT/COMMON LAW WARRANTY ........................................................57

COLORADO ........................................................................................57

COUNT II:  VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT  (Col. Rev. Stat. § 6-1-101 et seq.)..................57

COUNT III:  BREACH OF EXPRESS WARRANTY (Col. Rev. Stat. § 4-2-313) ........................................................60

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (Col. Rev. Stat. § 4-2-314)........................62

- ii -

COUNT V:  BREACH OF COMMON LAW WARRANTY
(Based On Colorado Law)............................................................... 63

CONNECTICUT ......................................................................................... 63

COUNT II:  VIOLATION OF CONNECTICUT UNLAWFUL TRADE
PRACTICES ACT  (Conn. Gen. Stat. § 42-110A, *et seq.*) ............................... 63

COUNT III:  BREACH OF CONTRACT  (Based On Connecticut Law) ........ 65

DELAWARE ............................................................................................... 66

COUNT II:  VIOLATION OF THE DELAWARE CONSUMER FRAUD
ACT  (6 Del. Code § 2513, et seq.)................................................... 66

COUNT III:  VIOLATION OF THE DELAWARE DECEPTIVE TRADE
PRACTICES ACT  (6 Del. Code § 2532, *et seq.*) ................................ 67

COUNT IV:  BREACH OF EXPRESS WARRANTY
(6 Del. Code § 2-313)..................................................................... 69

COUNT V:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (6 Del. Code § 2-314) ................................ 71

COUNT VI:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Delaware Law)......................................... 72

DISTRICT OF COLUMBIA .......................................................................... 72

COUNT II:  VIOLATION OF THE CONSUMER PROTECTION
PROCEDURES ACT  (D.C. Code § 28-3901 *et seq.*)........................... 72

COUNT III:  BREACH OF EXPRESS WARRANTY
(D.C. Code § 28:2-313).................................................................. 74

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (D.C. Code § 28:2-314) ............................. 76

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On D.C. Law).............................................. 77

FLORIDA ................................................................................................... 78

COUNT II:  VIOLATION OF FLORIDA'S UNFAIR &  DECEPTIVE
TRADE PRACTICES ACT  (Fla. Stat. § 501.201, *et seq.*)............... 78

COUNT III:  BREACH OF EXPRESS WARRANTY
(Fla. Stat. § 672.313)...................................................................... 79

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Fla. Stat. § 672.314) ................................ 81

- iii -

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Florida Law).............................................. 82

GEORGIA ............................................................................................ 83

    COUNT II:  VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE
TRADE PRACTICES ACT  (Ga. Code Ann. § 10-1-370, *et seq.*) ................... 83

    COUNT III:  VIOLATION OF GEORGIA'S FAIR BUSINESS
PRACTICES ACT  (Ga. Code Ann. § 10-1-390, *et seq.*)................................. 84

    COUNT IV:  BREACH OF EXPRESS WARRANTY
(Ga. Code Ann. § 11-2-313).............................................................. 85

    COUNT V:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Ga. Code Ann. § 11-2-314) ...................... 87

    COUNT VI:  BREACH OF CONTRACT/COMMON LAW
WARRANTY ...................................................................................... 88

HAWAII ............................................................................................... 89

    COUNT II:  UNFAIR COMPETITION AND PRACTICES
(Haw. Rev. Stat. § 480, *et seq.*)....................................................... 89

    COUNT III:  VIOLATION OF HAWAII'S UNIFORM DECEPTIVE
TRADE PRACTICE ACT  (Hawaii Rev. Stat. § 481A, *et seq.*) ...................... 91

    COUNT IV:  BREACH OF EXPRESS WARRANTY
(Hawaii Rev. Stat. § 490:2-313)........................................................ 93

    COUNT V:  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Haw. Rev. Stat. § 490:2-314) ................. 95

    COUNT VI:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Hawaii Law).............................................. 96

IDAHO.................................................................................................. 97

    COUNT II:  VIOLATIONS OF THE IDAHO CONSUMER
PROTECTION ACT  (Idaho Civ. Code § 48-601, *et seq.*) .............................. 97

    COUNT III:  BREACH OF EXPRESS WARRANTY
(Idaho Com. Code § 28-2-313) ...................................................... 100

    COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Idaho Com. Code § 28-2-314)................................ 102

    COUNT V:  BREACH OF CONTRACT/COMMON LAW WARRANTY
(Under Idaho Law) ........................................................................ 104

ILLINOIS............................................................................................ 104

010296-11  501535 V1

COUNT II:  VIOLATION OF ILLINOIS CONSUMER FRAUD AND  DECEPTIVE BUSINESS PRACTICES ACT  (815 Ill. Comp. Stat. 505/1, *et seq*.  and 720 Ill. Comp. Stat. 295/1A).......................... 104

COUNT III:  VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT  (815 Ill. Comp. Stat. 510/1, *et. seq*. and  720 Ill. Comp. Stat. 295/1A) .................................................. 105

COUNT IV:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY   (810 Ill. Comp. Stat. 5/2-314  and 810 Ill. Comp. Stat. 5/2A-212)........................................................ 107

COUNT V:  BREACH OF EXPRESS WARRANTY (810 Ill. Comp. Stat. 5/2-313) .............................................. 107

COUNT VI:  STRICT PRODUCT LIABILITY (DEFECTIVE DESIGN)  (Based On Illinois Law) .............................. 108

COUNT VII:  STRICT PRODUCT LIABILITY (FAILURE TO WARN)  (Based on Illinois Law) ................................ 109

COUNT VIII:  BREACH OF LEASE / CONTRACT  (Based On Illinois Law) ........................................................... 111

INDIANA .............................................................................. 112

COUNT II:  VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT  (Ind. Code § 24-5-0.5-3)................. 112

COUNT III:  BREACH OF EXPRESS WARRANTY (Ind. Code § 26-1-2-313)............................................... 114

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (Ind. Code § 26-1-2-314)....................... 115

COUNT V:  BREACH OF CONTRACT/COMMON LAW WARRANTY  (Based On Indiana Law) ............................. 116

IOWA.................................................................................... 117

COUNT II:  VIOLATIONS OF THE PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT  (Iowa Code § 714H.1, *et seq.*)............... 117

COUNT III:  BREACH OF EXPRESS WARRANTY (Iowa Code § 554.2313)................................................ 120

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY   (Iowa Code § 544.2314) ....................... 122

COUNT V:  BREACH OF CONTRACT/COMMON LAW WARRANTY  (Based On Iowa Law) ................................ 123

- v -

KANSAS ............................................................................................. 124

    COUNT II:  VIOLATIONS OF THE KANSAS CONSUMER
    PROTECTION ACT  (Kan. Stat. Ann. § 50-623, *et seq*.) ............................ 124

    COUNT III:  BREACH OF EXPRESS WARRANTY
    (Kan. Stat. Ann. § 84-2-313) ....................................................... 127

    COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
    MERCHANTABILITY  (Kan. Stat. Ann. § 84-2-314) ................................ 129

    COUNT V:  BREACH OF CONTRACT/COMMON LAW
    WARRANTY  (Based On Kansas Law)....................................................... 130

KENTUCKY ...................................................................................... 131

    COUNT II:  VIOLATION OF THE KENTUCKY CONSUMER
    PROTECTION ACT  (Ky. Rev. Stat. § 367.110, *et seq*.) .............................. 131

    COUNT III:  BREACH OF EXPRESS WARRANTY
    (Ky. Rev. Stat. § 355.2-313) ....................................................... 132

    COUNT IV:  BREACH OF IMPLIED WARRANTIES OF
    MERCHANTABILITY  (Ky. Rev. Stat. § 335.2-314)................................ 132

LOUISIANA....................................................................................... 133

    COUNT II:  LOUISIANA PRODUCTS LIABILITY ACT
    (La. Rev. Stat. § 9:2800.51, *et seq*.) ....................................................... 133

    COUNT III:  REDHIBITION  (LA. Civ. Code Art. 2520, *et seq*.
    and 2545) ....................................................... 135

    COUNT IV:  BREACH OF IMPLIED WARRANTY OF FITNESS
    FOR ORDINARY USE  (La. Civ. Code Art. 2524)........................................ 137

MAINE ............................................................................................. 138

    COUNT II:  VIOLATION OF MAINE UNFAIR TRADE
    PRACTICES ACT  (Me. Rev. Stat. Ann. tit. 5 § 205-A, *et seq*.)................... 138

    COUNT III:  BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY  (Me. Rev. Stat. Ann. tit. 11 § 2-314) ..................... 140

    COUNT IV:  BREACH OF CONTRACT  (Based On Maine Law).............. 141

MARYLAND ...................................................................................... 142

    COUNT II:  VIOLATIONS OF THE MARYLAND CONSUMER
    PROTECTION ACT  (Md. Code Com. Law § 13-101, *et seq*.)...................... 142

- vi -

COUNT III:  BREACH OF EXPRESS WARRANTY
(Md. Code Com. Law § 2-313) .......................................................... 144

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Md. Code Com. Law § 2-314) .............................. 145

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Maryland Law)........................................................ 146

COUNT VI:  STRICT PRODUCTS LIABILITY – DESIGN DEFECT
(Based On Maryland Law) ............................................................................ 147

COUNT VII:  STRICT PRODUCTS LIABILITY – DEFECTIVE
MANUFACTURING  (Based On Maryland Law).......................................... 149

COUNT VIII:  STRICT PRODUCTS LIABILITY –  DEFECT
DUE TO NONCONFORMANCE WITH REPRESENTATIONS
(Based On Maryland Law) ............................................................................ 150

MASSACHUSETTS ................................................................................. 151

COUNT II:  VIOLATION OF THE MASSACHUSETTS
CONSUMER PROTECTION ACT  (Chapter 93A) ....................................... 151

COUNT III:  BREACH OF EXPRESS WARRANTY
(ALM GL ch. 106, § 2-313)........................................................................ 152

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (ALM GL ch. 106, § 2-314) .................................... 154

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Massachusetts Law) .............................................. 155

MICHIGAN .............................................................................................. 156

COUNT II:  VIOLATION OF THE MICHIGAN CONSUMER
PROTECTION ACT  (Mich. Comp. Laws § 445.901, et seq.)...................... 156

COUNT III:  BREACH OF EXPRESS WARRANTY
(Mich. Comp. Laws § 440.2313) ................................................................ 157

COUNT IV:  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Mich. Comp. Laws § 440.2314)............................. 157

MINNESOTA ........................................................................................... 158

COUNT II:  VIOLATION OF MINNESOTA UNIFORM DECEPTIVE
TRADE PRACTICES ACT  (Minn. Stat. § 325D.43-48, et seq.).................. 158

COUNT III:  VIOLATION OF MINNESOTA PREVENTION OF
CONSUMER FRAUD ACT   (Minn. Stat. § 325F.68, et seq.)...................... 160

- vii -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT IV:  BREACH OF EXPRESS WARRANTY
(Minn. Stat. § 325G.19 Express Warranties) .................................................. 161

COUNT V:  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (STRICT LIABILITY)  (Minn. Stat.
§ 336.2-314 Implied Warranty;  Merchantability; Usage Of Trade) .............. 162

COUNT VI:  STRICT LIABILITY (DESIGN DEFECT)
(Based On Minnesota Law).............................................................................. 163

COUNT VII:  STRICT LIABILITY (FAILURE TO WARN)
(Based On Minnesota Law).............................................................................. 164

MISSISSIPPI ............................................................................................................. 166

COUNT II:  MISSISSIPPI PRODUCTS LIABILITY ACT
(Miss. Code Ann. § 11-1-63, *et seq.*) ................................................................ 166

COUNT III:  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY   (Miss. Code Ann. §§ 75-2-314)............................... 168

MISSOURI ................................................................................................................. 168

COUNT II:  VIOLATION OF MISSOURI MERCHANDISING
PRACTICES ACT  (Mo. Rev. Stat. § 407.010, *et seq.*) .................................. 168

COUNT III:  BREACH OF EXPRESS WARRANTY
 (Mo. Rev. Stat. § 400.2-313).......................................................................... 169

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Mo. Rev. Stat. § 400.2-314) ................................... 171

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Missouri Law) ........................................................ 173

MONTANA ................................................................................................................ 173

COUNT II:  BREACH OF EXPRESS WARRANTY
(Mont. Code § 30-2-313)................................................................................. 173

COUNT III:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY   (Mont. Code § 30-2-314)........................................ 175

COUNT IV:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Montana Law) ........................................................ 176

NEBRASKA ............................................................................................................... 177

COUNT II:  VIOLATION OF THE NEBRASKA CONSUMER
PROTECTION ACT  (Neb. Rev. Stat. § 59-1601, *et seq.*) ............................ 177

COUNT III:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Neb. Rev. Stat. Neb. § 2-314) ................................ 178

NEVADA .................................................................................................................. 179

COUNT II:  VIOLATION OF THE NEVADA DECEPTIVE TRADE
PRACTICES ACT  (Nev. Rev. Stat. § 598.0903, *et seq.*) .................................. 179

COUNT III:  BREACH OF EXPRESS WARRANTY
(Nev. Rev. Stat. § 104.2313) ................................................................... 181

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Nev. Rev. Stat. § 104.2314) ............................... 183

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Nevada Law) ....................................................... 184

COUNT VI:  BREACH OF IMPLIED COVENANT OF GOOD
FAITH  AND FAIR DEALING  (Based On Nevada Law) ............................ 185

NEW HAMPSHIRE ................................................................................................. 186

COUNT II:  VIOLATION OF N.H. CONSUMER PROTECTION
ACT  (N.H. Rev. Stat. Ann. § 358A:1, *et seq.*) ...................................... 186

COUNT III:  BREACH OF EXPRESS WARRANTY
(N.H. Rev. Stat. Ann. § 382-A:2-313) ..................................................... 187

COUNT IV:  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (N.H. Rev. Stat. Ann. § 382-A:2-314) .................... 189

COUNT V:  BREACH OF COMMON LAW WARRANTY
(Based On New Hampshire Law) ............................................................... 190

NEW JERSEY ........................................................................................................... 191

COUNT II:  VIOLATION OF NEW JERSEY CONSUMER
FRAUD ACT  (N.J. Stat. Ann. § 56:8-1, *et seq.*) ............................................ 191

COUNT III:  BREACH OF EXPRESS WARRANTY
(N.J. Stat. Ann. § 12A:2-313) .................................................................. 193

COUNT IV:  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (N.J. Stat. Ann. § 12A:2-314) ................................ 194

COUNT V:  BREACH OF CONTRACT (Based On New Jersey Law) ......... 195

NEW MEXICO .......................................................................................................... 196

COUNT II:  BREACH OF EXPRESS WARRANTY
(N.M. Stat. Ann. § 55-2-313) .................................................................. 196

- ix -

COUNT III:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (N.M. Stat. Ann. § 55-2-314) .................................. 198

COUNT IV:  BREACH OF CONTRACT/COMMON LAW WARRANTY  (Based On New Mexico Laws) ................................. 199

COUNT V:  VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT  (N.M. Stat. Ann. §§ 57-12-1, *et seq.*) ............... 200

NEW YORK ................................................................................................ 201

COUNT II:  DECEPTIVE ACTS OR PRACTICES (N.Y. Gen. Bus. Law § 349) ................................................................. 201

COUNT III:  BREACH OF EXPRESS WARRANTY (N.Y. U.C.C. § 2-313) .......................................................................... 203

COUNT IV:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY  (N.Y. U.C.C. § 2-314) ................................ 205

COUNT V:  BREACH OF CONTRACT/COMMON LAW WARRANTY  (Based On New York Law) .......................................... 206

NORTH CAROLINA ................................................................................. 207

COUNT II:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (N.C. Gen. Stat. § 25-2-314) ................... 207

COUNT III:  BREACH OF CONTRACT/COMMON LAW WARRANTY  (Based On North Carolina Law) ......................... 208

NORTH DAKOTA ..................................................................................... 209

COUNT II  BREACH OF EXPRESS WARRANTY (N.D. Cent. Code. § 41-02-30) ................................................. 209

COUNT III  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (N.D. Cent. Code § 41-02-31) ................. 210

COUNT IV:  VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT  (N.D. Cent. Code § 51-15-02) ......... 211

COUNT V:  BREACH OF CONTRACT/COMMON LAW WARRANTY  (Based On North Dakota Law) ............................. 212

OHIO ......................................................................................................... 213

COUNT II:  VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT  (Ohio Rev. Code Ann. § 1345.01, *et seq.*) .......... 213

COUNT III:  VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT  (Ohio Rev. Code Ann. § 4165.01, *et seq.* ......... 214

- x -

COUNT IV:  BREACH OF EXPRESS WARRANTY
(Ohio Rev. Code Ann. § 1302.26, *et seq.* (U.C.C. § 2-313)) ........................... 216

COUNT V:  OHIO BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY STRICT LIABILITY  (Ohio Rev. Code Ann.
§ 1302.27 (U.C.C. § 2-314)) ........................................................ 216

COUNT VI:  OHIO NEGLIGENT DESIGN, ENGINEERING &
MANUFACTURE  (Based On Ohio Law) ..................................... 217

OKLAHOMA .................................................................................... 219

COUNT II:  VIOLATION OF OKLAHOMA CONSUMER
PROTECTION ACT  (Okla. Stat. tit. 15 § 751, *et seq.*) ................. 219

COUNT III:  VIOLATION OF OKLAHOMA DECEPTIVE TRADE
PRACTICES ACT  (78 Okla. Stat. Ann. § 51, *et seq.*) ................... 220

COUNT IV:  BREACH OF EXPRESS WARRANTY
(12A Okla. Stat. Ann. § 2-313) ...................................................... 221

COUNT V:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (12A Okla. Stat. Ann. § 2-314) ................ 223

COUNT VI  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Oklahoma Law) .................................... 224

OREGON ........................................................................................... 225

COUNT II:  VIOLATION OF THE OREGON UNLAWFUL
TRADE PRACTICES ACT  (Or. Rev. Stat. §§ 646.605, *et seq.*) ........ 225

COUNT III:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Or. Rev. Stat. § 72.3140) .......................... 227

PENNSYLVANIA ............................................................................... 228

COUNT II:  VIOLATION OF THE PENNSYLVANIA UNFAIR
TRADE PRACTICES AND CONSUMER PROTECTION LAW
(73 P.S. § 201-1, *et seq.*) ............................................................. 228

COUNT III:  BREACH OF EXPRESS WARRANTY
(13 Pa. Cons. Stat. Ann. § 2313) .................................................. 229

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (13 Pa. Cons. Stat. Ann. § 2314) .............. 231

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Pennsylvania Law) ............................... 232

RHODE ISLAND .............................................................................. 233

- xi -

COUNT II:  VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES  AND CONSUMER PROTECTION ACT (R.I. Gen. Laws § 6-13.1, *et seq.*) ...................................................... 233

COUNT III:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (R.I. Gen. Laws § 6A-2-314).................................. 234

SOUTH CAROLINA ......................................................................... 235

COUNT II:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (S.C. Code § 36-2-314)............................................ 235

COUNT III:  VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT  (S.C. Code Ann. § 39-5-10, *et seq.*) ................. 236

COUNT IV:  VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT  (S.C. Code Ann. § 56-15-10, *et seq.*) ....................... 240

COUNT V:  BREACH OF CONTRACT/COMMON LAW WARRANTY  (Based On South Carolina Law) ............................................ 242

SOUTH DAKOTA ............................................................................ 242

COUNT II:  BREACH OF EXPRESS WARRANTY (S.D. Codified Laws § 57A-2-313) ............................................................ 242

COUNT III:  BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (S.D. Codified Laws § 57A-2-314) ........................ 244

COUNT IV:  VIOLATION OF THE SOUTH DAKOTA  DECEPTIVE TRADE PRACTICES ACT  (S.D. Codified Laws § 37-24-6)...................... 245

COUNT V:  BREACH OF CONTRACT/COMMON LAW WARRANTY  (Based On South Dakota Law) ............................................... 246

TENNEESSEE.................................................................................... 247

COUNT II:  VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT  (Tenn. Code Ann. § 47-18-101, *et seq.*)...................... 247

COUNT III:  BREACH OF EXPRESS WARRANTY (Tenn. Code Ann. § 47-2-313) ............................................................... 248

COUNT IV:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY  (Tenn. Code Ann. § 47-2-314) ................................ 249

TEXAS.............................................................................................. 250

COUNT II:  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT  (Tex. Bus. & Com. Code §§ 17.41, *et seq.*) ................... 250

010296-11  501535 V1

COUNT III:  BREACH OF EXPRESS WARRANTY
(Tex. Bus. & Com. Code § 2.313) ................................................................ 252

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY   (Tex. Bus. & Com. Code § 2.314)......................... 254

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Texas Law)............................................................ 255

UTAH ....................................................................................................................... 256

COUNT II:  BREACH OF EXPRESS WARRANTY
(Utah Code Ann. § 70A-2-313)..................................................................... 256

COUNT III:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Utah Code Ann. § 70A-2-314).............................. 257

COUNT IV:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Utah Law)............................................................. 258

VERMONT................................................................................................................ 259

COUNT II:  VIOLATION OF VERMONT CONSUMER FRAUD
ACT  (Vt. Stat. Ann. tit. 9, § 2451 *et seq.*)................................................. 259

COUNT III:  BREACH OF EXPRESS WARRANTY
(Vt. Stat. Ann. tit. 9A § 2-313)..................................................................... 261

COUNT IV:  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (Vt. Stat. Ann. tit. 9A §2-314)............................... 263

COUNT V:  BREACH OF CONTRACT  (Based On Vermont Law) ........... 264

WASHINGTON ....................................................................................................... 265

COUNT II:  VIOLATION OF THE CONSUMER PROTECTION
ACT  (Rev. Code Wash. Ann. §§ 19.86.010, *et seq.*)...................................... 265

COUNT III:  BREACH OF EXPRESS WARRANTY
(Rev. Code Wash. § 62A.2-313).................................................................... 266

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Rev. Code Wash. § 62A.2-614) ............................ 268

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Washington Law)................................................. 269

WEST VIRGINIA .................................................................................................... 270

COUNT II:  VIOLATIONS OF THE CONSUMER CREDIT
AND PROTECTION ACT  (W. Va. Code § 46A-1-101, *et seq.*)................... 270

010296-11  501535 V1

COUNT III:  BREACH OF EXPRESS WARRANTY
(W. Va. Code § 46-2-313).................................................274

COUNT IV:  BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY  (W. Va. Code § 46-2-314).......................................276

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY/BREACH  OF DUTY OF GOOD FAITH AND
FAIR DEALING  (Based On West Virginia Law).........................................277

WISCONSIN ..............................................................................................278

COUNT II:  VIOLATIONS OF THE WISCONSIN
DECEPTIVE TRADE PRACTICES ACT  (Wisc. Stat. § 110.18)...............278

COUNT III:  BREACH OF EXPRESS WARRANTY
(Wisc. Stat. § 402.313).................................................................280

COUNT IV:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Wisconsin Law) .......................................282

WYOMING ...............................................................................................283

COUNT II:  VIOLATION OF THE WYOMING CONSUMER
PROTECTION ACT  (Wyo. Stat. §§ 45-12-105 *et seq.*) ...............283

COUNT III:  BREACH OF EXPRESS WARRANTY
(Wyo. Stat. § 34.1-2-313).............................................................285

COUNT IV:  BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY  (Wyo. Stat. §§ 34.1-2-314) ......................286

COUNT V:  BREACH OF CONTRACT/COMMON LAW
WARRANTY  (Based On Wyoming Law) .......................................287

COUNT VI:  BREACH OF IMPLIED COVENANT OF GOOD
FAITH  AND FAIR DEALING  (Based On Wyoming Law).....................288

PRAYER FOR RELIEF .............................................................................290

DEMAND FOR JURY TRIAL ..................................................................291

- xiv -

Plaintiffs, John Rego, Caroline Khripin, Ron Biermann, Sr., Lani and Trever Button, Rebecca Schrader, and Stephen Pustelnik, on behalf of themselves and all others similarly situated, allege the following on information and belief, except as to themselves where such facts are alleged on personal knowledge.

## I.   INTRODUCTION

1.      This class action seeks to redress defects in the Integrated Motor Assist (IMA) system in 2006-2008 Honda Civic Hybrids and enforce the express and implied warranties that Honda provided with the sale of these vehicles.

2.      The defect involves premature deterioration of the IMA batteries (the "IMA Battery Defect"). It manifests as erratic performance and safety issues, including loss of power, sluggishness, inability to accelerate from a stop, inability to drive uphill, failure to start after being turned off, total failure to deliver adequate power to the wheels, and poor fuel economy. Because the symptoms are erratic, and often non-detectable through the diagnostic systems that Honda provides to its dealers, however, owners who complained to their Honda dealership of these symptoms were frequently told that there was nothing wrong with their car.

3.      The IMA Battery Defect was, however, well known to Honda. By no later than July 30, 2009, it issued its first Service Bulletin on the subject.  On or about July 23, 2010, it sent owners of affected vehicles, identified by Vehicle Identification Number (VIN), a recall notice to install software it designed to address the problem. Subsequent software updates, installed in connection with routine maintenance, and described as non-recall "improvements," have followed.

4.      These software installations do not solve the IMA Battery Defect or satisfy Honda's warranty obligations.

- 1 -

5.     First, it does not appear that the new software effectively resolves the acute power reduction problems afflicting these vehicles: owners report power reduction problems occurring after the software installation as well as before. Because Honda issued its latest service bulletin on the subject in July of 2011, and revised it in January of 2012, it is impossible at this time to gauge the degree to which software may resolve the acute and dangerous power reduction problems resulting from the IMA battery defect.

6.     Second, regardless of whether the software can ultimately solve the *acute* power reduction problems, it cannot satisfy Honda's warranty obligations. Honda admits the problem is "prematurely deteriorating" IMA batteries, which are covered by an express warranty of no less than 8 years/80,000 miles. The software seeks to extend the life of the IMA batteries by causing the affected vehicles to chronically use them less, which inherently diminishes fuel economy and performance.  The concept behind the Honda Civic hybrid is to conserve friction energy that is otherwise lost during driving and store it in the IMA battery which, in turn, powers an electric motor that allows the hybrid version (with a tiny gas engine) to perform comparably to the conventional version (with its full-size engine). The very nature of the software updates is to cause the car to use and cycle the IMA battery less, which means using the IMA motor less, which inherently reduces fuel economy and performance.

7.     Affected Civic hybrid owners paid up to $5,000 more to purchase the hybrid over the same model Civic with a conventional gasoline motor. They obviously did so solely to obtain the benefits of fuel efficiency that the hybrid version offered.  Honda's purported software solution effectively de-tunes the Civic Hybrid to get roughly conventional gas engine fuel economy combined with sub-par driving characteristics.  This does not satisfy Honda's warranty obligations. In

- 2 -

reality, the software updates seem little more than an attempt by Honda to postpone and eliminate its warranty obligation by preserving some operational power in the defective IMA batteries until after its warranty obligations expire.

## II.    FACTUAL ALLEGATIONS

8.    From its introduction in 2002, until the end of January 2009, Honda sold 191,465 Honda Civic Hybrid vehicles.[1]  The Civic Hybrid is the second best-selling hybrid car in the U.S.[2]  As of the end of January 2009, the total global sales of all Civic Hybrids exceeded 255,000.

9.    Defendant American Honda Motor Co. ("Honda") sold approximately 95,123 model year 2006-2008 Honda Civic Hybrids ("Defective Hybrid") throughout the United States.

10.    The Defective Hybrids are powered by a hybrid gas-electric drivetrain. It is composed of a small (1.3 liter) gasoline engine that works in conjunction with an electric motor that runs off the IMA batteries.  The vehicle is able (when operating as designed) to obtain high mileage because friction energy (caused, for example, by braking or using the engine to decelerate) is captured and stored in the IMA battery, then reused in the form of "IMA assist" in situations where high gasoline usage would otherwise be required, such as accelerating.  Thus (when operating as designed), the tiny 1.3 liter gasoline engine on the Civic Hybrid, coupled with the IMA system's electronic motor, produces performance

---

[1] *See* http://world.honda.com/news/2009/4090218Hybrid-Vehicles/.

[2] *See* http://www.afdc.energy.gov/afdc/data/vehicles.html.  Follow link to "HEV Sales by Model" Excel spreadsheet.

- 3 -

characteristics comparable to the larger gasoline-only engine in such as the gasoline motor version of the Honda Civic.

11.     Further, when operating as designed, in order to preserve fuel the gasoline engine shuts off automatically when the vehicle is stopped temporarily, such as at a traffic light or stop sign.  When this "auto-stop" occurs, the comfort and safety features of the Civic Hybrid (such as brakes, lights and air conditioning) are all powered solely by the vehicle's batteries.

12.     The IMA batteries in the affected vehicles are defective because, as Honda admits, they are subject to "premature deterioration," which results in erratic performance, severe loss of power and a drastic increase in the use of the gasoline engine without IMA assist.  Increased use of the gasoline engine without IMA assist results in a drastic decrease in the fuel efficiency and power of the Defective Hybrid. Often, it causes the Defective Hybrid to stop working altogether.

13.     Honda vehicles, including the Defective Hybrids, are equipped with a computer that can provide Diagnostic Test Codes ("DTC") to reveal the cause of malfunctions in the operation of the vehicle. Frequently, there is no DTC associated with the related failures that Defective Hybrid owners have reported that result from IMA battery deterioration.  As a result, when a Defective Hybrid owner presents their car to a Honda dealer after experiencing loss of power, loss of mileage, or complete failure to operate, the dealer will not do any work on the malfunctioning vehicle because the onboard diagnostics do not register a DTC error.

14.     Honda warranted that the IMA batteries in the Defective Hybrids worked correctly and would last for years.  In fact, the Civic Hybrid carries an eight-year/80,000 mile warranty that includes the IMA battery nationwide, and for

- 4 -

California, New York, Maine, Vermont, Massachusetts and Connecticut, the warranty is 10 years/150,000 miles.

15.     After receiving numerous complaints from Defective Hybrid owners regarding the IMA batteries, on July 30, 2009, Honda issued Service Bulletin ("SB") 09-058, which was titled: "Low-Charged IMA Battery Causes Low Power When Accelerating From a Stop."  A true and correct copy of SB 09-058 is attached to this complaint as Exhibit A.

16.     SB 09-058 applies solely to the Defective Hybrid.  It describes the "symptom" as follows:  "The vehicle has low power when accelerating from a stop (generally up to 15 mph) with the charge level indicator showing less than half charged.  The symptom becomes worse with the air conditioning on."  *See* Ex. A.

17.     Under "corrective action," SB 09-058 required dealers to:

> Verify the customer complaint and, if needed, update the IMA battery software, the PGM-FI software, and the A/T (CVT) software.
>
> NOTE:  This new software increases the rate of charge and will prevent auto stop if the IMA battery is low.  It will improve energy available for acceleration, but will not prevent a total loss of power from the IMA battery in all cases.

18.     The "auto stop" feature that the new software prevented was one way that the Defective Hybrid obtained high miles-per-gallon ratings.  When functioning as intended, the Defective Hybrid would save fuel by turning the gasoline motor off when the car was idling, for example, at a stop light or in stop-and-go traffic.

19.     SB 09-058 did not fix, repair or replace the prematurely deteriorating IMA batteries in the Defective Hybrid.  It reduced the efficiency of the vehicles by

- 5 -

restricting the auto stop feature and, as stated, it did not prevent "a total loss of power from the IMA battery in all cases."

20.     Owner complaints continued and on July 23, 2010, Honda issued a second Service Bulletin related to the IMA battery defect, No. 10-034, and associated recall of the Defective Hybrids for the installation of a software update designed to address the problem (the "Software Update").  A true and correct copy of SB 10-034 is attached to this complaint as Exhibit B.

21.     SB 10-034 is titled "Product Update: New Software to Help Prevent IMA Battery Deterioration."  It applies to all 2006-2008 Honda Civic Hybrid vehicles.  *See* Ex. B.  It required dealers to install a "Software Update" into all customer owned Defective Hybrid presented for service and required the Software Update to be installed in all Defective Hybrids in dealer inventory.

22.     Under "Background" SB 10-034 states:

> American Honda is announcing a product update to help prevent IMA battery deterioration.
>
> Frequent stop-and-go driving with A/C use, especially during warm weather, can keep the IMA battery in a low state-of-charge (SOC).  Over time, this may cause battery deterioration and eventual failure.[3]

23.     Under "corrective action" SB 10-034 states:

> Update the PGM-FI software and the IMA battery software with the HDS.  Then, if needed, update the A/T (CVT) software.
>
> NOTE: **This software update is needed even if the vehicle was repaired using Service Bulletin 09-058,**

---

[3] It bears noting that "stop-and-go driving with A/C use…during warm weather" describes precisely a typical commuter's daily travel, especially those in California and most states for the majority of the year.  It is exactly the kind of use that anyone would have expected the Defective Hybrid to excel at.  Instead, this quite normal driving is leading—as Honda admits—to the early deterioration of the IMA battery.

- 6 -

*Low-Charged IMA Battery Causes Low Power When Accelerating*.  As with the previous software update, the new software increases the IMA battery rate of charge, which helps to prevent early battery deterioration.

Ex. B (emphasis in original).

24.     Under "Repair Procedure" SB 10-034 explains:

NOTE:  After you do the software update(s), the IMA system will have the following differences.  All of them are normal operating characteristics:

- When at an idle stop, the engine restarts sooner.  It also now restarts with only two bars displayed on the IMA battery level gauge.

- Even with up to four bars displayed on the IMA battery level gauge, auto idle stop may not occur.

- The IMA system reserves battery power to ensure enough power is available to start the vehicle from a stop and for initial acceleration.  This reduces the IMA assist as the vehicle speed increases.  This change increases the battery's stored energy and overall performance.

- The IMA battery level gauge more accurately indicates the battery's state-of-charge.  Customers will also notice that the level bars stay in the middle of the gauge much longer.

25.     Quite obviously, the new "normal operating characteristics" described in SB 10-034 will significantly alter the performance of the Defective Hybrid.  As noted, the "engine starts sooner" and "idle stop may not occur."  Each of these mean that the gasoline engine is running longer, thus fuel efficiency is necessarily decreased.  The Software Update "reduces the IMA assist as the vehicle speed increases."  Less IMA assist means there is less power going to the wheels from the electric engine—slower acceleration—and the undersized 1.3 liter gasoline engine has to work harder—lower fuel efficiency.  Finally, Honda admits that the Software Update—without actually changing the battery hardware itself—changes how the

- 7 -

Defective Hybrid computer reports the state-of-charge of the IMA batteries. For example, a battery reading 35% useable capacity before the update may read 75% useable capacity after the update notwithstanding that no improvement has been made to the battery itself.

26.     SB 10-034 contained an example of the letter Honda sent to all Defective Hybrid owners beginning in or about August, 2010. Honda admits that the IMA battery is deteriorating and failing "before its normal usable life is reached." The letter stated:

> Dear Civic Hybrid Owner:
>
> This letter is to notify you of a potential problem with your vehicle and what you should do to resolve it.
>
> **What is the problem?**
>
> Your vehicle's integrated motor assist (IMA) battery may deteriorate and eventually fail before its normal usable life is reached. Frequent stop-and-go driving with A/C use during warm weather speeds up the IMA battery deterioration. **To help prevent early IMA battery deterioration, a software update is needed for the IMA battery.**

(Emphasis in original.)

27.     The example letter then notes:

> After your vehicle is updated, you may notice one or more of the following changes to the IMA system. All of them are normal, and will greatly improve the life of the IMA battery:
>
> - When the vehicle is in idle auto stop, the engine restarts sooner. It also now restarts with only two bars displayed on the IMA battery level gauge.
>
> - Even with up to four bars displayed on the IMA battery level gauge, auto idle stop may not occur.
>
> - To ensure there is plenty of power for engine starting and accelerating from a stop, the IMA system reserves more battery power. This reduces the IMA assist as the vehicle speed increases.

- 8 -

- The IMA battery level gauge more accurately indicates the battery's state-of-charge. You will also notice that the level bars stay in the middle of the gauge much longer.

28.      Rather than actually repair or replace the faulty IMA batteries in a Defective Hybrid—which is what Honda promises in its warranty that it will do—Honda is instead installing the Software Update. The Software Update (which on information and belief is irreversible) actually renders the Defective Hybrid even less efficient and less powerful (by reducing the draw on the IMA batteries and increasing use of the gasoline engine) and causes the diagnostic controller in the Defective Hybrid to report that the IMA batteries are in better condition than was reported prior to the Software Update. Importantly, the software update actually *does nothing to the faulty IMA batteries themselves*.

29.      As a result of press and other reports concerning the further decreases in efficiency and power caused by the Software Update, some Defective Hybrid owners who have experienced significant IMA battery deterioration and failures, including Plaintiff Ron Biermann, Sr., have refused installation of the Software Update.

30.      As reports of the IMA Battery Defect and Defective Hybrids became widespread, owners' complaints and experiences began to appear on websites, blogs and online communities. Examples of such postings, from throughout the United States, include the following:[4]

a) From a Defective Hybrid owner in Salem, Alabama:

I was getting over 50MPG before Honda reprogrammed both my hybrids. Now if lucky I may get them up and

---

[4] The statements are copied verbatim.

- 9 -

running. The reprogramming not only cause me to get less MPG but also cause issues with the IMA battery and standard 12v battery and cause deterioration of the whole electrical system that did not exist. Then they told me to get lost.

b)  From a Defective Hybrid owner in Avondale, Arizona:

My 2007 Hybrid Civic was only getting 30mpg and it became unsafe to drive after the update that Honda applied to my car. I almost got arrested when, after countless times trying to get Honda to fix my car, I put a sign in my windshield that warned people how bad the hybrids were and Parked it on the honda lot. I finally sold my gas guzzling, unsafe Civic and bought a Prius which is Heaven sent.

c)  From a Defective Hybrid owner in Carlsbad, California:

Fuel economy is nowhere near what we were told it would be. Now Honda wants to teach me how to drive it to be more fuel efficient? Funny, my Prius doesn't require instructions like that to reach its advertised mileage. Plus, I believe Honda has been working to cover up this flaw for a long time through software updates.

d)  From a Defective Hybrid owner in Elk Grove, California:

I have a 2007 HCH. Getting 30 mpg at best plus with the software update, this car is not safe to drive.

e)  From a Defective Hybrid owner in Folsom, California:

I have a 2007 Honda Civic Hybrid that averages 32 mpg after the computer upgrade (downgrade). This is the first Honda I have ever owned, and the worst car I have ever owned.

f)  From a Defective Hybrid owner in Laguna Niguel, California:

I have never gotten the claimed 50 mpg. Am getting up to 34 mpg. That is a big difference and to know that Honda recalled and reprogrammed the software to use the elec battery less and the gas more so that the battery would last longer is in my opinion deceitful and fraudulent.

g)  From a Defective Hybrid owner in North Hollywood, California:

I paid thousands of dollars more than a gas powered Civic for the hybrid in 2007 and average around 30mpg. The

- 10 -

pick-up is also lousy, which makes merging onto the freeways in L.A. an adventure.

h) From a Defective Hybrid owner in Reseda, California:

Getting 34 MPG on city and very slow acceleration, some times dangerous, constant "drops" of battery charge. No IMA light on, Honda says noting wrong with the car. Car was doing 45 MPG+ easily before.

i) From a Defective Hybrid owner in San Jose, California:

My 2008 HCH averages 35 MPG, not really close to the advertised MPG. And, after the reprogramming of the IMA computer back in June 2011, the car lacks power, and I often have to rev the engine higher to get the car to move like it did when I purchased it in 2008. While driving a slight incline, I had to wave cars past me because I wasn't getting up to speed fast enough!.

j) From a Defective Hybrid owner in Sherman Oaks, California:

I was not told in the letter of August 2010 that the software update would greatly reduce my MPG from 45MPG to 34MPG Avg. My driving habits did not change but that is what I am being told by Honda.

k) From a Defective Hybrid owner in Evergreen, Colorado:

After reprogramming, I lost at least 5 mpg and now have virtually no battery assist. Car no stutters during left turns from a dead stop and is dangerous to drive.

l) From a Defective Hybrid owner in Orlando, Florida:

This is fraud by Honda ever since Honda did an update on the my cards computer my gas milage is 32 this crazy !!!

m) From a Defective Hybrid owner in Rockmart, Georgia:

I owned a civic and put more miles on it than the average driver and so my battery started deteriorating sooner than the recall for software update was available. I went on and traded it in because it was dangerous to drive. On interstate twidce when car wouldn't go over 20 mph.

n) From a Defective Hybrid owner in Kailua, Hawaii:

Since the "software update" the mileage has gone way down - we are lucky to get 36 mpg with our 2006 Hybrid. If we use the a/c it's more like 32 mpg. You have to ask

- 11 -

how is that any different from a regular civic? Before the update, we used to get 42 mpg with the a/c running. We should have bought a Prius.

o) From a Defective Hybrid owner in Chicago, Illinois:

My wife and I have a 2007 Honda Civic Hybrid (52k miles) that now, after the Honda installed software update, I am lucky to get 31mpg on the highway/27mpg in the city. It makes me SICK that Honda can get away with this kind of nonsense. Even when the car was brand new (and pre-update) I would only get 40mpg highway/36 city. The update ruined everything and now my battery meter goes up and down randomly. I am lucky to have both the IMA and check engine light off at the same time these days. I hate the car and hate Honda even more. Good luck getting my business ever again, Honda. I won't even buy a lawn mower from you after this sea of lies and customer betrayal.

p) From a Defective Hybrid owner in Cobdin, Illinois:

I have a 2006 Honda Hybrid. After the software update, I went from around 40mpg to the low 30s. The car has no power, and I really have to be careful when I pass another car on the highway. This is not the car I spent extra money on to save fuel and try and be a responsible "green" person. I'm very angry about it.

q) From a Defective Hybrid owner in Olathe, Kansas:

My 2007 Honda Civic Hybrid was suppose to get 51 MPG. When new, the car got around 42-43 MPG. After the software update, I now get around 35 MPG and lost performance. This car is dangerous! The amount of power is unpredictable. With a couple of large passengers, you take your life in your own hands trying to cross a busy intersection. I can't believe this car is allowed on the road!

r) From a Defective Hybrid owner in Monrovia, MD:

Since the "software update" the battery is constantly recalibrating. Even at a full charge, after just a few hours since stopping it will go back into recharge mode resulting in poor acceleration mpg in the 30s.

s) From a Defective Hybrid owner in Newton, North Carolina:

- 12 -

My 2007 Honda Hybrid gas mileage was around 40 miles per gallon but has steadily worsened and since this software UPGRADE is down to 35 miles per gallon.

t) From a Defective Hybrid owner in Waxhaw, North Carolina:

I have a 2008 HCH. I am extremely creful with my driving style to maximize fuel economy.  At first, the car had mixed mileage about 48 mpg, over 50 mpg on the highway when I held it consistently at or below 61 mph. I have maintained it religiously, at the Honda dealership. I mentioned the problem at each visit to the service deprtment, but never was given more than a nod or any advice. The mileage got noticeably worse late in '10.. I recently asked the service rep at the dealership about the battery life, software upgrade and mileage; he said Honda upgraded the software to save on replacing the IMA batteries after a few years, . He said the battery assist now kicks in later and less than it did before. I now get 39 mpg, and dropping. I bought this retirement car, expecting to go for 20 years. I am losing over $300/year in gas, over $36,000 for the life of the car.

u) From a Defective Hybrid owner in Portland, Oregon:

I bought my car as an environmentalist and am beyond dismayed that Honda issued a software update reducing my mileage to 32 mpg so that the hybrid battery will be more likely to fail after the warranty expires. This car will not have the lifespan of a regular honda - really upsetting as I bought the car expecting it be Earth-friendly

v) From a Defective Hybrid owner in Fort Mill, South Carolina:

After the software update, our 06 HCH performed less well, with notably less acceleration, and regenerative braking and fewer auto shutdowns. Our mileage decreased slightly, but my main concern is that the car just doesn't drive as well as it did before the update. It's frustrating to frequently lose the extra horsepower from the IMA assist or not recharge the battery when decelerating. The software update may have improved battery life, but has significantly degraded the vehicle.

w) From a Defective Hybrid owner in Round Rock, Texas:

I owned a 2006 Civic hybrid and had the same issues listed here (low MPG, low power, power drop outs). I sold the car because it is terrible car when the battery drops out.

- 13 -

YOU WILL get run over when the IMA drops out and leave you with no power. What does Honda say? Nothing wrong, drive better... blah blah blah. They should admit their mistakes and be held accountable!

x) From a Defective Hybrid owner in Round Hill, Virginia:

I have a 2006 Honda that was reprogrammed and lost a significant amount of MPG. Honda told me it was working "as designed."

y) From a Defective Hybrid owner in Burlington, Vermont:

I never received the 40-45 mpg my sticker said on my 2008 HCH. Having paid some $4k more for the vehicle, I expected to receive a benefit at the pump. My car usually would average 37 mpg with 75% highway.

Due to the lower than expected mileage, when Honda offered a MANDATORY firmware recall that CLAIMED to enhance performance I was excited. Since then I consistently get 28-29 mpg with the same driving conditions. The resale of my car has dropped (now only $1k more than a standard Civic). Furthermore, the car is incredibly sluggish now - going from standstill on a hill is very dangerous as it takes a full second for the car to really move.

Honda lied about the recall - it limited the car's usage of the battery. My battery charges constantly to half full and rarely discharges. It nearly never auto-stops now. I'm out the $3k difference between what I paid extra for my HCH, the interest on the $3k, my time dealing with this and the extra gas. The extra gas is not paltry either - assuming a 50/50 split between pre/post firmware mpg, this works out to ~570-735 gallons less than the minimum 40-45 mpg on the sticker for my almost 60k miles driven.

All of this could have been fixed with a proper battery and reverted firmware -but Honda took the low road and fleeced me instead.

z) From a Defective Hybrid owner in Seattle, Washington:

My 2006 Honda Civic Hybrid got great gas mileage to begin with, but after the first year or two, it got worse and worse. The recent software upgrade only made it even worse. I typically average around 30mpg, and unfortunately, I now feel it was not worth the significantly

- 14 -

higher price I paid for the hybrid model (my mom gets better gas mileage in her non-hybrid Civic).

31.     On information and belief, the IMA battery defect renders the Defective Hybrids unreliable and prevents them from operating as represented and warranted regardless of whether the Software Update is installed or not.

32.     On information and belief, Honda's use of the Software Update is an attempt to postpone or eliminate its costly obligations under its express and implied warranties and to conceal the true deteriorated state of the IMA batteries in Defective Hybrids by causing its DTC equipment to read their "useable capacity" differently.

### III.    JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

34.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and Defendant has caused harm to class members residing in this District.

### IV.    PARTIES

A.    **Plaintiffs**

1.    **Jon Rego**

35.     Jon Rego is a resident and citizen of Clayton, California.  Mr. Rego purchased his 2006 Civic Hybrid in December 2005.  From the outset, Mr. Rego

- 15 -

experienced sluggishness in his Defective Hybrid and was only able to get 40-41 mpg instead of the 50 mpg that he was told he would get.  Mr. Rego was led to believe that the sluggishness he experienced was a by-product of the high mpg he was getting.  When he discussed the mpg only being 40-41, Mr. Rego was told this was normal for the Civic Hybrid.

36.     When Mr. Rego complained to the Honda dealership about the sluggishness of his car, he was told that it was operating normally and that if he wanted additional tests done anyway, he would have to pay $200 for the technician time to test his car.

37.     When Mr. Rego received a letter from Honda advising him to bring his Defective Hybrid in for service to the IMA system, he did as he was instructed.  His dealership installed the Software Update.  Immediately after the Software Update, Mr. Rego experienced an even further decline in efficiency and increase in sluggishness.  Mr. Rego's mileage dropped to about 37 mpg and he noted the gasoline engine ran more and the IMA assist engaged less.

38.     Mr. Rego again complained to the Honda dealership and he was again told that his Defective Hybrid was operating normally.  The dealership refused to further diagnose Mr. Rego's car unless he paid a $200 fee for the inspection.

**2.     Caroline Khripin**

39.     Plaintiff Caroline Khripin is a resident and citizen of Maryland.  She purchased her 2007 Civic Hybrid in February 2007 from Oursman Honda in Laurel, MD. Initially, the vehicle worked reasonably well but it got nowhere near the 50+ mpg that Honda advertised.  Ms. Khripin was able to get about 44 mpg.

- 16 -

40.     Over time, the fuel efficiency of the Defective Hybrids dropped.  By the summer of 2008, the mpg had fallen to about 38 mpg, and an additional problem appeared:  the car would sometimes have no power for acceleration. This problem was intermittent and Ms. Khripin was not informed of any available repair.

41.     In the summer of 2010, Ms. Khripin was sent notice about the Software Update that was supposed to repair a defect in the IMA system.  Ms. Khripin followed Honda's instructions and took her car into her Honda dealer for service.

42.     After the Software Update was installed, Ms. Khripin's mileage immediately fell to about 32 mpg.  Further, the electric motor assist no longer operated when the battery was at or below 4 units of charge (out of 10).  In addition, the battery charge indicator began to behave erratically.  For example, the charge would decrease while the battery was charging.

43.     Ms. Khripin's Defective Hybrid would suddenly loose acceleration power if the indicator dropped to zero while driving. This exposed Ms. Khripin to dangerous situations on the road, especially while making left turns.  Honda offered no solutions to the defects in Ms. Khripin's Defective Hybrid.

44.     In addition to the loss of power, erratic operation and safety issues, Ms. Khripin had to buy extra gas for her Defective Hybrid because of low mileage.  In the approximately 20,000 miles she has driven since the Software Update, the drop in fuel efficiency from 38 mpg to 32 mpg has caused Ms. Khripin to purchase an additional 99 gallons of gas.  Factoring her fuel costs from the initial drop from 44 mpg to 38 mpg and then to 32 mpg more than doubles that loss.

- 17 -

**3.     Ron Biermann, Sr.**

45.     Plaintiff Ron Biermann, Sr. is a resident and citizen of North Carolina. He owns a 2006 Honda Civic Hybrid, which he purchased new on January 9, 2006. Mr. Biermann purchased the hybrid instead of other vehicles he was considering because he was as particularly interested in owning a car that obtained high miles per gallon and was therefore more environmentally friendly.

46.     Mr. Biermann was initially pleased with the performance and efficiency of his hybrid.  In North Carolina, he rarely used the air conditioning and found his mileage approached, and sometimes even exceeded, the 50 mpg that he expected he would get.

47.     As time passed, the performance of Mr. Biermann's Defective Hybrid began to deteriorate.  The IMA system began to regenerate ("regen") about once a week, where the IMA battery power indicator would drop to two bars (out of 10) and slowly creep up with the gasoline engine always running.  During the regen, there would be no IMA assist resulting in tremendous sluggishness and loss of fuel efficiency.  In addition, the brakes became harder to depress and did not work as well.

48.     In 2010, Mr. Biermann and his wife took a trip to Arizona.  As they drove through warmer climates in Texas and elsewhere and were using the air conditioner in their Defective Hybrid, Mr. Biermann experienced a drastic loss of power.  In fact, when travelling up hills, Mr. Biermann had to turn off the air conditioning to get his Defective Hybrid to charge the batteries at all and to get any IMA assist at all.  This resulted in an extremely unpleasant and dangerous drive as Mr. Biermann and his wife had to elect between the sweltering Texas heat with no

- 18 -

air conditioning or having the car slow to unsafe speeds on the highways.  Mr. Biermann's mileage dropped to around 43 mpg and his Defective Hybrid was getting no boost at all from the IMA system.

49.     When Mr. Biermann returned from his trip to Arizona and stopped using his air conditioner, his Defective Hybrid began to operate better, but it never returned to the performance he was getting prior to his trip.  Mr. Biermann complained to the Honda dealership about the loss of power and mileage and was told his experiences were normal operation for the Civic Hybrid and there was nothing that could be done to fix it.  Mr. Biermann was also told that as his car got older, he should expect to get lower and lower gas mileage.

50.     In 2010, the operation of Mr. Biermann's Defective Hybrid continued to deteriorate.  The car would regen once or twice each day.  The battery level would creep up from two bars to five, then immediately jump to 10 out of 10.  Again, there was no IMA assist during the regen process and the braking was more difficult, resulting in erratic operation, loss of power and sluggishness.  Mr. Biermann's mileage dropped to around 38 mpg.

51.     In 2010, Mr. Biermann received a letter from Honda instructing him to bring his car in for the Software Update.  Mr. Biermann researched the issue online and read about the drastic further reductions in mileage and power that Defective Hybrid owners experienced after having the Software Update installed.  Already dissatisfied with the mileage drop to 38 mpg and erratic power, Mr. Biermann refused to have the Software Update installed.

52.     Now Mr. Biermann's Defective Hybrid enters the regen mode about every 15 minutes while running and immediately after starting the car, even if it was

- 19 -

just stopped.  During regen, the Defective Hybrid has no IMA assist resulting in extreme sluggishness and the braking is difficult.  Since the regen process can start at any time, Mr. Biermann has been placed in dangerous situations while driving when he experiences loss of power and ability to brake and struggles to get his Defective Hybrid to a safe place on the roadway.

### 4. Lani and Trever Button

53.     Plaintiffs Lani and Trever Button are a married couple and residents of Oregon.  The Buttons own a 2007 Honda Civic Hybrid.  The Buttons purchased their Civic Hybrid on November 6, 2009.  It had 43,343 miles on it when they purchased it and it was still under warranty.  The car presently has just over 70,000 miles on it and the IMA system and battery are still under warranty.

54.     The Buttons were looking for a highly gas efficient vehicle because they have a long commute to take their son to school and they were worried about the cost of gas for the commute.  While at the dealership, they were told to buy the Hybrid over the standard Honda Civic because, even though it cost nearly $5,000 more, they would save enough on gas to make up the difference.

55.     The Buttons brought their Defective Hybrid in for service on January 10, 2010, less than two months after they bought it.  Ms. Button complained to the service department that the car was sluggish and making odd sounds, and she noted that she was only getting around 40 mpg.  The dealership test drove the car and reported back that everything was operating normally.  The dealership told the Buttons that the sluggishness and efficiency that the Buttons were experiencing was normal for the Civic Hybrid.

- 20 -

56.   The Buttons continued to drive their Defective Hybrid on their daily commute and continued to note the lack of power and lack of promised fuel efficiency.  The Buttons performed all required upkeep and maintenance services and were continually told that their Defective Hybrid was operating "normally."

57.   In August 2010, the Buttons received a letter from Honda informing them that they needed to bring their Defective Hybrid into the dealership for repair. The Buttons brought their car in and the dealership installed the Software Update.

58.   After installation of the Software Update, the Buttons noticed that their miles-per-gallon dropped precipitously.  Where before the Software Update they were getting near 40 mpg, after it they were only getting about 30 mpg.  The Buttons also noted that their Defective Hybrid seemed to drive even more sluggishly.  Again, anytime the Buttons raised the mileage and performance issues with the Honda dealership, they were told their car was operating "as expected" or normally and there was nothing wrong with it that could be or needed to be repaired.

**5.    Rebecca and Ian Schrader**

59.   Rebecca and Ian Schrader are citizens and residents of Florida.  The Schraders purchased their 2007 HCH new on September 18, 2007.  The Schraders bought the Hybrid, and paid over $4,000 more for it than a comparably equipped gasoline Civic because they were concerned about saving money on fuel and helping reduce harm to the environment.

60.   From the outset, the Schrader's Civic Hybrid did not obtain anything near the mileage that Honda claimed.  From the time of her purchase until 2010, mileage decreased until it settled at about 38 mpg.  When she asked the Honda dealership about the decreased fuel efficiency, Ms. Schrader was told that her car

- 21 -

operated normally and to get higher mileage she had to "baby" the car. As a very conservative driver this made little sense to Ms. Schrader.

61.     In August, 2010, Ms. Schrader received a letter from Honda advising her of needed repairs and she took the car to the dealership as instructed. The dealership installed the Software Update. Immediately after installation of the Software Update, Ms. Schrader noted that her mileage drastically decreased. Where before the update she was getting about 38 mpg, after the update she averaged only 29 mpg. In addition, Ms. Schrader noted that her car was much more sluggish than before the Software Update and operated erratically.

62.     On one occasion in October 2011, Ms. Schrader stopped momentarily at a red light. When the light turned green, Ms. Schrader stepped on the accelerator but the car would not move. Ms. Schrader turned the key off, waited a moment and then turned it back on and this time the car sluggishly accelerated away. Ms. Schrader feels that the erratic operation of her Defective Hybrid makes it unsafe.

63.     Ms. Schrader went to her dealership to complain about (a) the sudden loss of power; (b) getting 29 mpg; and (c) the sluggish performance. After inspecting and testing her Defective Hybrid, the dealership told her that her IMA battery passed and there were no error codes. Ms. Schrader was told her driving habits and inflation of the tires affects the fuel economy. Finally, Ms. Schrader was told that her car was safe to drive and "passed all diagnostics and is up to operational standards."

60.     Ms. Schrader's entire purpose of purchasing the Hybrid—and paying a premium for it—was to save money on fuel over a standard gasoline car. That purpose has been completely undermined as now her Defective Hybrid actually gets

- 22 -

lower mpg than the much cheaper non-hybrid Civic.  Further, Ms. Schrader no longer believes that it is a safe car for her and her two young children.

### 6.    Stephen Pustelnik

61.    Plaintiff Stephen Pustelnik is a citizen and resident of California.  Mr. Pustelnik purchased his 2007 HCH new in October 2007.  While Mr. Pustelnik did not obtain the 50 mpg that Honda advertised, he was generally okay with the performance of the car and did obtain about 45mpg.

62.    In August 2010, Mr. Pustelnik received a letter from Honda advising him to bring his car into the dealership for a necessary service.  Mr. Pustelnik was told that the Software Update was going to make his car operate better.  After the Software Update was installed, however, the performance of his Defective Hybrid became worse.  Mr. Pustelnik's mileage dropped to 39 mpg and he noted a marked decrease in power.  In addition, the IMA system began to operate erratically.  The battery indicator shows that the car is completely discharging, then recharging during his 25 mile commute.  When he leaves his office, Mr. Pustelnik's Defective Hybrid shows a fully charged battery.  But within a mile, the charge drops all the way to one or two bars (out of 10).  He then loses IMA assist, and the battery shows recharging back to full power within six miles, only to completely deplete again by the time he gets home.

63.    Mr. Pustelnik complained to Honda about the decrease in performance caused by the Software Update.  He was told that the Software Update was irreversible and that the car was operating normally.  Had Mr. Pustelnik known that Honda would degrade the performance and efficiency of his car—under the guise of

- 23 -

a repair—after he took delivery of it, he would not have bought the Civic Hybrid to begin with and would have bought a standard gasoline Civic.

64.     Each plaintiff suffered injury as they purchased their Defective Hybrid under the express and implied warranties that their vehicles would operate as intended and designed throughout the useful life of such vehicles.  A vehicle containing the defective IMA battery and/or the Software Update does not operate as warranted and intended because it does not operate reliably and it does not achieve the fuel efficiency it would otherwise be capable of achieving, thus causing each plaintiff to pay additional sums for fuel to operate their Defective Hybrid.  In addition, a Defective Hybrid is worth less than a correctly operating/non-faulty Civic Hybrid.

**B.     Defendant**

65.     Defendant American Honda Motor Co., Inc. ("Honda") is headquartered in California.  American Honda Motor Co., Inc. is Honda's U.S. sales and marketing arm, which oversees sales and other operations throughout the Unites States.  Honda sells Civic Hybrids and other vehicles through its network of dealers.  Money received from the purchase of a Honda vehicle from a dealer flows from the dealer to Honda.  Money received by the dealer from a purchaser can be traced to Honda.

66.     Honda sells vehicles through a network of dealers who are the agents of Honda.

## V.     CLASS ALLEGATIONS

67.     Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following separate classes for each State and the District of Columbia based upon the

- 24 -

applicable laws set forth in the state law counts.  Each class is defined as follows for

the claims asserted under a particular jurisdiction's law:

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Alabama a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Alaska a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Arizona a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Arkansas a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of California a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Colorado a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Connecticut a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Delaware a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the District of Columbia a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Florida a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Georgia a Defective Hybrid.

> During the fullest period allowed by law, all persons or entities, who own or lease in the state of Hawaii a Defective Hybrid.

1
2      During the fullest period allowed by law, all persons or entities, who own or lease in the state of Idaho a Defective Hybrid.

3
4      During the fullest period allowed by law, all persons or entities, who own or lease in the state of Illinois a Defective Hybrid.

5
6      During the fullest period allowed by law, all persons or entities, who own or lease in the state of Indiana a Defective Hybrid.

7
8      During the fullest period allowed by law, all persons or entities, who own or lease in the state of Iowa a Defective Hybrid.

9
10     During the fullest period allowed by law, all persons or entities, who own or lease in the state of Kansas a Defective Hybrid.

11
12     During the fullest period allowed by law, all persons or entities, who own or lease in the state of Kentucky a Defective Hybrid.

13
14     During the fullest period allowed by law, all persons or entities, who own or lease in the state of Louisiana a Defective Hybrid.

15
16     During the fullest period allowed by law, all persons or entities, who own or lease in the state of Maine a Defective Hybrid.

17
18     During the fullest period allowed by law, all persons or entities, who own or lease in the state of Maryland a Defective Hybrid.

19
20     During the fullest period allowed by law, all persons or entities, who own or lease in the state of Massachusetts a Defective Hybrid.

21
22     During the fullest period allowed by law, all persons or entities, who own or lease in the state of Michigan a Defective Hybrid.

23
24     During the fullest period allowed by law, all persons or entities, who own or lease in the state of Minnesota a Defective Hybrid.

25
26     During the fullest period allowed by law, all persons or entities, who own or lease in the state of Mississippi a Defective Hybrid.

27
28

- 26 -

1
2
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Missouri a Defective Hybrid.

3
4
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Montana a Defective Hybrid.

5
6
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Nebraska a Defective Hybrid.

7
8
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Nevada a Defective Hybrid.

9
10
During the fullest period allowed by law, all persons or entities, who own or lease in the state of New Hampshire a Defective Hybrid.

11
12
During the fullest period allowed by law, all persons or entities, who own or lease in the state of New Jersey a Defective Hybrid.

13
14
During the fullest period allowed by law, all persons or entities, who own or lease in the state of New Mexico a Defective Hybrid.

15
16
During the fullest period allowed by law, all persons or entities, who own or lease in the state of New York a Defective Hybrid.

17
18
During the fullest period allowed by law, all persons or entities, who own or lease in the state of North Carolina a Defective Hybrid.

19
20
During the fullest period allowed by law, all persons or entities, who own or lease in the state of North Dakota a Defective Hybrid.

21
22
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Ohio a Defective Hybrid.

23
24
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Oklahoma a Defective Hybrid.

25
26
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Oregon a Defective Hybrid.

27
28

- 27 -

1
2
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Pennsylvania a Defective Hybrid.

3
4
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Rhode Island a Defective Hybrid.

5
6
During the fullest period allowed by law, all persons or entities, who own or lease in the state of South Carolina a Defective Hybrid.

7
8
During the fullest period allowed by law, all persons or entities, who own or lease in the state of South Dakota a Defective Hybrid.

9
10
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Tennessee a Defective Hybrid.

11
12
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Texas a Defective Hybrid.

13
14
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Utah a Defective Hybrid.

15
16
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Vermont a Defective Hybrid.

17
18
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Virginia a Defective Hybrid.

19
20
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Washington a Defective Hybrid.

21
22
During the fullest period allowed by law, all persons or entities, who own or lease in the state of West Virginia a Defective Hybrid.

23
24
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Wisconsin a Defective Hybrid.

25
26
During the fullest period allowed by law, all persons or entities, who own or lease in the state of Wyoming a Defective Hybrid.

27

28

- 28 -

68.     Excluded from each class are Defendant, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case. Also excluded are any individuals claiming damages from personal injuries arising from failure of the IMA batteries in a Defective Hybrid.

69.     Pursuant to Rule 23(a)(1), each class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of each class are geographically dispersed throughout the state of each class and joinder of all class members would be impracticable. While the exact number of class members in each class is unknown to Plaintiffs at this time, Plaintiffs believe that there are, at least, 95,123 members of the classes combined.

70.     Pursuant to Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the other members of each class. Plaintiffs and other class members all own or lease a Defective Hybrid that contains the defective IMA battery. Honda policies concerning repair or replacement of faulty IMA batteries applied uniformly to all members of each class. Plaintiffs and class members purchased or leased Defective Hybrids with the reasonable expectation that Honda would abide by its express and implied warranties. Plaintiffs and the members of the classes have all sustained injury in that their Defective Hybrids do not operate as designed and intended; they are required to pay additional sums for fuel due to the inefficiency of their Defective Hybrids; and the value of the Defective Hybrid has decreased due to Defendants' wrongful conduct.

- 29 -

71.     Pursuant to Rule 23(a)(4) and (g)(1), Plaintiffs will fairly and adequately protect the interests of the members of the classes and have retained counsel competent and experienced in class action and consumer fraud litigation.

72.     Pursuant to Rules 23(b)(2), Honda has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the classes as a whole.  In particular, Honda has failed to properly repair Defective Hybrids and has instead installed the Software Update which further degrades vehicle performance and causes the state-of-charge of the IMA battery to be over-reported.

73.     Pursuant to Rule 23(a)(2) and (b)(3), common questions of law and fact exist as to all members of the classes and predominate over any questions solely affecting individual members thereof.  Among the common questions of law and fact are as follows:

a.      When Honda had knowledge of the IMA Battery Defect;

b.      Whether Honda concealed the IMA Battery Defect;

c.      Whether Honda misrepresented the performance of the Defective Hybrid;

d.      Whether Honda misrepresented the value of the Defective Hybrid;

e.      Whether Honda misrepresented the purpose and effect of the Software Update;

f.      Whether installation of the Software Update satisfied Honda's warranty obligations with respect to the IMA Battery Defect;

- 30 -

g.     Whether Honda's misrepresentations and omissions regarding the IMA batteries and reliability of the Defective Hybrids were likely to deceive owners of the Defective Hybrid;

h.     Whether Honda's business practices, including the manufacture and sale of vehicles with an IMA battery defect that Honda has failed to adequately investigate, disclose and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

i.     Whether Honda breached its express warranties regarding the IMA batteries;

j.     Whether Honda breached the implied warranty of merchantability because its vehicles were not fit for their ordinary purpose due to the IMA battery defect;

k.     Whether Plaintiffs and class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief; and

l.     The amount and nature of such relief to be awarded to Plaintiffs and the Class.

74.     Pursuant to Rules 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable.  The prosecution of separate actions by individual members of the classes would impose heavy burdens upon the courts and Defendant, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to those classes.  A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

- 31 -

75.     As to each state, class plaintiffs incorporate by reference the previous allegations as to the Rule 23 requirements.

## COUNT I

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
**(15 U.S.C. § 2301, *et seq.*)**

76.     Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.  This Count is asserted by each state class as Count I.  As a result, the counts for each state class set forth below begin with Count II.

77.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

78.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

79.     Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

80.     The Defective Hybrids are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

81.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

82.     Honda's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Defective Hybrid implied warranties are covered under 15 U.S.C. § 2301(7).

83.     Honda breached these warranties as described in more detail above, but generally by not repairing or replacing the Defective Hybrid materials and

- 32 -

workmanship defects; providing the Defective Hybrid not in merchantable condition and which present an unreasonable risk of premature deterioration of the IMA batteries and not fit for the ordinary purpose for which vehicles are used; providing Defective Hybrids that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified.

84.     Plaintiffs and class members have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and the class members.  Notwithstanding this, privity is not required in this case because Plaintiffs and class members are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiffs' and class members' Defective Hybrids are dangerous instrumentalities due to the aforementioned defects and nonconformities.

85.     Plaintiffs have satisfied any obligations under 15 U.S.C. § 2310(a)(3), and also provided Honda an opportunity to cure, even though no such opportunity is required in these circumstances.

86.     Plaintiffs have discussed the IMA battery failures with Honda and/or its agents without their concerns being resolved.  Plaintiffs have contacted their dealerships to discuss their situation with the dealership without adequate resolution.

87.     Requiring an informal dispute settlement procedure, or affording Honda a reasonable opportunity to cure its breach of written warranties, would be

- 33 -

unnecessary and futile.  At the time of sale or lease of each Defective Hybrid, Honda knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Defective Hybrid's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiff resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

88. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action at least exceeds the sum of $3,500, exclusive of interest and costs, which is the approximate cost to replace prematurely deteriorated IMA batteries.  Plaintiffs have also lost money as a result of having to pay hundreds of dollars each year for additional gas after Honda's failed attempts to fix the IMA battery defect with the Software Update resulted in drastic decreases in the fuel efficiency of the Defective Hybrid.  Finally, Plaintiffs have lost money because they paid a premium for the hybrid over the standard Civic and cannot sell their cars at a premium because they are unreliable, do not obtain better mileage than the standard Civic and there is widespread knowledge that the IMA system is defective.

89. Plaintiffs seek all damages, including the cost to replace the faulty IMA batteries or otherwise repair or replace the faulty IMA system, the cost of additional fuel they have had to purchase as a result of the IMA Battery Defect and the

- 34 -

Software Update, and/or diminution in value of their vehicles, in an amount to be proven at trial.

## STATE LAW COUNTS

90.     Each of the state law counts is asserted on behalf of each state law class. So, for example, the Alaska counts are asserted on behalf of the Alaska class, and the Illinois counts on behalf of the Illinois class.

## ALABAMA

## COUNT II

## VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT

### (Ala. Code § 8-19-1, *et seq.*)

91.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

92.     The conduct of Honda, as set forth herein, constitutes unfair or deceptive acts or practices, including but not limited to, Honda's manufacture and sale of vehicles with IMA battery defects that cause premature deterioration of the IMA batteries, which Honda failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding Software Update.

93.     Honda's actions, as set forth above, occurred in the conduct of trade or commerce.

94.     Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

- 35 -

95.     Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs' Defective Hybrids are defective and do not operate as designed.  Rather than repair or replace the defective IMA batteries, as Honda is obligated to do, it instead installed the Software Update which degraded the performance, reliability and efficiency of the Defective Hybrids in order to postpone and conceal Honda's warranty obligations.

96.     Honda's conduct proximately caused the injuries to Plaintiffs and the class.

97.     Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

98.     Pursuant to ALA. CODE § 8-19-8, Plaintiffs will serve the Alabama Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (Ala. Code § 7-2-313)

99.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

100.    Honda is and was at all relevant times a merchant with respect to motor vehicles.

101.    In the course of selling its vehicles, Honda expressly warranted in writing that the IMA batteries were covered by a warranty.

102.    Honda breached the express warranty to repair or replace to correct defects in the IMA batteries.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries.

- 36 -

103.   Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

104.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacement of parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

105.   Many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of "repair or replacement," as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

106.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and members of the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of IMA battery defects became public.

107.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

010296-11  501535 V1

**COUNT IV**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(Ala. Code § 7-2-314)**

108.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

109.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

110.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions, pursuant to ALA. CODE § 7-2-314.

111.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate during their normally useful life.

112.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and members of the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

113.   Plaintiffs and the class have had sufficient dealings with either Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and the class.  Notwithstanding this, privity is not required in this case because Plaintiffs and the class are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate

- 38 -

consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrids; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiffs' and class members' Defective Hybrids are dangerous instrumentalities due to the aforementioned defects and nonconformities.

114.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Alabama Law)

115.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

116.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Alabama's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

117.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature IMA battery deterioration, or to replace the IMA batteries.

118.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to

- 39 -

be proven at trial, which shall include, but is not limited to, all compensatory

damages, incidental and consequential damages, and other damages allowed by law.

## ALASKA

## COUNT II

### VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

### (Alaska Stat. § 45.50.471, *et seq*.)

119.   Plaintiffs reallege and incorporate by reference all paragraphs as though

fully set forth herein.

120.   The Alaska Unfair Trade Practices And Consumer Protection Act

("AUTPCPA") declares unfair methods of competition and unfair or deceptive acts or

practices in the conduct of trade or commerce unlawful, including:  "(4) representing

that goods or services have sponsorship, approval, characteristics, ingredients, uses,

benefits, or quantities that they do not have or that a person has a sponsorship,

approval, status, affiliation, or connection that the person does not have"; "(12) using

or employing deception, fraud, false pretense, false promise, misrepresentation, or

knowingly concealing, suppressing, or omitting a material fact with intent that others

rely upon the concealment, suppression or omission in connection with the sale or

advertisement of goods or services whether or not a person has in fact been misled,

deceived or damaged"; and "(14) representing that an agreement confers or involves

rights, remedies, or obligations which it does not confer or involve, or which are

prohibited by law." ALASKA STAT. § 45.50.471.

121.   In the course of Honda's business, it willfully failed to disclose and

actively concealed the IMA battery defects in the Defective Hybrid.  Accordingly,

Honda engaged in unlawful trade practices, including representing that the Defective

- 40 -

Hybrids have characteristics, uses, benefits, and qualities which they do not have; representing that the Defective Hybrids are of a particular standard and quality when they are not; omitting material facts in describing the Defective Hybrid; and representing that its warranty confers or involves rights, remedies, or obligations which it does not confer or involve, or which are prohibited by law.

122.   Honda's misrepresentations and omissions described herein have the capacity or tendency to deceive.  As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

123.   Plaintiffs and the class suffered ascertainable loss caused by Honda's failure to disclose material information.  Plaintiffs and the class's vehicles do not operate as designed and intended.  They do not achieve the performance and efficiency that they would with correctly operating IMA batteries.  Further, the installation of the Software Update did not repair the IMA battery defect but rather only further degraded the performance and efficiency of the Defective Hybrids.  The value of the Defective Hybrids has diminished now that the IMA battery issues have come to light and Honda had refused to repair or replace the defective IMA batteries.

124.   Plaintiffs are entitled to recover the greater of three times the actual damages or $500, pursuant to § 45.50.531(a).  Attorneys' fees may also be awarded to the prevailing party pursuant to § 45.50.531(g).

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Alaska Stat. § 45.02.314)

125.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 41 -

126.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

127.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

128.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  As set forth above in detail, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

129.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

130.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

- 42 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARIZONA**

**COUNT II**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(Arizona Common Law)**

131.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.  Only Plaintiffs with physical injury to their vehicles assert this claim.

132.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

133.   A warranty that the Defective Hybrids were in merchantable condition is implied by common law in the instant transactions.

134.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

135.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 43 -

136. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have suffered damage to the property of their vehicles, in an amount to be proven at trial.

<div align="center">

**ARKANSAS**

**COUNT II**

**ARKANSAS PRODUCTS LIABILITY ACT**

**(Ark. Code Ann. § 16-116-101, *et seq.*)**

</div>

137. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

138. Plaintiffs allege Honda vehicles were defectively designed, manufactured, sold or otherwise placed in the stream of commerce.

139. Honda is strictly liable in tort for the Plaintiffs' injuries and damages and the Plaintiffs respectfully rely upon the Doctrine as set forth in RESTATEMENT, SECOND, TORTS § 402(a).

140. Because of the negligence of the design and manufacture of the Defective Hybrids, by which Plaintiffs were injured and the failure of Honda to warn Plaintiffs of the certain dangers concerning the operation of the Defective Hybrids which were known to Defendants but were unknown to Plaintiffs, defendant has committed a tort.

141. The Defective Hybrids which caused Plaintiffs' injuries were manufactured by Honda.

142. At all times herein material, Defendant negligently and carelessly did certain acts and failed to do other things, including, but not limited to, inventing, developing, designing, researching, guarding, manufacturing, building, inspecting, investigating, testing, labeling, instructing, and negligently and carelessly failing to

- 44 -

provide adequate and fair warning of the characteristics, dangers and hazards associated with the operation of the vehicles in question to users of the Defective Hybrids, including, but not limited to, Plaintiffs, and willfully failing to repair or replace or otherwise cure one or more of the defects in the products involved thereby directly and proximately causing the hereinafter described injury.

143.   The Defective Hybrids were unsafe for use by reason of the fact that they were defective.  For example, the Defective Hybrids were defective in their design, guarding, development, manufacture, and lack of permanent, accurate, adequate and fair warning of the characteristics, danger and hazard to the user, prospective user and members of the general public, including, but not limited to, Plaintiffs, and because Defendant failed to repair, replace or otherwise cure one or more defects in the vehicles involved thereby directly and proximately causing the described injuries.

144.   Defendant knew or reasonably should have known that the Defective Hybrids would be purchased and used without all necessary testing or inspection for defects by Plaintiffs and the class.

145.   Plaintiffs were not aware of those defects at any time before the incident and occurrence mentioned in this complaint, or else Plaintiffs were unable, as a practical matter, to cure that defective condition.

146.   Plaintiffs used the products in a foreseeable manner.

147.   As a proximate result of the negligence of Defendant, Plaintiffs suffered injuries and damages.

- 45 -

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(Ark. Code Ann. §§ 4-2-314)**

148.   Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

149.   In its manufacture and sale of the Defective Hybrids, Honda impliedly warranted to Plaintiffs and the class that its vehicles were in merchantable condition and fit for their ordinary purpose.

150.   The Defective Hybrids were defective and unfit for their ordinary use because they are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

151.   Under the Uniform Commercial Code there exists an implied warranty of merchantability.

152.   Honda has breached the warranty of merchantability by having sold its automobiles with defects such that the vehicles were not fit for their ordinary purpose and Plaintiffs and the class suffered damages as a result.

**CALIFORNIA**

**COUNT II**

**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES**

**(Cal. Civ. Code §§ 1793.2(D) & 1791.2)**

153.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 46 -

154.   Plaintiffs and the class who purchased the Honda vehicles in California are "buyers" within the meaning of CAL. CIV. CODE § 1791.

155.   The Honda vehicles are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

156.   Honda is a "manufacturer" of the Defective Hybrids within the meaning of CAL. CIV. CODE § 1791(j).

157.   Plaintiffs and the class bought/leased new motor vehicles manufactured by Honda.

158.   Honda made express warranties to Plaintiffs and the class within the meaning of CAL. CIV. CODE §§ 1791.2 and 1793.2.

159.   The Defective Hybrids had and continue to have defects in the IMA batteries that were and continue to be covered by Honda's express warranties and these defects substantially impair the use, value, and safety of the Defective Hybrids to reasonable consumers like Plaintiffs and the class.

160.   Plaintiffs and the class delivered their vehicles to Honda or its authorized repair facility for repair of the defects.

161.   Honda and its authorized repair facilities failed and continue to fail to repair or replace the defective IMA batteries to match Honda's written warranties after a reasonable number of opportunities to do so.

162.   Plaintiffs and the class gave Honda or its authorized repair facilities at least two opportunities to fix the defects unless only one repair attempt was possible because the vehicle was later destroyed or because Honda or its authorized repair facility refused to attempt the repair.

163.   Honda did not promptly replace or buy back the Defective Hybrids.

- 47 -

164.   As a result of Honda's breach of its express warranties, Plaintiffs and the class received goods whose condition substantially impairs their value to Plaintiffs and the class.  Plaintiffs and the class have been damaged as a result of the diminished value of the Defendants' products, the products' malfunctioning, the decreased fuel efficiency of their vehicles and the nonuse of their vehicles.

165.   Pursuant to CAL. CIV. CODE §§ 1793.2 & 1794, Plaintiffs and the class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

166.   Pursuant to CAL. CIV. CODE § 1794, Plaintiffs and the class are entitled to costs and attorneys' fees.

## COUNT III

### VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Cal. Civ. Code §§ 1792 & 1791.1)

167.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

168.   Plaintiffs and the class who purchased the Honda vehicles in California are "buyers" within the meaning of CAL. CIV. CODE § 1791.

169.   The Defective Hybrids are "consumer goods" within the meaning of CIV. CODE § 1791(a).

170.   Honda is a "manufacturer" of the Defective Hybrids within the meaning of CAL. CIV. CODE § 1791(j).

- 48 -

171.   Honda impliedly warranted to Plaintiffs and the class that its vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792, however, the Honda vehicles do not have the quality that a buyer would reasonably expect.

172.   CAL. CIV. CODE § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)   Pass without objection in the trade under the contract description.

(2)   Are fit for the ordinary purposes for which such goods are used.

(3)   Are adequately contained, packaged, and labeled.

(4)   Conform to the promises or affirmations of fact made on the container or label.

173.   The Honda vehicles would not pass without objection in the automotive trade because of the premature deterioration of the IMA batteries and resultant failure to reliably operate, diminished power and diminished fuel efficiency.

174.   Because of the premature deterioration of the IMA batteries, the Defective Hybrids fail to operate reliably, they lack intended power and do not achieve intended fuel efficiency and thus are not fit for ordinary purposes.

175.   Honda breached the implied warranty of merchantability by manufacturing and selling vehicles containing prematurely deteriorating IMA batteries.  Furthermore, these defects have caused Plaintiffs and the class to not receive the benefit of their bargain in that they have had to spend significantly more money on fuel than they would have had the Defective Hybrids operated with the designed and intended power and fuel efficiency.

- 49 -

176.   Further, Honda breached the implied warranty of merchantability when it installed the Software Update in Defective Hybrids because the Software Update, done under the false guise of a "repair," actually further degraded the performance and efficiency of the Defective Hybrids.

177.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs and the class received goods whose condition substantially impairs their value to Plaintiffs and the class.  Plaintiffs and the class have been damaged as a result of the diminished value of Honda's products, the products' malfunctioning, and the nonuse of their vehicles.

178.   Pursuant to CAL. CIV. CODE §§ 1791.1(d) & 1794, Plaintiffs and the class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

179.   Pursuant to CAL. CIV. CODE § 1794, Plaintiffs and the class are entitled to costs and attorneys' fees.

## COUNT IV

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200, *et seq.*)

180.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

181.   California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."  Defendant has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

010296-11 501535 V1

182.   Defendant has violated the unlawful prong of section 17200 by its violations of the Magnuson-Moss Warranty Act as set forth in Count I and by the acts and practices set forth in this Complaint.

183.   Defendant has violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the IMA battery in the Defective Hybrids and the Software Update as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

184.   Defendant has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with prematurely deteriorating IMA batteries, and Defendant's failure to adequately investigate, disclose and remedy, offend established public policy, and because the harm it causes to consumers greatly outweighs any benefits associated with those practices.  Defendant's conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs from obtaining the repairs and/or replacements to which they are entitled under their warranties.

185.   Plaintiffs have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful and/or deceptive practices.  As set forth in the allegations concerning each Plaintiff, Plaintiffs presented their vehicles for repair after experiencing faults due to defective IMA batteries.  Honda failed to repair or replace the faulty IMA batteries and, as a result, Plaintiffs' vehicles diminished in value and became less efficient, which caused Plaintiffs to pay more to operate their vehicles then they would have had to pay if the vehicles

- 51 -

worked as designed and intended and/or had been repaired as required under the vehicle warranties.

186.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

187.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the class any money Honda acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other relief set forth below.

## COUNT V

### BREACH OF EXPRESS WARRANTY
### (CAL. COM. CODE § 2313)

188.   Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

189.   Honda is and was at all relevant times a merchant with respect to motor vehicles under CAL. COM. CODE § 2104.

190.   In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty that provided for the following:

IMA Battery Warranty (Years/miles) = 8/80,000

- AT-PZEV (CA, NY, ME, VT, MA, CT) 10/150,000

- 52 -

191.   Thus, the express warranty for the IMA batteries in the Defective Hybrids is for ten years/150,000 in California, New York, Maine, Vermont, Massachusetts and Connecticut, and eight years/80,000 miles in all other states.

192.   During this warranty period, Honda promised "Honda will repair or replace any part that is defective in material or workmanship under normal use….All repairs/replacements made under this warranty are free of charge."

193.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship of the IMA batteries.  Honda has not repaired or replaced, and has been unable to repair or replace, the Defective Hybrids' materials and workmanship defects in the IMA batteries.

194.   The warranty was also breached because rather than repair or replace the prematurely deteriorating IMA batteries, as it promised to do, Honda has installed the Software Update in Defective Hybrids.  As explained above, the Software Update does not repair or replace the prematurely deteriorating IMA batteries, in fact, quite the opposite, it degrades the performance and mileage of the Defective Hybrids in order to make the IMA batteries appear to function better and to postpone Honda's warranty obligations to actually repair or replace faulty IMA batteries.

195.   Furthermore, the limited warranty of repair and replace defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because the Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time. Further, the repairs Honda offers do not fix the faulty IMA batteries and are not adequate, hence bringing a vehicle in for repair is a futile act.

196.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacement to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

197.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the Defective Hybrids, they knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding its vehicles.  In particular, Defendant failed to assemble and manufacture the IMA batteries in such a way as to prevent premature deterioration under normal use.  The class was therefore induced to purchase the Defective Hybrids under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable pursuant to CAL. CIV. CODE § 1670.5 and/or § 1668.

198.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of "replacement or repair," as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

199.   For Plaintiffs and class members who brought their Defective Hybrids in for repair, Defendant has not repaired or replaced their IMA batteries as the Software Update does not fix the prematurely deteriorating IMA batteries.  Rather it degrades the performance and efficiency of the vehicles and merely postpones

- 54 -

Honda's obligation to repair and replace. For Plaintiffs and class members who have not had the Software Update installed, bringing their vehicle in for repair would be futile as the Software Update does not actually fix the prematurely deteriorating IMA batteries.

200. Honda was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and members of the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of IMA battery defects became public.

201. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT VI

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE § 2314)

202. Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

203. Honda is and was at all relevant times a merchant with respect to motor vehicles under CAL. COM. CODE § 2104.

204. A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to CAL. COM. CODE § 2314.

205. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Hybrids are inherently defective in that there are

- 55 -

defects in the IMA batteries that cause such batteries to prematurely deteriorate causing loss of power, loss of fuel efficiency and failure to reliably operate.

206.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and members of the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of IMA battery defects became public.

207.   Plaintiffs and class members have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and the class members.  Notwithstanding this, privity is not required in this case because Plaintiffs and class members are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrids; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiffs' and class members' Defective Hybrids are dangerous instrumentalities due to the aforementioned defects and nonconformities which can cause Defective Hybrids to abruptly stop operating while in transit.

208.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

- 56 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT VII

## BREACH OF CONTRACT/COMMON LAW WARRANTY

209.   Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

210.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under California's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship of any part supplied by Honda and/or warranted the quality or nature of those services to Plaintiffs.

211.   Honda breached this warranty or contract obligation by failing to repair the IMA batteries in the Defective Hybrids evidencing premature battery deterioration, or to replace them.

212.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COLORADO

## COUNT II

## VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT

## (Col. Rev. Stat. § 6-1-101 et seq.)

213.   Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

- 57 -

214.   Defendant is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), COL. REV. STAT. § 6-1-101 *et seq*.

215.   Plaintiffs are "consumers" for purposes of § 6-1-113(1)(a) of the Colorado CPA who purchased or leased one or more Defective Hybrids.

216.   In the course of its business, Defendant participated in deceptive trade practices that violated the Colorado CPA, as described herein.

217.   As alleged above, Defendant made numerous material statements about the safety, reliability and efficiency of the Defective Hybrids that were either false or misleading.  Each of these statements contributed to the deceptive context of Defendant's unlawful representations as a whole.  Defendant also failed to disclose and actively concealed the premature deterioration of the IMA batteries.

218.   Defendant engaged in deceptive trade practices prohibited by the Colorado CPA, including (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Defective Hybrids that had the capacity or tendency to deceive Plaintiffs; (2) representing that the Defective Hybrids are of a particular standard, quality, and grade even though Defendant knew or should have known they are not; (3) failing to disclose material information concerning the Defective Hybrid that was known to Defendant at the time of advertisement or sale with the intent to induce Plaintiffs to purchase or lease the Defective Hybrid; and (4) deceptively calling the Software Update a repair when in truth and fact it only served to postpone and conceal Honda's obligations under its warranty to repair or replace the faulty IMA batteries.

219.   Defendant knew that the IMA batteries were defectively designed or manufactured, would prematurely deteriorate without warning, and were not suitable

- 58 -

for the intended use of providing electric power to the hybrid drive system in the Defective Hybrids.  Defendant nevertheless failed to warn Plaintiffs about these inherent defects despite having a duty to do so.

220.   Defendant's practices significantly impact the public as actual consumers of the Defective Hybrids, which pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to failure to operate and/or loss of power while on the public roadways.

221.   Whether or not a vehicle (a) reliably operates on the roadways and (b) provides the power and fuel efficiency for which it was designed and intended are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Plaintiffs bought a Defective Hybrid for personal, family, or household purposes, they reasonably expected the vehicle would (a) operate reliably and (b) achieve the power and fuel efficiency intended in its design.

222.   Defendant's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability and efficiency of the Defective Hybrids.

223.   Plaintiffs suffered injury-in-fact to their legally protected property interests as a result of Defendant's violations of the Colorado CPA detailed above. Plaintiffs currently own or lease Defective Hybrids that are defective and inherently unsafe.

224.   Pursuant to § 6-1-113(2) of the Colorado CPA, Plaintiffs seek monetary relief against Honda measured as the greater of (a) the amount of actual damages

- 59 -

sustained, (b) statutory damages in the amount of $500 for each Plaintiff, or (c) three times the amount of actual damages if Plaintiffs establish that Honda engaged in bad faith conduct.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (Col. Rev. Stat. § 4-2-313)

225.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

226.   Honda is and was at all relevant times a merchant with respect to motor vehicles under COL. REV. STAT. § 4-2-104.

227.   In the course of selling its vehicles, Honda expressly warranted in writing that the vehicles were covered by a warranty.

228.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the Defective Hybrids' materials and workmanship defects.

229.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because the Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

230.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

- 60 -

231.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles.  Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

232.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make them whole.

233.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

234.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

# COUNT IV

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Col. Rev. Stat. § 4-2-314)

235.    Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

236.    Honda is and was at all relevant times a merchant with respect to motor vehicles under COL. REV. STAT. § 4-2-104.

237.    A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to COL. REV. STAT. § 4-2-314.

238.    The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

239.    Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

240.    As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

- 62 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT V

## BREACH OF COMMON LAW WARRANTY

### (Based On Colorado Law)

241.   Plaintiffs incorporate by reference and reallege all paragraphs as though fully set forth herein.

242.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted by Colorado, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacement needed to correct defects in materials or workmanship.

243.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing prematurely deteriorated IMA batteries, or to replace the faulty IMA batteries.

244.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## CONNECTICUT

## COUNT II

## VIOLATION OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT

### (Conn. Gen. Stat. § 42-110A, *et seq*.)

245.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 63 -

246.   The Connecticut Unfair Trade Practices Act ("CUTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).

247.   Honda is a person within the meaning of CUTPA. CONN. GEN. STAT. § 42-110a(3).

248.   In the course of Honda's business, it willfully failed to disclose and actively concealed that the IMA batteries prematurely deteriorate during their normal useful life as described above. This was a deceptive act in that Honda represented that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have and represented that Defective Hybrids are of a particular standard and quality when they are not. Further it was deceptive for Honda to characterize the Software Update as a repair, when in truth and fact it further degraded the power and fuel efficiency of the Defective Hybrids with the purpose of postponing or avoiding Honda's warranty obligations to repair or replace the defective IMA batteries. Honda knew or should have known that its conduct violated the CUTPA.

249.   Honda engaged in a deceptive trade practice when it failed to disclose material information concerning the Honda vehicles which was known to Honda at the time of the sale and/or time of the Software Update. Honda deliberately withheld the information about the defective nature of the IMA batteries and the true purposes of the Software Update in order to postpone or withhold its obligation to repair or replace the defective IMA batteries.

250.   Honda's conduct was unfair because it causes substantial injury to consumers.

- 64 -

251.   The reliability, power and fuel efficiency of the Defective Hybrids were material to Plaintiffs and the class.  Had Plaintiffs and the class known that the Defective Hybrids had defective IMA batteries, they would not have purchased them.  Likewise, had Plaintiffs and the class known the true nature of the Software Update, they would not have allowed the Software Update to be installed in their vehicles.

252.   Plaintiffs and the class suffered ascertainable loss caused by Honda's deceptive and unfair practices.  Plaintiffs and the class own vehicles which do not operate as intended, do not operate reliably and do not achieve the power and fuel efficiency intended in their design.  The value of the Defective Hybrids has diminished now that the IMA battery issues have come to light, and Plaintiffs and the class own vehicles that are not reliable, and do not operate as intended.

253.   Honda engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others.

254.   Plaintiffs are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to CONN. GEN. STAT. § 42-110g.

255.   Pursuant to CONN. GEN. STAT. § 42-110g(c), Plaintiffs will mail a copy of the complaint to Connecticut's Attorney General.

## COUNT III
## BREACH OF CONTRACT
### (Based On Connecticut Law)

256.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 65 -

257.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Connecticut's Commercial Code, Plaintiffs plead in the alternative under common law and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

258.   Honda breached this contract obligation by failing to repair the Defective Hybrids evidencing premature IMA battery deterioration, or to replace them.

259.   As a direct and proximate result of Defendant's breach of contract, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**DELAWARE**

**COUNT II**

**VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT**

**(6 Del. Code § 2513, et seq.)**

</div>

260.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

261.   The Delaware Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not

<div align="center">- 66 -</div>

any person has in fact been misled, deceived or damaged thereby." 6 DEL. CODE § 2513(a).

262.   Honda is a person with the meaning of 6 DEL. CODE § 2511(7).

263.   As described herein, Honda made false representations regarding the reliability, power and fuel efficiency of its vehicles and concealed important facts regarding the premature deterioration of IMA batteries in Defective Hybrids. Honda intended that others rely on these misrepresentations and omissions in connection with the sale and lease and servicing of its vehicles.

264.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

265.   Honda's conduct proximately caused injuries to Plaintiffs and the class.

266.   Plaintiffs and the class were injured as a result of Honda's conduct in that Plaintiffs did not receive the benefit of their bargain, their vehicles are not reliable, have diminished power and fuel efficiency and their vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Honda's misrepresentations and omissions.

267.   Plaintiffs are entitled to recover damages, as well as punitive damages for Honda's gross and aggravated misconduct.

## COUNT III
## VIOLATION OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT
### (6 Del. Code § 2532, *et seq.*)

268.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 67 -

269.   Delaware's Deceptive Trade Practices Act ("DTPA") prohibits a person from engaging in a "deceptive trade practice," which includes:  "(5) Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "(7) Represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "or "(12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

270.   Honda is a person with the meaning of 6 Del. Code § 2531(5).

271.   In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries in Defective Hybrids as described above.  Accordingly, Honda engaged in unlawful trade practices, including representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Hybrids are of a particular standard and quality when they are not; and otherwise engaging in conduct likely to deceive.

272.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

273.   Honda's conduct proximately caused injuries to Plaintiffs and the class.

274.   Plaintiffs and the class were injured as a result of Honda's conduct in that Plaintiffs did not receive the benefit of their bargain, their vehicles were not reliable, had diminished power and fuel efficiency and their vehicles have suffered a

diminution in value.  These injuries are the direct and natural consequence of Honda's misrepresentations and omissions.

275.    Plaintiffs seek injunctive relief and, if awarded damages under Delaware common law or Delaware Consumer Fraud Act, treble damages pursuant to 6 DEL. CODE § 2533(c).

276.    Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Honda's conduct and its high net worth.

## COUNT IV
## BREACH OF EXPRESS WARRANTY
### (6 Del. Code § 2-313)

277.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

278.    Honda is and was at all relevant times a merchant with respect to motor vehicles.

279.    In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

280.    Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' defective IMA batteries.

281.    Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

- 69 -

282.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

283.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles they knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding their vehicles.  Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

284.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

285.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

286.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

# COUNT V

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (6 Del. Code § 2-314)

287.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

288.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

289.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

290.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

291.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

292.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

010296-11  501535 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT VI**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based On Delaware Law)**

293.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

294.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Delaware's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

295.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

296.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**DISTRICT OF COLUMBIA**

**COUNT II**

**VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT**

**(D.C. Code § 28-3901 *et seq.*)**

297.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

298.   Defendant is a "person" under D.C. CODE § 28-3901(a)(1).

- 72 -

299.   Plaintiffs are "consumers," as defined by D.C. CODE § 28-3901(1)(2), who purchased or leased one or more Defective Hybrids.

300.   Defendant participated in unfair or deceptive acts or practices that violated the Consumer Protection Procedures Act ("CPPA"), D.C. CODE § 28-3901, *et seq.*, as described herein.  Defendant is directly liable for these violations of law.

301.   By failing to disclose and actively concealing the premature deterioration of the IMA batteries during normal operation, Defendants engaged in unfair or deceptive practices prohibited by the CPPA, D.C. CODE § 28-3901, *et seq.*, including (1) representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are not, (3)  representing that a transaction involving Defective Hybrids confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Hybrids has been supplied in accordance with a previous representation when it has not.

302.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

303.   Honda's actions affect the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Honda vehicles as a result of Honda's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

304.   Plaintiffs and the class suffered ascertainable loss as a result of Defendant's conduct.  Plaintiffs did not receive the benefit of their bargain in that the

- 73 -

Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

305.   Honda's conduct proximately caused the injuries to Plaintiffs and the class.

306.   Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.  Plaintiffs further allege that Defendants are liable for punitive damages under the CPPA as Defendants acted with a state of mind evincing malice or its equivalent.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (D.C. Code § 28:2-313)

307.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

308.   Honda is and was at all relevant times a seller with respect to motor vehicles.

309.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

310.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

311.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has

- 74 -

failed and/or has refused to adequately provide the promised remedies within a reasonable time.

312.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

313.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

314.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

315.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

316.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (D.C. Code § 28:2-314)

317.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

318.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

319.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

320.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

321.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 76 -

322.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On D.C. Law)

323.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

324.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under the District of Columbia's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

325.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

326.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

010296-11  501535 V1

**FLORIDA**

**COUNT II**

**VIOLATION OF FLORIDA'S UNFAIR &
DECEPTIVE TRADE PRACTICES ACT**

**(Fla. Stat. § 501.201, *et seq.*)**

327.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

328.   The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life, which Honda failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

329.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

330.   Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

331.   Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrid do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

- 78 -

332.   Honda's conduct proximately caused the injuries to Plaintiffs and the class.

333.   Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

334.   Pursuant to FLA. STAT. § 501.201, Plaintiffs will serve the Florida Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (Fla. Stat. § 672.313)

335.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

336.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

337.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

338.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

339.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

- 79 -

340.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

341.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

342.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

343.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

344.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Fla. Stat. § 672.314)

345.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

346.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

347.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions, pursuant to FLA. STAT. § 672.316.

348.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

349.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

350.   Plaintiffs and the class have had sufficient dealings with either Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and the class.  Notwithstanding this, privity is not required in this case because Plaintiffs and the class are intended third-party beneficiaries of contracts

- 81 -

between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the class's Defective Hybrids are dangerous instrumentalities due to the aforementioned defects and nonconformities.

351. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT V**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based On Florida Law)**

</div>

352. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

353. To the extent Honda's repair or replace commitment is deemed not to be a warranty under Florida's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

354. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

<div align="center">- 82 -</div>

355.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## GEORGIA

## COUNT II

### VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT

### (Ga. Code Ann. § 10-1-370, *et seq.*)

356.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

357.   The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life, which Honda failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

358.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

359.   Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

- 83 -

360. Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

361. Honda's conduct proximately caused the injuries to Plaintiffs and the class.

362. Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

363. Pursuant to GA. CODE ANN. § 10-1-370, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT III
## VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (Ga. Code Ann. § 10-1-390, *et seq.*)

364. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

365. The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life, which Honda failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

366. Honda's actions as set forth above occurred in the conduct of trade or commerce.

- 84 -

367.   Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

368.   Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

369.   Honda's conduct proximately caused the injuries to Plaintiffs and the class.

370.   Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

371.   Pursuant to GA. CODE ANN. § 10-1-390, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

<div align="center">

**COUNT IV**

**BREACH OF EXPRESS WARRANTY**

**(Ga. Code Ann. § 11-2-313)**

</div>

372.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

373.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

374.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

<div align="center">- 85 -</div>

375.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

376.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

377.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

378.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

379.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

- 86 -

380.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

381.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT V

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (Ga. Code Ann. § 11-2-314)

382.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

383.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

384.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions, pursuant to GA. CODE ANN. § 11-2-314.

385.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

- 87 -

386.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

387.   Plaintiffs and the class have had sufficient dealings with either Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and the class.  Notwithstanding this, privity is not required in this case because Plaintiffs and the class are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and class members' Hondas are dangerous instrumentalities due to the aforementioned defects and nonconformities.

388.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT VI
## BREACH OF CONTRACT/COMMON LAW WARRANTY

389.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 88 -

010296-11  501535 V1

390.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Georgia's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

391.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

392.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## HAWAII

## COUNT II

## UNFAIR COMPETITION AND PRACTICES

### (Haw. Rev. Stat. § 480, *et seq.*)

393.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

394.   Hawaii's Revised Statute § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.…"

395.   Honda's conduct as set forth herein constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480-2, because Honda's acts and practices, including the manufacture and sale of

- 89 -

vehicles with defective IMA batteries that prematurely deteriorate during their normal useful life, and Honda's failure to adequately investigate, disclose and remedy and Honda's misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid, offend established public policy, and because the harm it causes to consumers greatly outweighs any benefits associated with those practices.  Honda's conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs from making fully informed decisions about whether to purchase or lease Defective Hybrids and/or the price to be paid to purchase or lease Defective Hybrid.

396.   Honda's misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrids were material and caused Plaintiffs to (1) purchase or lease vehicles they would not have otherwise purchased or leased, or paid as much for; and/or (2) allow Honda or its agents to install the Software Update, had Plaintiffs known the Defective Hybrids were defective.

397.   Honda's acts or practices as set forth above occurred in the conduct of trade or commerce.

398.   Plaintiffs and the class have suffered injury, including the loss of money or property, as a result of Honda's unfair methods of competition and unfair or deceptive acts or practices.

399.   In addition to damages in amounts to be proven at trial, Plaintiffs and the class seek attorneys' fees, costs of suit and treble damages.

400.   Plaintiffs and the class also seek injunctive relief to enjoin Honda from continuing its unfair competition and unfair or deceptive acts or practices.

010296-11  501535 V1

## COUNT III

### VIOLATION OF HAWAII'S UNIFORM DECEPTIVE TRADE PRACTICE ACT

### (Hawaii Rev. Stat. § 481A, *et seq.*)

401.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

402.   Honda participated in unfair or deceptive acts or practices that violated the Uniform Deceptive Trade Practice Act  ("UDAP"), HAW. REV. STAT. § 481A, *et seq.*, as described herein.

403.   By failing to disclose and actively concealing the premature deterioration of the IMA batteries during normal operation, Honda engaged in deceptive business practices prohibited by the UDAP, HAW. REV. STAT. § 481A, *et seq.*, including (1) representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have, and (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are not.

404.   As alleged above, Honda made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading.  Each of these statements contributed to the deceptive context of Honda's representations as a whole.

405.   Honda knew that the IMA batteries in the Defective Hybrids prematurely deteriorated during their normal useful life.  Honda nevertheless failed to warn Plaintiffs about this defect despite having a duty to do so.

- 91 -

406.   Honda owed Plaintiffs a duty to disclose the defective nature of Defective Hybrid, including the dangerous risk of power failure, the loss of power and diminished fuel efficiency, because it:

a.      Possessed exclusive knowledge of the defects rendering Defective Hybrids inherently more dangerous and unreliable than similar vehicles;

b.      Intentionally concealed the hazardous situation with Defective Hybrids through its deceptive Service Bulletins that it designed to hide the IMA battery defect from Plaintiffs; and/or

c.      Made incomplete representations about the reliability, power, fuel efficiency and the purpose of the Software Update, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

407.   Defective Hybrids equipped with defective IMA batteries pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they may lose power and/or fail to operate while on roadways.

408.   Whether or not a vehicle (a) operates reliably and (b) has the power and fuel efficiency it was designed to achieve are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Plaintiffs bought a Defective Hybrid for personal, family, or household purposes, they reasonably expected the vehicle would (a) operate reliably and (b) have the power and fuel efficiency for which it was designed.

409.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability,

- 92 -

power, fuel efficiency and the purpose of the Software Update of the Defective Hybrid.

410.   As a result of its violations of the UDAP detailed above, Honda caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease Defective Hybrids that are defective and inherently unsafe.

411.   Plaintiffs risk irreparable injury as a result of Honda's acts and omissions in violation of the UDAP, and these violations present a continuing risk to Plaintiffs as well as to the general public.

412.   Plaintiffs seek monetary damages and an order enjoining Defendant's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees and any other just and proper relief available under the UDAP.

## COUNT IV
## BREACH OF EXPRESS WARRANTY
### (Hawaii Rev. Stat. § 490:2-313)

413.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

414.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

415.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

416.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

- 93 -

417.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

418.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

419.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

420.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

421.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable

- 94 -

amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

422.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT V

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Haw. Rev. Stat. § 490:2-314)

423.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

424.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

425.   A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transactions.

426.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

427.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable

- 95 -

amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

428.   Privity is not required in this case because Plaintiffs and the class are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

429.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT VI**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Based On Hawaii Law)**

</div>

430.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

431.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Hawaii's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

<div align="center">

- 96 -

</div>

432.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

433.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**IDAHO**

**COUNT II**

**VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT**
**(Idaho Civ. Code § 48-601, *et seq.*)**

</div>

434.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

435.   Defendant is a "person" under IDAHO CIVIL CODE § 48-602(1).

436.   Plaintiffs are "consumers" who purchased or leased one or more Defective Hybrids.

437.   Defendant participated in misleading, false, or deceptive acts that violated the Idaho Consumer Protection Act ("ICPA"), IDAHO CIV. CODE § 48-601, *et seq.*, as described herein.  Defendant is directly liable for these violations of law.

438.   By failing to disclose and actively concealing the premature deterioration of the IMA batteries during normal operation, Defendant engaged in deceptive business practices prohibited by the ICPA, including (1) representing that Defective Hybrids have characteristics, uses, and benefits which they do not have, (2) representing that Defective Hybrids are of a particular standard, quality, and

- 97 -

grade when they are not, (3) characterising the Software Update as a repair when it was rather an attempt by Honda to postpone or avoid its obligations under its warranty, and (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer.

439.   As alleged above, Defendant made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading.  Each of these statements contributed to the deceptive context of Honda's unlawful representations as a whole.

440.   Defendant knew that the IMA batteries in the Defective Hybrids prematurely deteriorated during their normal useful life.  Defendant nevertheless failed to warn Plaintiffs about this defect despite having a duty to do so.

441.   Defendant owed Plaintiffs a duty to disclose the defective nature of Defective Hybrid, including the dangerous risk of power failure, the loss of power and diminished fuel efficiency, because it:

a.     Possessed exclusive knowledge of the defects rendering Defective Hybrids inherently more dangerous and unreliable than similar vehicles;

b.     Intentionally concealed the hazardous situation with Defective Hybrids through its deceptive Service Bulletins that it designed to hide the IMA battery defect from Plaintiffs; and/or

c.     Made incomplete representations about the reliability, power, fuel efficiency and the purpose of the Software Update, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

442.   Defective Hybrids equipped with defective IMA batteries pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other

motorists, pedestrians, and the public at large, because they may lose power and/or fail to operate while on roadways.

443.   Whether or not a vehicle (a) operates reliably and (b) has the power and fuel efficiency it was designed to achieve are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Plaintiffs bought a Defective Hybrid for personal, family, or household purposes, they reasonably expected the vehicle would (a) operate reliably and (b) have the power and fuel efficiency for which it was designed.

444.   Honda's misleading, false, or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update.

445.   As a result of its violations of the ICPA detailed above, Defendant caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.  Plaintiffs currently own or lease Defective Hybrids that are defective and inherently unsafe.

446.   Plaintiffs risk irreparable injury as a result of Honda's acts and omissions in violation of the ICPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

447.   Plaintiffs also seek punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendant intentionally and willfully misrepresented the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update,

deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a defect in the Defective Hybrid.  Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

448.   The repairs instituted by Honda have not been adequate.  Defective Hybrids still are defective and the Software Update does not fix the defective IMA batteries but rather further degrades the performance and efficiency of the Defective Hybrid.

449.   Plaintiffs further seek an order enjoining Defendant's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under IDAHO CIVIL CODE § 48-608, and any other just and proper relief available under the ICPA.

<div align="center">

**COUNT III**

**BREACH OF EXPRESS WARRANTY**

**(Idaho Com. Code § 28-2-313)**

</div>

450.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

451.   Honda is and was at all relevant times a merchant with respect to motor vehicles under IDAHO COM. CODE § 28-2-104.

452.   Honda dealerships who sold Defective Hybrids to Plaintiffs and the class acted as the agents of Honda.  Plaintiffs and the class therefore were in a relationship of privity with Defendants, to the extent such a relationship is required by IDAHO COM. CODE § 28-2-313.

<div align="center">

- 100 -

</div>

453.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

454.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

455.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

456.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

457.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable pursuant to IDAHO COM. CODE § 28-2-302(1).

458.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's

- 101 -

fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

459.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

460.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

<div align="center">

**COUNT IV**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(Idaho Com. Code § 28-2-314)**

</div>

461.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

462.   Honda is and was at all relevant times a merchant with respect to motor vehicles under IDAHO COM. CODE § 28-2-104.

463.   A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to IDAHO COM. CODE § 28-2-314.

464.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

<div align="center">- 102 -</div>

used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

465.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

466.   Plaintiffs and the class have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and the class.  Notwithstanding this, privity is not required in this case because Plaintiffs and the class are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

467.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

- 103 -

## COUNT V

## BREACH OF CONTRACT/COMMON LAW WARRANTY

### (Under Idaho Law)

468.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

469.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Idaho's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

470.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

471.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## ILLINOIS

## COUNT II

## VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

### (815 Ill. Comp. Stat. 505/1, *et seq*. and 720 Ill. Comp. Stat. 295/1A)

472.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 104 -

473.   The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/2 prohibits unfair or deceptive acts or practices in connection with any trade or commerce.  Specifically, the Act prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

474.   Defendant is a "person" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1(c).

475.   Plaintiffs are "consumers" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1(e).

476.   Defendant's conduct caused Plaintiffs' damages as alleged.

477.   As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, court costs, and reasonable attorneys' fees pursuant to 815 ILL. COMP. STAT. 505/1, *et seq.*

## COUNT III

### VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

#### (815 Ill. Comp. Stat. 510/1, *et. seq*. and 720 Ill. Comp. Stat. 295/1A)

478.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

479.   815 ILL. COMP. STAT. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following:  "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represents that goods or services have

- 105 -

sponsorship, approval, characteristics ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; … (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; … [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

480.   Defendant is a "person" within the meaning of 815 ILL. COMP. STAT. 510/1(5).

481.   The vehicles sold to Plaintiffs were not of the particular sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities represented by Defendant.

482.   The vehicles sold to Plaintiffs were not of the particular standard, quality, and/or grade represented by Defendant.

483.   Defendant's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

484.   As a result of the foregoing wrongful conduct of Defendant, Plaintiffs have been damaged in an amount to proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

- 106 -

**COUNT IV**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(810 Ill. Comp. Stat. 5/2-314
and 810 Ill. Comp. Stat. 5/2A-212)**

485.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

486.    Defendant impliedly warranted that its vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

487.    Defendant breached the implied warranty that the vehicle was merchantable and safe for use as public transportation by marketing, advertising, distributing and selling vehicles with the common design and manufacturing defect that the IMA batteries prematurely deteriorated during their normal useful life.

488.    This dangerous defect existed at the time the vehicles left Defendant's manufacturing facilities and at the time they were sold to Plaintiffs.

489.    This dangerous defect was the direct and proximate cause of damages to Plaintiffs.

**COUNT V**

**BREACH OF EXPRESS WARRANTY**

**(810 Ill. Comp. Stat. 5/2-313)**

490.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

491.    Defendant expressly warranted that the Defective Hybrids were free of material defects and would actually work properly and safely.

- 107 -

492.   Defendant breached this warranty by knowingly selling to Plaintiffs vehicles with the dangerous defect that the IMA battery would prematurely deteriorate.

493.   Plaintiffs have been damaged as a direct and proximate result of the breach by Defendant in that the Defective Hybrids purchased by Plaintiffs do not operate with the intended reliability, power and fuel efficiency and were and are worth far less than what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendant.

## COUNT VI
## STRICT PRODUCT LIABILITY (DEFECTIVE DESIGN)
### (Based On Illinois Law)

494.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

495.   Defendant is and has been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Defective Hybrids in the United States, including those owned or leased by the Plaintiffs and the class.

496.   Defendant knew and anticipated that the vehicles owned or leased by Plaintiffs and the class would be sold to and operated by purchasers and/or eventual owners or lessors of Defendant's vehicles, including Plaintiffs and the class. Defendant also knew that these Defective Hybrids would reach Plaintiffs and the class without substantial change in their condition from the time the vehicles departed Defendant's assembly lines.

- 108 -

497.   Defendant designed the Defective Hybrids defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

498.   Defendant had the capability to use a feasible, alternative, safer design, and failed to correct the design defects.

499.   The risks inherent in the design of the Defective Hybrids outweigh significantly any benefits of such design.

500.   Plaintiffs and the class could not have anticipated and did not know of the aforementioned defects at any time prior to recent revelations regarding the problems of the Defective Hybrid.

501.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs have suffered damages, including, but not limited to, failure of the affected HCH Vehicles to operate reliably and with the intended power and fuel efficiency, diminution in value, return of lease payments and penalties, and injunctive relief related to future lease payments or penalties.

502.   Plaintiffs and the class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VII
## STRICT PRODUCT LIABILITY (FAILURE TO WARN)
### (Based on Illinois Law)

503.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 109 -

504.   Defendant is and has been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Defective Hybrids in the United States, including those owned or leased by the Plaintiffs and the class.

505.   Defendant, at all times pertinent to this Complaint, knew and anticipated that the Defective Hybrids and their component parts would be purchased, leased and operated by consumers, including Plaintiffs and the class.

506.   Defendant also knew that these Defective Hybrids would reach Plaintiffs and the class without substantial change in their conditions from the time that the vehicles departed Defendant's assembly lines.

507.   Defendant knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the Defective Hybrid, defective design, manufacturing and lack of sufficient warnings which caused them to have an unreasonably dangerous propensity to lose power and cease to operate while on the public roadways.

508.   Defendant failed to adequately warn Plaintiffs and the class when they became aware of the defect that caused Plaintiffs and the class's vehicles to be prone to loss of power and failure to operate.

509.   Defendant also failed to timely recall the vehicles or take any action to timely warn Plaintiffs or the class of these problems and instead continue to subject Plaintiffs and the class to harm.

510.   Defendant knew, or should have known, that these defects were not readily recognizable to an ordinary consumer and that consumers would lease, purchase and use these products without inspection.

511.   Defendant should have reasonably foreseen that the defect in the Defective Hybrids would subject the Plaintiffs and the class to harm resulting from the defect.

512.   Plaintiffs and the class have used the Defective Hybrids for their intended purpose and in a reasonable and foreseeable manner.

513.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and the class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VIII
## BREACH OF LEASE / CONTRACT
### (Based On Illinois Law)

514.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

515.   Plaintiffs and the class entered into lease agreements with Honda. Plaintiffs and the class entered into agreements to purchase Defective Hybrids which also directly or indirectly benefited Defendants.

516.   The leases and purchase agreements provided that Plaintiffs and the class would make payments and in return would receive a vehicle that would operate properly.

517.   Defendant breached its agreements with Plaintiffs and the class, because the vehicles sold or leased to Plaintiffs and the class were defective and not of a quality that reasonably would be expected.

- 111 -

518.   Plaintiffs and the class have fully performed their duties under the purchase and lease agreements.

519.   Defendant is liable for all damages suffered by Plaintiffs and the class caused by such breaches of contract.

## INDIANA

## COUNT II

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (Ind. Code § 24-5-0.5-3)

520.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

521.   Indiana's Deceptive Consumer Sales Act prohibits a person from engaging in a "deceptive trade practice," which includes representing:  "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that

- 112 -

such representation is true if such other supplier shall know or have reason to know that such representation was false."

522.   Honda is a person with the meaning of IND. CODE § 24-5-0.5-2(2).

523.   In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation.  Accordingly, Honda engaged in unlawful trade practices, including representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Hybrids are of a particular standard and quality when they are not; representing that the Software Update was a repair of the IMA batteries when it was not; and otherwise engaging in conduct likely to deceive.

524.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

525.   Honda's conduct proximately caused injuries to Plaintiffs and the class.

526.   Plaintiffs and the class were injured as a result of Honda's conduct in that Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Honda's misrepresentations and omissions.

527.   Plaintiffs seek injunctive relief and, if awarded damages under Indiana Deceptive Consumer Protection Act, treble damages pursuant to IND. CODE § 24-5-0.5-4(a)(1).

528.   Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Honda's conduct and its high net worth.

- 113 -

# COUNT III

## BREACH OF EXPRESS WARRANTY

### (Ind. Code § 26-1-2-313)

529.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

530.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

531.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

532.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

533.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

534.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

535.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid.

- 114 -

Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

536.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

537.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

538.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Ind. Code § 26-1-2-314)

539.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

540.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

- 115 -

541.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

542.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

543.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

544.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Indiana Law)

545.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

546.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Indiana's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available

- 116 -

to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

547.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

548.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**IOWA**

**COUNT II**

**VIOLATIONS OF THE PRIVATE RIGHT OF ACTION
FOR CONSUMER FRAUDS ACT**

**(Iowa Code § 714H.1, *et seq.*)**

</div>

549.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

550.   Defendant is a "person" under IOWA CODE § 714H.2(7).

551.   Plaintiffs are "consumers," as defined by IOWA CODE § 714H.2(3), who purchased or leased one or more Defective Hybrids.

552.   Defendant participated in unfair or deceptive acts or practices that violated Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), IOWA CODE § 714H.1, *et seq.*, as described herein.  Defendant is directly liable for these violations of law.

553.   By failing to disclose and actively concealing the premature deterioration of the IMA batteries during normal operation, Defendant engaged in

<div align="center">- 117 -</div>

deceptive business practices prohibited by the Iowa CFA, IOWA CODE § 714H.1, *et seq.*, including (1) representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are not, (3) representing that the Software Update was a repair to the IMA batteries when it was not, and (4) engaging in acts or practices which are otherwise unfair, misleading, false or deceptive to the consumer.

554.    As alleged above, Defendant made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading.  Each of these statements contributed to the deceptive context of Honda's unlawful representations as a whole.

555.    Defendant knew that the IMA batteries in the Defective Hybrids prematurely deteriorated during their normal useful life.  Defendant nevertheless failed to warn Plaintiffs about this defect despite having a duty to do so.

556.    Defendant owed Plaintiffs a duty to disclose the defective nature of Defective Hybrid, including the dangerous risk of power failure, the loss of power and diminished fuel efficiency, because it:

a.    Possessed exclusive knowledge of the defects rendering Defective Hybrids inherently more dangerous and unreliable than similar vehicles;

b.    Intentionally concealed the hazardous situation with Defective Hybrids through its deceptive Service Bulletins that it designed to hide the IMA battery defect from Plaintiffs; and/or

- 118 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       c.     Made incomplete representations about the reliability, power, fuel efficiency and the purpose of the Software Update, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

557.   Defective Hybrids equipped with defective IMA batteries pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they may lose power and/or fail to operate while on roadways.

558.   Whether or not a vehicle (a) operates reliably and (b) has the power and fuel efficiency it was designed to achieve are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Plaintiffs bought a Defective Hybrid for personal, family, or household purposes, they reasonably expected the vehicle would (a) operate reliably and (b) have the power and fuel efficiency for which it was designed.

559.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update.

560.   As a result of its violations of the Iowa CFA detailed above, Defendant caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.  Plaintiffs currently own or lease Defective Hybrids that are defective and inherently unsafe.

561.   Plaintiffs risk irreparable injury as a result of Honda's acts and omissions in violation of the Iowa CFA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

- 119 -

562.   Plaintiffs and the class sustained damages as a result of the Defendant's unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H of the Iowa CFA.  Because Defendant's conduct was committed willfully, Plaintiffs seek treble damages as provided in IOWA CODE § 714H.5(4).

563.   Plaintiffs also seek court costs and attorney's fees as a result of Defendant's violation of Chapter 714H as provided in IOWA CODE § 714H.5(2).

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (Iowa Code § 554.2313)

564.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

565.   Honda is and was at all relevant times a merchant with respect to motor vehicles under IOWA CODE § 544.2104.

566.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

567.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

568.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

- 120 -

569.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

570.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable .

571.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

572.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 121 -

573.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Iowa Code § 544.2314)

574.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

575.   Honda is and was at all relevant times a merchant with respect to motor vehicles under IOWA COM. CODE § 544.2104.

576.   A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to IOWA CODE § 544.2314.

577.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

578.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 122 -

579.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Iowa Law)

580.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

581.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in Iowa, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

582.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

583.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

- 123 -

**KANSAS**

**COUNT II**

**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**

**(Kan. Stat. Ann. § 50-623, *et seq.*)**

584.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

585.    Defendant is a "supplier" under § 50-624(l) of the Kansas Consumer Protection Act ("Kansas CPA").

586.    Plaintiffs are "consumers," as defined by § 50-624(b) of the Kansas CPA, who purchased or leased one or more Defective Hybrids.

587.    Defendant participated in deceptive acts or practices that violated the Kansas CPA, as described herein.  Defendant is directly liable for these violations of law.

588.    Defendant engaged in deceptive acts or practices prohibited by the Kansas CPA, including (1) representing that Defective Hybrids have characteristics, uses, and benefits that they do not have and (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are of another which differs materially from the representation.  Specifically, as alleged above, Defendant made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading.  Each of these statements contributed to the deceptive context of Honda's unlawful representations as a whole.

589.    Defendant knew or had reason to know that its representations were false.  Defendant knew that the IMA batteries in the Defective Hybrids prematurely

- 124 -

deteriorated during their normal useful life.  Defendant nevertheless failed to warn Plaintiffs about this defect despite having a duty to do so.

590.   Defendant engaged in further deceptive acts or practices prohibited by the Kansas CPA by willfully failing to disclose or willfully concealing, suppressing, or omitting material facts about Defective Hybrid.  Specifically, Defendants failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation.  Defendant knew that the IMA batteries in the Defective Hybrids prematurely deteriorated during their normal useful life.  Defendant nevertheless failed to warn Plaintiffs and the class about this defect despite having a duty to do so.

591.   Whether or not a vehicle (a) operates reliably and (b) has the power and fuel efficiency it was designed to achieve are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Plaintiffs bought a Defective Hybrid for personal, family, or household purposes, they reasonably expected the vehicle would (a) operate reliably and (b) have the power and fuel efficiency for which it was designed.

592.   Defendant's acts or practices alleged above are unconscionable because, among other reasons, Defendant knew or had reason to know they had made misleading statements of opinion on which Plaintiffs were likely to rely to their detriment.

593.   Defendant's deceptive and unconscionable acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update as a result of Defendant's violations of the Kansas CPA.

- 125 -

594.   Plaintiffs and the class suffered loss as a result of Defendant's violations of the Kansas CPA detailed above.  Plaintiffs currently own or lease Defective Hybrids that are defective and inherently unsafe.

595.   Pursuant to § 50-634(b) of the Kansas CPA, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) civil penalties provided for by § 50-636 of the Kansas CPA.

596.   Plaintiffs also seek punitive damages against Defendant because it acted willfully, wantonly, fraudulently, or maliciously.  Defendant intentionally and willfully misrepresented the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a defect in the Defective Hybrid. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

597.   Plaintiffs risk irreparable injury as a result of Defendant's deceptive and unconscionable acts or practices in violation of the Kansas CPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

598.   The repairs instituted by Honda have not been adequate.  Defective Hybrids still are defective and the Software Update does not fix the defective IMA batteries but rather further degrades the performance and efficiency of the Defective Hybrid.

599.   Plaintiffs and the class further seek an order enjoining Defendant's deceptive and unconscionable acts or practices, restitution, punitive damages, costs

- 126 -

of Court, attorney's fees, and any other just and proper relief available under the

Kansas CPA.

<div align="center">

**COUNT III**

**BREACH OF EXPRESS WARRANTY**

**(Kan. Stat. Ann. § 84-2-313)**

</div>

600.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

601.  Honda is and was at all relevant times a merchant with respect to motor vehicles under KAN. STAT. ANN. § 84-2-104.

602.  In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

603.  Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

604.  Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

605.  Accordingly, recovery by the Plaintiffs and the class is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs and the class seek all remedies as allowed by law.

606.  Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the

<div align="center">- 127 -</div>

warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

607.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

608.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

609.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

# COUNT IV

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Kan. Stat. Ann. § 84-2-314)

610.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

611.   Plaintiffs are "natural persons" within the meaning of KAN. STAT. ANN. § 84-2-318.

612.   Honda is and was at all relevant times a merchant with respect to motor vehicles under KAN. STAT. ANN. § 84-2-104.

613.   A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to KAN. STAT. ANN. § 84-2-314.

614.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

615.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 129 -

616.   Privity is not required because the Defective Hybrids are inherently dangerous.

617.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT V**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based On Kansas Law)**

</div>

618.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

619.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in Kansas, Plaintiffs and the class plead in the alternative under common law warranty and contract law. Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

620.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

621.   To the extent such allegations are necessary, Plaintiffs and the class allege that they relied on Honda's common law warranties.

622.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">- 130 -</div>

# KENTUCKY

## COUNT II

## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### (Ky. Rev. Stat. § 367.110, *et seq*.)

623.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

624.   Defendant misrepresented the safety of the Defective Hybrids after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease, servicing and/or use of the Defective Hybrid.

625.   Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease, servicing and/or use of the Defective Hybrid.

626.   Through those misleading and deceptive statements and false promises, Defendant violated the Kentucky Consumer Protection Act ("KCPA").

627.   The KCPA applies to Defendant's transactions with Plaintiffs because Defendant's deceptive scheme was carried out in Kentucky and affected Plaintiffs.

628.   Defendant also failed to advise NHSTA and the public about what they knew about the faulty IMA batteries in the Defective Hybrid.

629.   Plaintiffs relied on Defendant's silence as to known defects in connection with their decision regarding the purchase, lease, service and/or use of the Defective Hybrid.

630.   As a direct and proximate result of Defendant's deceptive conduct and violation of the KCPA, Plaintiffs have sustained and will continue to sustain

- 131 -

economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (Ky. Rev. Stat. § 355.2-313)

631.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

632.   Defendant expressly warranted in writing that the vehicles would be free of material defects and operate safely.

633.   Defendant breached this warranty by knowingly selling to Plaintiffs vehicles with defective IMA batteries, and which were not of high quality.

634.   Plaintiffs have been damaged as a direct and proximate result of the breaches by Defendant in that the Defective Hybrids purchased by Plaintiffs failed to operate reliably and had diminished power and diminished fuel efficiency and were and are worth far less than what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendant.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY
### (Ky. Rev. Stat. § 335.2-314)

635.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

636.   Defendant impliedly warranted that the Defective Hybrids were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation,

- 132 -

in a reliable manner, while achieving the intended power and fuel efficiency inherent in the design, and without unduly endangering them or members of the public.

637.   As described above, there were dangerous defects in the Defective Hybrid, which Plaintiffs purchased, including that the IMA batteries prematurely deteriorate.

638.   These dangerous defects existed at the time the vehicles left Defendant's manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their bargain because the Defective Hybrids do not operate reliably and do not have the power and fuel efficiency inherent in their design and have suffered a diminution in value.

639.   These dangerous defects were the direct and proximate cause of damages to the Plaintiffs and the class.

<div align="center">

**LOUISIANA**

**COUNT II**

**LOUISIANA PRODUCTS LIABILITY ACT**

**(La. Rev. Stat. § 9:2800.51, *et seq.*)**

</div>

640.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

641.   Plaintiffs allege that Honda has defectively designed, manufactured, sold or otherwise placed in the stream of commerce Defective Hybrids as set forth above.

642.   The product in question is unreasonably dangerous for the following reasons:

<div align="center">

- 133 -

</div>

a.      It is unreasonably dangerous in construction or composition as provided in LA. REV. STAT. § 9:2800.55;

b.      It is unreasonably dangerous in design as provided in LA. REV. STAT. § 9:2800.56;

c.      It is unreasonably dangerous because an adequate warning about the product was not provided as required by LA. REV. STAT. § 9:2800.57; and

d.      It is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product that render it unreasonably dangerous under LA. REV. STAT. § 9:2800.55, *et seq*., that existed at the time the product left the control of the manufacturer.

643.   Honda knew and expected for the Defective Hybrids to eventually be sold to and operated by purchasers and/or eventual owners of the Defective Hybrid, including Plaintiffs; consequently, Plaintiffs were an expected user of the product which Honda manufactured.

644.   The Defective Hybrids reached Plaintiffs without substantial changes in their condition from time of completion of manufacture by Honda.

645.   The defects in the Defective Hybrids could not have been contemplated by any reasonable person expected to operate the Defective Hybrid, and, therefore, presented an unreasonably dangerous situation for expected users of the Defective Hybrids even though the Defective Hybrids were operated by expected users in a reasonable manner.

646.   As a direct and proximate cause of Honda's design, manufacture, assembly, marketing, and sales of the Defective Hybrid, Plaintiffs have sustained and will continue to sustain the loss of use of his/her vehicle, economic losses and

- 134 -

consequential damages, and are therefore entitled to compensatory relief according to proof, and entitled to a declaratory judgment that Honda is liable to Plaintiffs for breach of its duty to design, manufacture, assemble, market, and sell a safe product, fit for its reasonably intended use.  Plaintiffs allege that the premature deterioration of the IMA battery is the type of occurrence which would not happen in the absence of a defective product.  Plaintiffs allege the application of res ipsa loquitur under Louisiana Products Liability Law.

<div align="center">

**COUNT III**

**REDHIBITION**

**(LA. Civ. Code Art. 2520, *et seq*. and 2545)**

</div>

647.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

648.   Plaintiffs allege that Honda defectively designed, manufactured, sold or otherwise placed in the stream of commerce vehicles that are defective.

649.   Plaintiffs allege that the premature deterioration of the IMA battery is the type of occurrence which would not happen in the absence of a defective product. Plaintiffs allege the application of res ipsa loquitur under Louisiana Products Liability Law.

650.   Plaintiffs allege that Defendant has known about safety hazards that result in complete failure of the Defective Hybrids for a number of years and has failed to adequately address those safety concerns.

651.   Defendant, as manufacturer of the Defective Hybrid, is responsible for damages caused by the failure of its product to conform to well-defined standards. In particular, the Defective Hybrids contain vices or defects which rendered them

<div align="center">- 135 -</div>

useless or their use so inconvenient and unsafe that a reasonable buyer would not have purchased them.  Defendant manufactured, sold and promoted the vehicles and placed the vehicles into the stream of commerce.  Under Louisiana Law, the seller and manufacturer warrants the buyer against redhibitory defects or vices in the things sold.  LA. CODE CIV. P. Art. 2520.  The vehicles as sold and promoted by Defendant possessed redhibitory defects because they were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which rendered the vehicles useless or their use so inconvenient and unsafe that it must be presumed that a buyer would not have bought the vehicles had he/she known of the defect.  Pursuant to LA. CODE CIV. P. Art. 2520, Plaintiffs are entitled to obtain a rescission of the sale of the subject product.

652.   The vehicles alternatively possess redhibitory defects because the vehicles were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which diminished the value of the vehicles so that it must be presumed that a reasonable buyer would still have bought the vehicles, but for a lesser price, had the redhibitory defects been disclosed. In this instance, Plaintiffs are entitled to a reduction of the purchase price.

653.   As the manufacturer of the vehicle, under Louisiana Law, Defendant is deemed to know that the vehicle contained redhibitory defects pursuant to LA. CODE CIV. P. Art. 2545.  Honda is liable as a bad faith seller for selling a defective product with knowledge of defects and thus is liable to Plaintiffs for the price of the subject product, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject product, and attorney's fees.

- 136 -

654.   Due to the defects and redhibitory vices in the Defective Hybrids sold to Plaintiffs, they have suffered damages under Louisiana Law.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR ORDINARY USE

### (La. Civ. Code Art. 2524)

655.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

656.   At all relevant times, Honda marketed, sold and distributed the Defective Hybrids for use by Plaintiffs, knew of the use for which the Defective Hybrids were intended, and impliedly warranted them to be fit for ordinary use.

657.   The Defective Hybrids, when sold, were defective, unmerchantable, and unfit for ordinary use.

658.   The Defective Hybrids contain vices or defects which render them either absolutely useless or render their use inconvenient, imperfect, and unsafe such that Plaintiffs would not have purchased the Defective Hybrids had they known of the vices or defects.

659.   The damages in question arose from the reasonably anticipated use of the product in question.

660.   Honda breached the implied warranties of merchantability and fitness for ordinary use when the Defective Hybrids were sold to Plaintiffs because the IMA batteries prematurely deteriorate, which causes unreliable operation, loss of power, and loss of intended fuel efficiency.

- 137 -

661.  As a direct and proximate cause of Honda's breach of the implied warranties of merchantability and fitness for ordinary use, Plaintiffs and the class have suffered injuries and damages.

## MAINE

## COUNT II

## VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
### (Me. Rev. Stat. Ann. tit. 5 § 205-A, *et seq*.)

662.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

663.  The Maine Unfair Trade Practices Act ("UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." per ME. REV. STAT. ANN. TIT. 5 § 207.

664.  The advertising and sale of motor vehicles by Honda constitutes "trade or commerce" within the meaning of UTPA per ME. REV. STAT. ANN. TIT. 5 § 206(3).

665.  In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation as described above.  This was a deceptive act in that Honda represented that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have; represented that Defective Hybrids are of a particular standard and quality when they are not; and represented that the Software Update repaired the defective IMA batteries when it did not.  Honda knew or should have known that its conduct violated the UTPA.

- 138 -

666.   Honda engaged in a deceptive trade practice when it failed to disclose material information concerning the Honda vehicles which was known to Honda at the time of the sale and the time of the Software Update. Honda deliberately withheld the information about the premature deterioration of the IMA batteries during their normal useful life in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

667.   The information withheld was material in that it was information that was important to consumers and likely to affect their choice of, or conduct regarding, the purchase and servicing of their cars.  Honda's withholding of this information was likely to mislead consumers acting reasonably under the circumstances.  The reliability, power and fuel efficiency were material to Plaintiffs and the class.  Had Plaintiffs and the class known that the Defective Hybrids had these serious safety defects, they would not have purchased them and/or would not have permitted the installation of the Software Update.

668.   Honda's conduct has caused or is to cause a substantial injury that is not reasonably avoided by consumers, and the harm is not outweighed by a countervailing benefit to consumers or competition

669.   As a result of Honda's deceptive and unfair practices, Plaintiffs and the class have suffered loss of money or property.  Plaintiffs and the class did not receive the benefit of their bargain.  The Defective Hybrids are not reliable and do not have the power and fuel efficiency for which they were designed.

670.   Plaintiffs are entitled to actual damages, restitution and such other equitable relief, including an injunction, as the Court determines to be necessary and proper.

- 139 -

671.    Pursuant to ME. REV. STAT. ANN. TIT. 5 § 213(3), Plaintiffs will mail a copy of the complaint to Maine's Attorney General.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Me. Rev. Stat. Ann. tit. 11 § 2-314)

672.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

673.    Honda is and was at all relevant times a merchant with respect to motor vehicles.

674.    A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

675.    The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

676.    Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 140 -

677.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT
### (Based On Maine Law)

678.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

679.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Maine's Commercial Code, Plaintiffs plead in the alternative under common law contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

680.   Honda breached this contractual obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

681.   As a direct and proximate result of Defendant's breach of contract warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

- 141 -

**MARYLAND**

**COUNT II**

**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**

**(Md. Code Com. Law § 13-101, *et seq.*)**

682.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

683.   Plaintiffs are persons within the meaning of the Maryland Consumer Protection Act (the "Act") for all purposes therein.

684.   Honda is a person within the meaning of the Act for all purposes therein.

685.   The false, deceptive and misleading statements and representations made by Honda alleged herein are Unfair and Deceptive Trade Practices within the meaning of the Act.

686.   Honda participated in unfair or deceptive acts or practices that violated the Act, as described herein, and those unfair and deceptive trade practices occurred or were committed in the course, vocation or occupation of Defendant's businesses. Honda engaged in the unfair and deceptive trade practices and is liable for these violations of law.

687.   The Unfair and Deceptive Trade Practices as alleged herein significantly impact the public as actual or potential customers of Honda.

688.   By failing to disclose and actively concealing the premature deterioration of the IMA batteries during normal operation, Honda engaged in deceptive business practices prohibited by the Act, including, but not limited to, (1) representing that Defective Hybrids have characteristics, uses, benefits, and qualities

- 142 -

which they do not have, (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are not, (3) representing that the Software Update repaired the defective IMA batteries when it did not; (4) representing that a transaction involving Defective Hybrids confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Hybrids has been supplied in accordance with a previous representation when it has not.

689.   As alleged above, Honda made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading. Each of these statements contributed to the deceptive context of Honda's representations as a whole.

690.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update.

691.   As a direct and proximate result of their unfair and deceptive business practices, and violations of the Act detailed above, Honda caused actual damages, injuries, and losses to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease Defective Hybrids that are defective and inherently unsafe.   Plaintiffs' and the class Defective Hybrids do not operate reliably and lack power and Plaintiffs and the class are required to spend more on fuel than they would if Honda did not engage in the practices described herein.

692.   Plaintiffs are entitled to all damages permitted by M.R.S § 13-101, *et seq.*, including actual damages sustained, civil penalties, attorneys' fees, and costs

of this action.  Also, the State of Maryland is entitled to statutory penalties from Defendant for each violation of the Act.

## COUNT III

## BREACH OF EXPRESS WARRANTY

## (Md. Code Com. Law § 2-313)

693.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

694.   Honda is and was at all relevant times a merchant as defined by the Uniform Commercial Code.

695.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

696.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

697.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

698.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

699.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the

- 144 -

warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

700.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

701.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

702.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Md. Code Com. Law § 2-314)

703.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 145 -

704.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

705.   A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transactions.

706.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

707.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

708.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Maryland Law)

709.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 146 -

710.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under the Maryland Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

711.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

712.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT
### (Based On Maryland Law)

713.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

714.   At all times relevant hereto, Honda was engaged in the business of designing, manufacturing, assembling, promoting, advertising, selling, and distributing Honda vehicles in the United States, including, but not limited to, the Defective Hybrid.

715.   Honda knew and expected for the Defective Hybrids to eventually be sold to and operated by consumers and/or eventual owners of the Defective Hybrid,

- 147 -

including Plaintiffs and the class.  Consequently, Plaintiffs and the class were foreseeable users of the products which Honda manufactured.

716.   The Defective Hybrids reached Plaintiffs and the class without substantial change in condition from the time they were manufactured by Honda.

717.   The propensity of the Defective Hybrids to lose all power, operate unreliably, and fail to obtain the intended power and fuel efficiency in its design could not have been contemplated by any reasonable person expected to operate the Defective Hybrid, and for that reason, presented an unreasonably dangerous situation for foreseeable users of the Defective Hybrids even though the Defective Hybrids were operated by foreseeable users in a reasonable manner.

718.   Honda should have reasonably foreseen that the dangerous conditions of the Defective Hybrids losing all power, failing to operate reliably and operating with diminished power and fuel efficiency would subject Plaintiffs and the class to harm.

719.   As a result of these defective designs, the Defective Hybrids are unreasonably dangerous.

720.   Plaintiffs and the class have used the Defective Hybrids reasonably and as intended, to the fullest degree possible given their defective nature, and, nevertheless, have suffered damages through no fault of their own.

721.   Safer, more reliable alternative designs existed for the Defective Hybrid.

722.   As a direct and proximate result of Honda's design, manufacture, assembly, marketing, and sales of the Defective Hybrid, Plaintiffs and the class have sustained and will continue to sustain the loss of the use of their vehicles, economic losses, and consequential damages, and are, therefore, entitled to compensatory relief

- 148 -

according to proof, and entitled to a declaratory judgment that Honda is liable to Plaintiffs and the class for breach of its duty to design, manufacture, assemble, market, and sell a safe product, fit for its reasonably intended use.  Plaintiffs and the class are therefore entitled to equitable relief as described below.

723.   Plaintiffs and the class demand judgment against Honda for design defects as prayed for below.

## COUNT VII
## STRICT PRODUCTS LIABILITY – DEFECTIVE MANUFACTURING
### (Based On Maryland Law)

724.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

725.   Honda is the manufacturer, designer, distributor, seller, or supplier of the Defective Hybrid.

726.   The Defective Hybrids manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Honda were defective in their manufacture and construction such that they were unreasonably dangerous, were not fit for the ordinary purposes for which they were intended, and/or did not meet the reasonable expectations of any consumer.

727.   The Defective Hybrids manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Honda, were defective in their manufacture and construction as described at the time they left Honda's control.

728.   The Defective Hybrids are unreasonably dangerous due to their defective manufacture because they may lose all power and cease operating while on the public roadways.

- 149 -

729. As a direct and proximate result of Plaintiffs' purchase and use of the Defective Hybrids as manufactured, designed, sold, supplied and introduced into the stream of commerce by Honda, Plaintiffs and the class suffered economic losses, and will continue to suffer such damages and economic losses in the future.

730. Plaintiffs demand judgment against Honda for manufacturing defects as prayed for below.

<div align="center">

**COUNT VIII**

**STRICT PRODUCTS LIABILITY –**
**DEFECT DUE TO NONCONFORMANCE WITH REPRESENTATIONS**

**(Based On Maryland Law)**

</div>

731. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

732. Honda is the manufacturer, designer, distributor, seller, or supplier of the Defective Hybrid, and Honda made representations regarding the character or quality of the Defective Hybrid.

733. The Defective Hybrids manufactured and supplied by Honda were defective in that, when they left the hands of Honda, they did not conform to the representations made by Honda concerning the Defective Hybrid.

734. Plaintiffs and the class justifiably relied upon Honda's representations regarding the Defective Hybrids when they purchased and used the Defective Hybrid.

735. As a direct and proximate result of their reliance on Honda's representations regarding the character and quality of the Defective Hybrid, Plaintiffs

<div align="center">- 150 -</div>

1    and the class suffered damages and economic losses, and will continue to suffer such

2    damages and economic losses in the future.

3        736.    Plaintiffs demand judgment against Honda for manufacturing defects as

4    prayed for below.

5
6                          **MASSACHUSETTS**

7                            **COUNT II**

8              **VIOLATION OF THE MASSACHUSETTS
                 CONSUMER PROTECTION ACT**

9                          **(Chapter 93A)**

10       737.    Plaintiffs reallege and incorporate by reference all paragraphs as though

11   fully set forth herein.

12
13       738.    The conduct of Honda as set forth herein constitutes unfair and

14   deceptive acts or practices in violation of the Massachusetts Consumer Protection

15   Act, Mass. Gen. L. ch. 93A, including, but not limited to (1) Honda's manufacture

16   and sale of vehicles with IMA batteries that prematurely deteriorate during their

17   normal useful life, which Honda failed to adequately investigate, disclose and

18   remedy; (2) its misrepresentations and omissions regarding the reliability, power and

19   fuel efficiency of the Defective Hybrid; and (3) its misrepresentations and omissions

20   concerning the Software Update, which misrepresentations and omissions possessed

21   the tendency to deceive.

22
23       739.    Honda engages in the conduct of trade or commerce and the misconduct

24   alleged herein occurred in trade or commerce.

25
26       740.    In satisfaction of MASS. GEN. LAWS CH. 93A, § 9(3), Plaintiffs have

27   made demand on Honda more than 30 days prior to this filing by numerous letters

28   sent by Plaintiffs and the class.  These letters asserted that rights of consumers as

                                    - 151 -

claimants had been violated, described the unfair and deceptive acts committed by Honda, and specified the injuries that Plaintiffs and the class have suffered and the relief they seek.  Thus, these letters satisfy section 9(3).

741.   As a result of Defendant's unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, MASS. GEN. L. CH. 93A, Plaintiffs suffered injury as described herein.  Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

<div align="center">

**COUNT III**

**BREACH OF EXPRESS WARRANTY**

**(ALM GL ch. 106, § 2-313)**

</div>

742.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

743.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

744.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

745.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

746.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has

- 152 -

failed and/or has refused to adequately provide the promised remedies within a reasonable time.

747.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

748.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

749.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

750.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 153 -

751.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (ALM GL ch. 106, § 2-314)

752.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

753.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

754.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

755.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

756.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 154 -

757.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V

## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Massachusetts Law)

758.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

759.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Massachusetts's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

760.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

761.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

- 155 -

# MICHIGAN

## COUNT II

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (Mich. Comp. Laws § 445.901, *et seq.*)

762. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

763. Defendants misrepresented the safety of the Defective Hybrids after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Defective Hybrid.

764. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Defective Hybrid.

765. Through those misleading and deceptive statements and false promises, Defendants violated the Michigan Consumer Protection Act.

766. The Michigan Consumer Protection Act applies to Defendant's transactions with Plaintiffs because Defendant's deceptive scheme was carried out in Michigan and affected Plaintiffs.

767. Defendant also failed to advise NHSTA and the public about what it knew about the premature deterioration of the IMA batteries in the Defective Hybrid.

768. Plaintiffs relied on Defendant's silence as to known defects in connection with their decision regarding the purchase, lease, servicing and/or use of the Defective Hybrid.

769. As a direct and proximate result of Defendant's deceptive conduct and violation of the Michigan Consumer Protection Act, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are

- 156 -

entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT III

## BREACH OF EXPRESS WARRANTY

### (Mich. Comp. Laws § 440.2313)

770.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

771.   Defendant expressly warranted that the Defective Hybrids were free of material defects, and at a minimum, would actually work properly and safely.

772.   Defendant breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

773.   Plaintiffs have been damaged as a direct and proximate result of the breaches by Defendant in that the Defective Hybrids purchased by Plaintiffs did not operate reliably and did not have the power and fuel efficiency intended in their design and were and are worth far less than what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendant.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Mich. Comp. Laws § 440.2314)

774.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

775.   Defendant impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting

- 157 -

the driver and passengers in reasonably safety during normal operation, and without unduly endangering them or members of the public.

776.   As described above, there were dangerous defects in the Defective Hybrid, which Plaintiffs purchased, including that the IMA batteries prematurely deteriorate, which can cause the Defective Hybrids to lose all power while on the public roadways, operate unreliably, and have diminished power and fuel efficiency.

777.   These dangerous defects existed at the time the vehicles left Defendant's manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

778.   These dangerous defects were the direct and proximate cause of damages to the Plaintiffs.

<div align="center">

**MINNESOTA**

**COUNT II**

**VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**

**(Minn. Stat. § 325D.43-48, *et seq*.)**

</div>

779.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

780.   Defendant engaged in – and continue to engage in – conduct that violates the Minnesota Deceptive Trade Practices Act, MINN. STAT. § 325D.44, *et seq*.  The violations include the following:

a.       Defendant violated MINN. STAT. § 325D.44(5) by representing the Defective Hybrids as having characteristics, uses, and benefits of safe and

<div align="center">

- 158 -

</div>

mechanically sound vehicles while knowing that the statements were false and the Defective Hybrids contained defects;

b.     Defendant violated MINN. STAT. § 325D.44(7) by representing the Defective Hybrids as a non-defective product of a particular standard, quality, or grade while knowing the statements were false and the Defective Hybrids contained defects;

c.     Defendant violated MINN. STAT. § 325D.44(9) by advertising, marketing, and selling the Defective Hybrids as reliable and without a known defect while knowing those claims were false; and

d.     Defendant violated MINN. STAT. § 325D.44(13) by creating a likelihood of confusion and/or misrepresenting the safety of the Defective Hybrid.

781.   Defendant's deceptive scheme was carried out in Minnesota and affected Plaintiffs.

782.   Defendant also failed to advise the NHSTA and the public about what it knew about the premature deterioration of the IMA batteries.

783.   As a direct and proximate result of Defendant's deceptive conduct and violation of MINN. STAT. § 325D.44, *et seq*., Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

# COUNT III

## VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT

### (Minn. Stat. § 325F.68, *et seq.*)

784.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

785.   Defendants misrepresented the safety of the Defective Hybrids after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease, servicing and/or use of the Defective Hybrid.

786.   Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease, servicing and/or use of the Defective Hybrid.

787.   Through these misleading and deceptive statements and false promises, Defendants violated MINN. STAT. § 325F.69.

788.   The Minnesota Prevention of Consumer Fraud Act applies to Defendant's transactions with Plaintiffs because Defendant's deceptive scheme was carried out in Minnesota and affected Plaintiffs.

789.   Defendant also failed to advise the NHSTA and the public about what they knew about premature deterioration of the IMA batteries in the Defective Hybrid.

790.   Plaintiffs relied on Defendant's silence as to known defects in connection with their decision regarding the purchase, lease, servicing and/or use of the Defective Hybrid.

- 160 -

791.   As a direct and proximate result of Defendant's deceptive conduct and violation of MINN. STAT. § 325F.69, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT IV
## BREACH OF EXPRESS WARRANTY
### (Minn. Stat. § 325G.19 Express Warranties)

792.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

793.   Defendant is and at all relevant times was a merchant as defined by the Uniform Commercial Code ("UCC").

794.   Defendant expressly warranted that the Defective Hybrids were free of material defects and, at a minimum, would actually work properly and safely.  These warranties became part of the basis of the bargain.

795.   Defendant breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

796.   Plaintiffs have been damaged as a direct and proximate result of the breaches by Defendant in that the Defective Hybrids purchased by Plaintiffs do not operate reliable, have diminished power and fuel efficiency and were and are worth far less than what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendant.

797.   Plaintiffs were unaware of these defects and could not have reasonably discovered them when they purchased their vehicles from Honda.

798.   Plaintiffs and the class are entitled to damages, including the diminished value of their vehicles and the value of the non-use of the vehicles pending successful repair, in addition to any costs associated with purchasing safer vehicles, incidental and consequential damages, and all other damages allowable under the law, including such further relief as the Court deems just and proper.

## COUNT V

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (STRICT LIABILITY)

### (Minn. Stat. § 336.2-314 Implied Warranty; Merchantability; Usage Of Trade)

799.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

800.   Defendant impliedly warranted that its vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

801.   As described above, there were dangerous defects in the Defective Hybrid, which Plaintiffs purchased, including, but not limited to, defects that caused the IMA batteries to prematurely deteriorate rendering the Defective Hybrids subject to complete loss of power, loss or reliability, diminished power and diminished fuel efficiency.

802.   These dangerous defects existed at the time the vehicles left Defendant's manufacturing facilities and at the time they were sold to the Plaintiffs. Furthermore, because of these dangerous defects, Plaintiff did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

- 162 -

803.   These dangerous defects were the direct and proximate cause of damages to the Plaintiffs.

**COUNT VI**

**STRICT LIABILITY (DESIGN DEFECT)**

**(Based On Minnesota Law)**

804.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

805.   Defendant is and has been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Defective Hybrids in the United States, including those owned or leased by the Plaintiffs and the class.

806.   Defendant knew and anticipated that the vehicles owned or leased by Plaintiffs and the class would be sold to and operated by purchasers and/or eventual owners or lessors of Defendant's vehicles, including Plaintiffs and the class. Defendant also knew that these Defective Hybrids would reach Plaintiffs and the class without substantial change in their condition from the time the vehicles departed Defendant's assembly lines.

807.   Defendant designed the Defective Hybrids defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

808.   Defendant had the capability to use a feasible, alternative, safer design, and failed to correct the design defects.

809.   The risks inherent in the design of the Defective Hybrids outweigh significantly any benefits of such design.

- 163 -

810.   Plaintiffs and the class could not have anticipated and did not know of the aforementioned defects at any time prior to recent revelations regarding the problems with the Defective Hybrid.

811.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and the class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VII
## STRICT LIABILITY (FAILURE TO WARN)
### (Based On Minnesota Law)

812.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

813.   Defendant is and has been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Defective Hybrids in the United States, including those owned or leased by the Plaintiffs and the class.

814.   Defendant, at all times pertinent to this Complaint, knew and anticipated that the Defective Hybrids and their component parts would be purchased, leased and operated by consumers, including Plaintiffs and the class.

815.   Defendant also knew that these Defective Hybrids would reach the Plaintiff and the class without substantial change in their conditions from the time that the vehicles departed Defendant's assembly lines.

816.   Defendant knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the Defective Hybrid, defective design,

- 164 -

manufacturing and lack of sufficient warnings caused them to have prematurely deteriorating IMA batteries which could unreasonably cause complete loss of power, unreliable operation, diminished power and diminished fuel efficiency.

817.   Defendant failed to adequately warn Plaintiffs and the class when it became aware of the defect that caused Plaintiffs and the class vehicles to be prone to premature deterioration of the IMA batteries.

818.   Defendant also failed to timely recall the vehicles or take any action to timely warn Plaintiffs or the class of these problems and instead continue to subject Plaintiffs and the class to harm.

819.   Defendant knew, or should have known, that these defects were not readily recognizable to an ordinary consumer and that consumers would lease, purchase, service and use these products without inspection.

820.   Defendant should have reasonably foreseen that the defect in the Defective Hybrids would subject the Plaintiffs and the class to harm resulting from the defect.

821.   Plaintiffs and the class have used the Defective Hybrids for their intended purpose and in a reasonable and foreseeable manner.

822.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and the class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**MISSISSIPPI**

**COUNT II**

**MISSISSIPPI PRODUCTS LIABILITY ACT**

**(Miss. Code Ann. § 11-1-63, *et seq.*)**

823.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

824.   Honda has defectively designed, manufactured, sold or otherwise placed in the stream of commerce Defective Hybrid.

825.   Honda is strictly liable in tort for the Plaintiffs' injuries and damages and the Plaintiffs respectfully rely upon the Doctrine as set forth in RESTATEMENT, SECOND, TORTS § 402(a).

826.   Because of the negligence of the design and manufacture of the Defective Hybrid, by which Plaintiffs were injured and the failure of Honda to warn Plaintiffs of the certain dangers concerning the operation of the Defective Hybrids which were known to Defendant but were unknown to Plaintiffs, Defendant has committed a tort.

827.   The Defective Hybrids which caused Plaintiffs' injuries were manufactured by Honda.

828.   At all times herein material, Defendant negligently and carelessly did certain acts and failed to do other things, including, but not limited to, inventing, developing, designing, researching, guarding, manufacturing, building, inspecting, investigating, testing, labeling, instructing, and negligently and carelessly failing to provide adequate and fair warning of the characteristics, dangers and hazards associated with the operation of the vehicles in question to users of the Defective

- 166 -

Hybrid, including, but not limited to, Plaintiffs, and willfully failing to recall or otherwise cure one or more of the defects in the product involved thereby directly and proximately causing the hereinafter described injury.

829.   The Defective Hybrids were unsafe for their use by reason of the fact that they were defective.  For example, the Defective Hybrids were defective in their design, guarding, development, manufacture, and lack of permanent, accurate, adequate and fair warning of the characteristics, danger and hazard to the user, prospective user and members of the general public, including, but not limited to, Plaintiffs, and because Defendant failed to recall or otherwise cure one or more defects in the vehicles involved thereby directly and proximately causing the described injuries.

830.   Defendant knew or reasonably should have known that the above mentioned product would be purchased and used without all necessary testing or inspection for defects by the Plaintiffs and the class.

831.   Plaintiffs were not aware of those defects at any time before the incident and occurrence mentioned in this complaint, or else Plaintiff was unable, as a practical matter, to cure that defective condition.

832.   Plaintiffs used the product in a foreseeable manner.

833.   As a proximate result of the negligence of Defendant, Plaintiffs suffered injuries and damages.

- 167 -

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Miss. Code Ann. §§ 75-2-314)

834.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

835.   Honda has defectively designed, manufactured, sold or otherwise placed in the stream of commerce defective vehicles as set forth above.

836.   Honda impliedly warranted that the Defective Hybrids were merchantable and for the ordinary purpose for which they were designed, manufactured, and sold.

837.   The Defective Hybrids were not in merchantable condition or fit for ordinary use due to the defects described above and as a result of the breach of warranty of merchantability by Honda, Plaintiffs sustained injuries and damages.

## MISSOURI

## COUNT II

## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (Mo. Rev. Stat. § 407.010, *et seq.*)

838.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

839.   The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life, which Honda failed to adequately investigate, disclose and remedy, its misrepresentations regarding the Software Update, and its misrepresentations and

- 168 -

omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

840.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

841.   Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

842.   Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

843.   Honda's conduct proximately caused the injuries to Plaintiffs and the class.

844.   Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

845.   Pursuant to MO. REV. STAT. § 407.010, Plaintiffs will serve the Missouri Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

<div align="center">

**COUNT III**

**BREACH OF EXPRESS WARRANTY**

**(Mo. Rev. Stat. § 400.2-313)**

</div>

846.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

<div align="center">- 169 -</div>

847. Honda is and was at all relevant times a merchant with respect to motor vehicles.

848. In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

849. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship. Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

850. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

851. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

852. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

853. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's

- 170 -

fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

854.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

855.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Mo. Rev. Stat. § 400.2-314)

856.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

857.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

858.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions, pursuant to Mo. Rev. Stat. § 400.2-314.

859.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

- 171 -

used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

860.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

861.   Plaintiffs and the class have had sufficient dealings with either Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and the class.  Notwithstanding this, privity is not required in this case because Plaintiffs and the class are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiffs' and the class's Hondas are dangerous instrumentalities due to the aforementioned defects and nonconformities.

862.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

**COUNT V**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based On Missouri Law)**

863.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

864.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Missouri's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

865.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

866.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**MONTANA**

**COUNT II**

**BREACH OF EXPRESS WARRANTY**

**(Mont. Code § 30-2-313)**

867.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 173 -

868.   Honda is and was at all relevant times a merchant with respect to motor vehicles under MONT. CODE. ANN. § 30-2-104.

869.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

870.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

871.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

872.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

873.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable pursuant to MONT. CODE ANN. § 30-2-302.

- 174 -

874.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

875.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

876.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Mont. Code § 30-2-314)

877.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

878.   Honda is and was at all relevant times a merchant with respect to motor vehicles under MONT. CODE § 30-2-104.

879.   A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to MONT. CODE § 30-2-314.

- 175 -

880.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

881.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

882.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Montana Law)

883.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

884.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Montana's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

- 176 -

885.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

886.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## NEBRASKA

## COUNT II

## VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (Neb. Rev. Stat. § 59-1601, *et seq.*)

887.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

888.   The Nebraska Consumer Protection Act ("NCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

889.   "Trade or commerce" means "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."

890.   The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life, which Honda failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the Software Update, and the reliability, power and fuel efficiency of the Defective Hybrid, which misrepresentations and omissions possessed the tendency or capacity to mislead.

- 177 -

891.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

892.   Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

893.   Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

894.   Honda's conduct proximately caused the injuries to Plaintiffs and the class, who are entitled to recover actual damages, as well as enhanced damages pursuant to § 59-1609.

## COUNT III

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Neb. Rev. Stat. Neb. § 2-314)

895.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

896.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

897.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

898.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

899.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

900.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<div align="center">

**NEVADA**

**COUNT II**

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

**(Nev. Rev. Stat. § 598.0903, *et seq.*)**

</div>

901.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

902.   Honda is a "person" as required under the statute.

903.   Honda's actions as set forth above occurred in the course of business.

904.   The Nevada Deceptive Trade Practices Act, NEV. REV. STAT. § 598.0903, *et seq.*, prohibits unfair or deceptive consumer sales practices.

<div align="center">

- 179 -

</div>

905.   The NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she does any of the following, including:  "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; " 7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; or "15. Knowingly makes any other false representation in a transaction."

906.   In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation as described above.  Accordingly, Honda engaged in deceptive trade practices, including making false representation as to the characteristics, uses, and benefits of the Defective Hybrid; representing that Defective Hybrids are of a particular standard and quality when they are not; misrepresenting that the Software Update was a repair when it was not; and knowingly made numerous other false representations as further described during the fact section of this complaint.

907.   Honda knowingly made false representations to consumers with the intent to induce consumers into purchasing and servicing Honda vehicles.  Plaintiffs reasonably relied on false representations by Honda and were induced to each purchase, operate and/or service a Defective Hybrid, to his/her detriment.  As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

908.   Plaintiffs and the class suffered ascertainable loss caused by Honda's false representations and failure to disclose material information.  Plaintiffs and the class overpaid for their vehicles and did not receive the benefit of their bargain.  The Affected HCH Vehicles may lose all power, fail to operate reliably and have diminished power and fuel efficiency.  The value of their Honda's has diminished now that the IMA battery issues have come to light, and Plaintiffs and the class own vehicles that are not safe or reliable, and do not operate with their intended power and fuel efficiency.

## COUNT III

## BREACH OF EXPRESS WARRANTY

### (Nev. Rev. Stat. § 104.2313)

909.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

910.   Honda is and was at all relevant times a merchant with respect to motor vehicles under the Uniform Commercial Code.

911.   In the course of selling its vehicles, Honda expressly warranted in writing that the Vehicles were covered by a warranty.

912.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

913.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has

failed and/or has refused to adequately provide the promised remedies within a reasonable time.

914.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

915.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

916.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

917.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 182 -

918.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Nev. Rev. Stat. § 104.2314)

919.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

920.   Honda is and was at all relevant times a merchant with respect to motor vehicles under the Uniform Commercial Code.

921.   A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to the Uniform Commercial Code.

922.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

923.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 183 -

924.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Nevada Law)

925.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

926.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under Nevada's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

927.   Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

928.   As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

- 184 -

# COUNT VI

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Based On Nevada Law)

929.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

930.   As set forth above, Plaintiffs and the class have entered into individual sales transactions and agreements with Honda for the purchase Honda vehicles.

931.   Plaintiffs and the class have fully performed their obligations with Honda under such transactions and agreements.

932.   At all times, Honda owed Plaintiffs and the class a duty to exercise and act in good faith and deal fairly with them in the performance of repairs of Defective Hybrid.

933.   Honda has breached these duties and obligations in the manner and particulars set forth above, including, but not limited to, failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them, and/or installing the Software Update which only served to further dimish the power and fuel efficiency of the Defective Hybrid.

934.   As a direct and proximate result of Defendant's failure to abide and comply with their obligations and duties, Plaintiffs and the class have suffered pecuniary damages in an amount that has not yet been determined.

- 185 -

# NEW HAMPSHIRE

## COUNT II

## VIOLATION OF N.H. CONSUMER PROTECTION ACT

### (N.H. Rev. Stat. Ann. § 358A:1, *et seq*.)

935.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

936.   The New Hampshire Consumer Protection Act ("CPA") prohibits a person, in the conduct of any trade or commerce, from doing any of the following: "(V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have; … and (VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another."  N.H. REV. STAT. § 358-A:2.

937.   Honda is a person within the meaning of the CPA.  *See* N.H. REV. STAT. § 358A:1(I).

938.   In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation as described above.  Accordingly, Honda engaged in unlawful trade practices, including representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have; and representing that Defective Hybrids are of a particular standard and quality when they are not.  Honda knew or should have known that its conduct violated the OUTPA.

939.   Honda engaged in a deceptive trade practice when it failed to disclose material information concerning the Honda vehicles which was known to Honda at the time of the sale. Honda deliberately withheld the information about the premature

- 186 -

deterioration of the IMA batteries in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

940.   The reliability of the Defective Hybrid, their power and fuel efficiency were material to Plaintiffs and the class.  Had Plaintiffs and the class known that their Hondas had these serious safety defects, they would not have purchased their Hondas.

941.   Honda's failure to disclose material information has injured Plaintiffs and the class.  Plaintiffs and the class overpaid for their vehicles and did not receive the benefit of their bargain.  The Defective Hybrids do not operate reliably and have diminished power and fuel efficiency.  The value of the Defective Hybrids has diminished now that the IMA battery issues have come to light, and Plaintiffs and the class own vehicles that are not safe.

942.   Plaintiffs are entitled to recover the greater of actual damages or $1,000 pursuant to N.H. REV. STAT. § 358-A:10.  Plaintiffs are also entitled to treble damages because Honda acted willfully in its unfair and deceptive practices.

## COUNT III
## BREACH OF EXPRESS WARRANTY
## (N.H. Rev. Stat. Ann. § 382-A:2-313)

943.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

944.   Honda is and was at all relevant times a merchant with respect to motor vehicles under N.H. REV. STAT. § 382-A:2-313.

945.   In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

- 187 -

010296-11 501535 V1

946.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

947.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

948.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

949.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

950.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to

- 188 -

provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' remedies would be insufficient to make whole.

951.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

952.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.H. Rev. Stat. Ann. § 382-A:2-314)

953.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

954.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

955.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

956.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated

- 189 -

IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

957.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

958.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF COMMON LAW WARRANTY
### (Based On New Hampshire Law)

959.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

960.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under New Hampshire's Commercial Code, Plaintiffs plead in the alternative under common law contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

961.   Honda breached this contractual obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

- 190 -

962.   As a direct and proximate result of Defendant's breach of contract, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**NEW JERSEY**

**COUNT II**

**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**

**(N.J. Stat. Ann. § 56:8-1, *et seq*.)**

</div>

963.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

964.   The New Jersey Consumer Fraud Act ("CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. STAT. ANN. § 56:8-2.

965.   Honda is a person within the meaning of the CFA.  N.J. STAT. ANN. § 56:8-1(d).

966.   In the course of Honda's business, it knowingly failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation as described above.  This was an unlawful practice in that Honda represented that Defective Hybrids have characteristics, uses, benefits, and qualities

<div align="center">- 191 -</div>

which they do not have; and represented that Defective Hybrids are of a particular standard and quality when they are not.  Honda knew or should have known that its conduct violated the CFA.

967.   Honda engaged in an unlawful practice under the CFA when it failed to disclose material information concerning the Honda vehicles which was known to Honda at the time of the sale. Honda deliberately withheld the information about the premature deterioration of the IMA batteries in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

968.   Honda's unlawful practices cause substantial injury to consumers.

969.   The reliability of the Defective Hybrid, their power and fuel efficiency were material to Plaintiffs and the class.  Had Plaintiffs and the class known that their Hondas had these serious safety defects, they would not have purchased the Defective Hybrids or allowed the installation of the Software Update.

970.   Plaintiffs and the class suffered ascertainable loss of money or property caused by Honda's unlawful practices.  Plaintiffs and the class overpaid for their vehicles and did not receive the benefit of their bargain.  The Defective Hybrids do not operate reliably and have diminished power and fuel efficiency.  The value of their Hondas has diminished now that the IMA battery issues have come to light, and Plaintiffs and the class own vehicles that are not safe.

971.   Plaintiffs are entitled to recover legal and/or equitable relief, treble damages, and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19.

972.   Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiffs will mail a copy of the complaint to New Jersey's Attorney General within ten (10) days of filing it with the Court.

# COUNT III

## BREACH OF EXPRESS WARRANTY

### (N.J. Stat. Ann. § 12A:2-313)

973.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

974.  Honda is and was at all relevant times a merchant with respect to motor vehicles.

975.  In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

976.  Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

977.  Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

978.  Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

979.  Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid.

- 193 -

Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

980.   Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

981.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

982.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amounted to be determined at trial.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. Stat. Ann. § 12A:2-314)

983.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

984.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

- 194 -

985.   A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

986.   The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

987.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

988.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT V**

**BREACH OF CONTRACT**

**(Based On New Jersey Law)**

</div>

989.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

990.   To the extent Honda's repair or replace commitment is deemed not to be a warranty under New Jersey's Commercial Code, Plaintiffs plead in the alternative under common law contract law.  Honda limited the remedies available to Plaintiffs

<div align="center">- 195 -</div>

and the class to just repairs and replacements needed to correct defects in materials or workmanship.

991.   Honda breached this contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

992.   As a direct and proximate result of Defendant's breach of contract, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## NEW MEXICO
## COUNT II
## BREACH OF EXPRESS WARRANTY
### (N.M. Stat. Ann. § 55-2-313)

993.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

994.   Honda is and was at all relevant times a merchant with respect to motor vehicles under N.M. STAT. ANN. § 55-2-104.

995.   In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

996.   Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

997.   Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is

- 196 -

insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

998.   Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

999.   Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

1000. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1001. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable

- 197 -

1  amount of time after Honda issued the Service Bulletins and the allegations of

2  vehicle defects became public.

3  1002. As a direct and proximate result of Honda's breach of express

4  warranties, Plaintiffs and the class have been damaged in an amount to be

5  determined at trial.

6

7  **COUNT III**

8  **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
   **(N.M. Stat. Ann. § 55-2-314)**

9

10  1003. Plaintiffs reallege and incorporate by reference all paragraphs as though

11  fully set forth herein.

12  1004. Honda is and was at all relevant times a merchant with respect to motor

13  vehicles under N.M. STAT. ANN. § 55-2-104.

14  1005. A warranty that the Defective Hybrids were in merchantable condition

15  was implied by law in the instant transaction, pursuant to N.M. STAT. ANN. § 55-2-

16  314.

17

18  1006. The Defective Hybrids, when sold and at all times thereafter, were not

19  in merchantable condition and are not fit for the ordinary purpose for which cars are

20  used. Specifically, the Defective Hybrids are inherently defective in that the IMA

21  batteries prematurely deteriorate under normal operating conditions. Deteriorated

22  IMA batteries render the Defective Hybrids inoperable and/or cause the Defective

23  Hybrids to have diminished power and obtain diminished fuel efficiency.

24

25  1007. Honda was provided notice of these issues by numerous complaints

26  filed against it, including the instant complaint, and by numerous individual letters

27  and communications sent by Plaintiffs and the class before or within a reasonable

28

- 198 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1008. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT IV**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Based On New Mexico Laws)**

</div>

1009. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1010. To the extent Honda's repair or replace commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in New Mexico, Plaintiffs plead in the alternative under common law warranty and contract law. Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1011. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1012. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

1013. Defendant's breaches were malicious, fraudulent, oppressive, or committed recklessly with wanton disregard for the rights of the Plaintiffs and the

<div align="center">- 199 -</div>

class. Accordingly, as Defendant has acted with the requisite culpable state of mind, the Plaintiffs and the class seek exemplary damages against Defendant in an amount to be determined at trial.

## COUNT V

### VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

### (N.M. Stat. Ann. §§ 57-12-1, *et seq.*)

1014. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1015. Defendant's above-described acts and omissions constitute unfair or deceptive acts or practices under the New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. §§ 57-12-1, *et seq.* ("New Mexico UTPA").

1016. By failing to disclose and actively concealing the premature deterioration of the IMA batteries during normal operation, Defendant engaged in deceptive business practices prohibited by the New Mexico UTPA, including (1) representing that Defective Hybrids have characteristics and benefits, which they do not have, (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are not, (3) using exaggeration as to a material fact and by doing so deceiving or tending to deceive, (4) failing to state a material fact and by doing so deceiving or tending to deceive, and (5) representing that a transaction involving Defective Hybrids confers or involves rights, remedies, and obligations which it does not.

1017. As alleged above, Defendant made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of

- 200 -

the Software Update that were either false or misleading.  Each of these statements contributed to the deceptive context of Honda's unlawful representations as a whole.

1018. Defendant took advantage of the lack of knowledge, ability, experience, and capacity of Plaintiffs and the class to a grossly unfair degree.  Defendant's actions resulted in a gross disparity between the value received and the price paid by Plaintiffs and the class.  Defendant's actions constitute unconscionable actions under § 57-12-2(E) of the New Mexico UTPA.

1019. Plaintiffs and the class sustained damages as a result of the Defendant's unlawful acts and are, therefore, entitled to damages and other relief provided for under § 57-12-10 of the New Mexico UTPA.  Because Defendant's conduct was committed willfully, Plaintiffs and the class seek treble damages.

1020. Plaintiffs and the class also seek court costs and attorneys' fees under § 57-12-10(C) of the New Mexico UTPA.

## NEW YORK
## COUNT II
## DECEPTIVE ACTS OR PRACTICES
### (N.Y. Gen. Bus. Law § 349)

1021. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1022. New York General Business Law ("G.B.L.") § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

1023. In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation as described above.  Further, Honda misrepresented the true nature and

- 201 -

purpose of the Software Update.  Accordingly, Honda made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts.

1024. Honda engaged in a deceptive acts or practices when it failed to disclose material information concerning the Honda vehicles which was known to Honda at the time of the sale.  Honda deliberately withheld the information about the premature deterioration of the IMA batteries in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

1025. The reliability of the Defective Hybrid, their power and fuel efficiency were material to Plaintiffs and the class.  Had Plaintiffs and the class known that their Hondas had these serious defects, they would not have purchased the Defective Hybrids or allowed the installation of the Software Update.

1026. Because Honda's deception takes place in the context of automobile safety, that deception affects the public interest.

1027. Honda's unlawful conduct constitutes unfair acts or practices that have the capacity to and that do deceive consumers and have a broad impact on consumers at large.

1028. Plaintiffs and the class suffered injury caused by Honda's failure to disclose material information.  Plaintiffs and the class overpaid for their vehicles and did not receive the benefit of their bargain.  The Defective Hybrids do not operate reliably and have diminished power and fuel efficiency.  The value of the Defective Hybrids has diminished now that the IMA battery issues have come to light, and Plaintiffs and the class own vehicles that are not safe.

- 202 -

1029.  Pursuant to G.B.L. § 349, Plaintiffs are entitled to recover the greater of actual damages or $50.  Because Honda acted willfully or knowingly, Plaintiffs are entitled to recover three times actual damages, up to $1,000.

## COUNT III
## BREACH OF EXPRESS WARRANTY
## (N.Y. U.C.C. § 2-313)

1030.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1031.  Honda is and was at all relevant times a merchant with respect to motor vehicles under N.Y. U.C.C. § 2-313.

1032.  The vehicles sold by Honda are "things of danger," in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

1033.  In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1034.  Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1035.  Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

- 203 -

1036. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1037. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

1038. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' remedies would be insufficient to make whole.

1039. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 204 -

1040. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. § 2-314)

1041. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1042. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1043. The vehicles sold by Honda are "things of danger," in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

1044. A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

1045. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1046. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters

- 205 -

and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1047. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On New York Law)

1048. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1049. To the extent Honda's repair or replace commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiffs plead in the alternative under common law contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1050. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1051. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

- 206 -

# NORTH CAROLINA

## COUNT II

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (N.C. Gen. Stat. § 25-2-314)

1052. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1053. Honda is and was at all relevant times a merchant with respect to motor vehicles under N.C. GEN. STAT. § 25-2-314.

1054. A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to N.C. GEN. STAT. § 25-2-314.

1055. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1056. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 207 -

1057. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT III

## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On North Carolina Law)

1058. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1059. To the extent Honda's repair or replace commitment is deemed not to be a warranty under North Carolina's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1060. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1061. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

- 208 -

# NORTH DAKOTA

## COUNT II

## BREACH OF EXPRESS WARRANTY

### (N.D. Cent. Code. § 41-02-30)

1062. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1063. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1064. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1065. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1066. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1067. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1068. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently

- 209 -

misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

1069. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1070. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1071. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (N.D. Cent. Code § 41-02-31)

1072. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 210 -

1073. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1074. A warranty that the Defective Hybrids were merchantable is implied by law in the instant transactions.

1075. The Defective Hybrids, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1076. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT IV
## VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. Cent. Code § 51-15-02)

1077. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1078. The conduct of Honda as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life which Honda failed to adequately investigate, disclose and remedy, and Honda's misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

- 211 -

1079. Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

1080. Honda's conduct proximately caused the injuries to Plaintiffs and the class.

1081. Further, Honda knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, Honda is liable to Plaintiffs and the class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On North Dakota Law)

1082. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1083. To the extent Honda's repair or replace commitment is deemed not to be a warranty under North Dakota's Century Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1084. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

- 212 -

1085.  As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## OHIO

## COUNT II

## VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT
### (Ohio Rev. Code Ann. § 1345.01, *et seq.*)

1086.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1087.  The Ohio Consumer Protection Act, OHIO REV. CODE § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  Specifically, the Act prohibits suppliers from representing that goods have characteristics or uses or benefits which they do not have.  The Act also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

1088.  Defendant is a "supplier" as that term is defined in the Ohio Consumer Protection Act, OHIO REV. CODE § 1345.01(C).

1089.  Plaintiffs are "consumers" as that term is defined in the Ohio Consumer Protection Act, OHIO REV. CODE § 1345.01(D).

1090.  The conduct of Defendant alleged above constitutes unfair and/or deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02 because Defendant represented through advertising and other marketing communications that the vehicles were new and free from defects and could be

- 213 -

driven safely in normal operation.  Instead, the vehicles were not of the standard, quality or grade of new vehicles.

1091. Defendant's conduct caused Plaintiffs' damages as alleged.

1092. Plaintiff specifically does not allege herein a claim for violation of OHIO REV. CODE § 1345.72.

1093. As a result of the foregoing wrongful conduct of Defendant, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual and statutory damages, treble damages, court costs and reasonable attorneys fees, pursuant to OHIO REV. CODE § 1345.09, *et seq*.

<div align="center">

**COUNT III**

**VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT**
**(Ohio Rev. Code Ann. § 4165.01, *et seq*.**

</div>

1094. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1095. OHIO REV. CODE § 4165.02(A) provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following:  "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; … (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

<div align="center">- 214 -</div>

1096. Defendant is a "person" within the meaning of OHIO REV. CODE § 4165.01(D).

1097. The vehicles sold to Plaintiffs were not of the particular sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities represented by Defendant.

1098. The vehicles sold to Plaintiffs were not of the particular standard, quality, and/or grade represented by Defendant.

1099. Defendant made false or misleading statements of fact concerning the vehicles Plaintiffs purchased – *i.e.*, that such vehicles were suitable for ordinary use – when Defendants, in fact, knew that they were defective and not suitable for ordinary use.

1100. These statements materially influenced Plaintiffs' decision to purchase, operate and service the Defective Hybrid, in that Defendant's statements caused Plaintiffs to purchase vehicles that they otherwise would not have had they known of the dangerous defect and their true reliability, power and fuel efficiency.

1101. Defendant's deceptive trade practices caused Plaintiffs' damages as alleged.

1102. Defendant's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

1103. As a result of the foregoing wrongful conduct of Defendant, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

- 215 -

**COUNT IV**

**BREACH OF EXPRESS WARRANTY**

**(Ohio Rev. Code Ann. § 1302.26, *et seq*. (U.C.C. § 2-313))**

1104. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1105. Defendant expressly warranted that the Defective Hybrids were free of material defects and, at a minimum, would actually work properly and safely.

1106. Defendant breached this warranty by knowingly selling to Plaintiffs vehicles with prematurely deteriorating IMA batteries, and which were not of high quality.

1107. Plaintiffs have been damaged as a direct and proximate result of the breaches by Defendant in that the Defective Hybrids purchased by Plaintiffs do not operate reliably, have diminished power and fuel efficiency and were and are worth far less than what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendant.

**COUNT V**

**OHIO BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY STRICT LIABILITY**

**(Ohio Rev. Code Ann. § 1302.27 (U.C.C. § 2-314))**

1108. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1109. Defendant impliedly warranted that its vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

- 216 -

1110. As described above, there were dangerous defects in the Defective Hybrid, which Plaintiffs purchased, including IMA battery defects that caused the vehicles to lose all power, operate unreliably, have diminished power and diminished fuel efficiency.

1111. These dangerous defects existed at the time the vehicles left Defendant's manufacturing facilities and at the time they were sold to the Plaintiffs.

1112. These dangerous defects were the direct and proximate cause of damages to the Plaintiffs.

## COUNT VI
## OHIO NEGLIGENT DESIGN, ENGINEERING & MANUFACTURE
### (Based On Ohio Law)

1113. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1114. Honda is a manufacturer and supplier of automobiles.

1115. Defendant owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the vehicles against foreseeable hazards and malfunctions including premature deterioration of the IMA batteries in the Defective Hybrid.

1116. Defendant owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care in designing, engineering and manufacturing the vehicles so that they would function normally, including that they would not accelerate out of control.

1117. Defendant also owed, and owe, a continuing duty to notify Plaintiffs of the problem at issue and to repair the dangerous defects.

- 217 -

1118. Defendant breached these duties of reasonable care by designing, engineering and manufacturing vehicles with prematurely deteriorating IMA batteries, and breached their continuing duty to notify Plaintiffs of these defects.

1119. The foreseeable hazards and malfunctions include, but are not limited to, complete loss of power, unreliable operation, diminished power and diminished fuel efficiency.

1120. Plaintiffs did not and could not know of the intricacies of these defects and their latent and dangerous manifestations, or the likelihood of harm therefrom arising in the normal use of their vehicles.

1121. At all relevant times, there existed alternative designs and engineering which were both technically and economically feasible.  Further, any alleged benefits associated with the defective designs are vastly outweighed by the real risks associated with premature deterioration of the IMA batteries.

1122. The vehicles were defective as herein alleged at the time they left Defendant's factories, and the vehicles reached Plaintiffs without substantial change in the condition in which they were sold.

1123. As a direct and proximate result of Defendant's breaches, Plaintiffs have suffered damages.

1124. Accordingly, Plaintiffs are entitled to recover appropriate damages including, but not limited to, diminution of value, return of lease payments and penalties, and injunctive relief related to future lease payments or penalties.

# OKLAHOMA

## COUNT II

### VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT
### (Okla. Stat. tit. 15 § 751, *et seq.*)

1125. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1126. The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life, which Honda failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

1127. Honda's actions as set forth above occurred in the conduct of trade or commerce.

1128. Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

1129. Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

- 219 -

1130. Honda's conduct proximately caused the injuries to Plaintiffs and the class.

1131. Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

1132. Pursuant to OKLA. STAT. tit. 15 § 751, Plaintiffs will serve the Oklahoma Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

<div align="center">

**COUNT III**

**VIOLATION OF OKLAHOMA DECEPTIVE TRADE PRACTICES ACT**
**(78 Okla. Stat. Ann. § 51, *et seq*.)**

</div>

1133. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1134. The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life, which Honda failed to adequately investigate, disclose and remedy, its misrepresentations regarding the Software Update and its misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

1135. Honda's actions as set forth above occurred in the conduct of trade or commerce.

1136. Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception.  All of the

<div align="center">- 220 -</div>

wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

1137. Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

1138. Honda's conduct proximately caused the injuries to Plaintiffs and the class.

1139. Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

1140. Pursuant to OKLA. STAT. tit. 78 § 51, Plaintiffs will serve the Oklahoma Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

<div align="center">

**COUNT IV**

**BREACH OF EXPRESS WARRANTY**

**(12A Okla. Stat. Ann. § 2-313)**

</div>

1141. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1142. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1143. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1144. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship. Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

- 221 -

1145. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1146. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1147. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrids and the Software Update.  Plaintiffs and the class were therefore induced to purchase, operate and service the vehicles under false and/or fraudulent pretenses.

1148. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1149. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable

amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1150.  As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

<div align="center">

**COUNT V**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(12A Okla. Stat. Ann. § 2-314)**

</div>

1151.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1152.  Honda is and was at all relevant times a merchant with respect to motor vehicles.

1153.  A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions, pursuant to 12A OKLA. STAT. ANN. § 2-314.

1154.  The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1155.  Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable

<div align="center">

- 223 -

</div>

amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1156. Plaintiffs and the class have had sufficient dealings with either Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and the class.  Notwithstanding this, privity is not required in this case because Plaintiffs and the class are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiffs' and class members' Hondas are dangerous instrumentalities due to the aforementioned defects and nonconformities.

1157. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT VI**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based On Oklahoma Law)**

</div>

1158. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1159. To the extent Honda's repair or replace commitment is deemed not to be a warranty under Oklahoma's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available

<div align="center">- 224 -</div>

to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1160. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1161. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## OREGON

## COUNT II

## VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (Or. Rev. Stat. §§ 646.605, *et seq.*)

1162. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1163. The Oregon Unfair Trade Practices Act ("OUTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular standard [or] quality … if they are of another; and (i) Advertis[ing] … goods or services with intent not to provide them as advertised." OR. REV. STAT. § 646.608(1).

1164. Honda is a person within the meaning of OR. REV. STAT. § 646.605(4).

- 225 -

1165. The Defective Hybrids at issue are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

1166. In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation as described above.  Accordingly, Honda engaged in unlawful trade practices, including representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Hybrids are of a particular standard and quality when they are not; and misrepresenting the true nature of the Software Update.  Honda knew or should have known that its conduct violated the OUTPA.

1167. As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

1168. Honda engaged in a deceptive trade practice when it failed to disclose material information concerning the Honda vehicles which was known to Honda at the time of the sale.  Honda deliberately withheld the information about the premature deterioration of the IMA batteries in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

1169. The reliability of the Defective Hybrid, their power and fuel efficiency were material to Plaintiffs and the class.  Had Plaintiffs and the class known that their Hondas had these serious safety defects, they would not have purchased the Defective Hybrids or allowed the installation of the Software Update.

1170. Plaintiffs and the class suffered ascertainable loss caused by Honda's failure to disclose material information.  Plaintiffs and the class overpaid for their

- 226 -

vehicles and did not receive the benefit of their bargain.  The Defective Hybrids do not operate reliably and have diminished power and fuel efficiency.  The value of the Defective Hybrids has diminished now that the IMA battery issues have come to light, and Plaintiffs and the class own vehicles that are not safe.

1171. Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1).  Plaintiffs are also entitled to punitive damages because Honda engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

1172. Pursuant to OR. REV. STAT. § 646.638(2), Plaintiffs will mail a copy of the complaint to Oregon's attorney general.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Or. Rev. Stat. § 72.3140)

1173. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1174. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1175. A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

1176. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated

- 227 -

IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1177. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1178. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## PENNSYLVANIA

## COUNT II

## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (73 P.S. § 201-1, *et seq.*)

1179. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1180. The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life, which Honda failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

1181. Honda's actions as set forth above occurred in the conduct of trade or commerce.

1182. Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

1183. Plaintiffs and the class suffered ascertainable loss as a result of Defendant's conduct.  Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

1184. Honda's conduct proximately caused the injuries to Plaintiffs and the class.

1185. Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## COUNT III

## BREACH OF EXPRESS WARRANTY

### (13 Pa. Cons. Stat. Ann. § 2313)

1186. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1187. Honda is and was at all relevant times a seller with respect to motor vehicles.

1188. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

- 229 -

1189.  Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1190.  Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1191.  Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1192.  Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase, operate and service the vehicles under false and/or fraudulent pretenses.

1193.  Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

- 230 -

1194. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1195. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

<div align="center">

**COUNT IV**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(13 Pa. Cons. Stat. Ann. § 2314)**

</div>

1196. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1197. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1198. A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

1199. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1200. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1201. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V

## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Pennsylvania Law)

1202. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1203. To the extent Honda's repair or replace commitment is deemed not to be a warranty under Pennsylvania's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1204. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1205. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to

be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## RHODE ISLAND

## COUNT II

## VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

### (R.I. Gen. Laws § 6-13.1, *et seq.*)

1206. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1207. Plaintiffs are persons who purchase or lease goods primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6-13.1-5.2(a).

1208. Rhode Island's Unfair Trade Practices and Consumer Protection Act ("UTPCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including:  "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing that goods or services are of a particular standard, quality, or grade …, if they are of another"; "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding"; "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer"; and "(xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect."  R.I. GEN. LAWS § 6-13.1-1(6).

1209. In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation as described above, and the true nature of the Software Update.

Accordingly, Honda engaged in unlawful trade practices, including representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Hybrids are of a particular standard and quality when they are not; misrepresenting the true nature of the Software Update and otherwise engaging in conduct likely to deceive.

1210.  Honda's actions as set forth above occurred in the conduct of trade or commerce.

1211.  Plaintiffs suffered ascertainable loss of money as a result of Honda's violation of the UTPCPA.

1212.  Plaintiffs and the class were injured as a result of Honda's conduct in that Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Honda's misrepresentations and omissions.

1213.  Accordingly, Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a).

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (R.I. Gen. Laws § 6A-2-314)

1214.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1215.  Honda is and was at all relevant times a merchant with respect to motor vehicles.

- 234 -

1216. A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

1217. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1218. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1219. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<p style="text-align:center"><b>SOUTH CAROLINA</b></p>

<p style="text-align:center"><b>COUNT II</b></p>

<p style="text-align:center"><b>BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY</b></p>

<p style="text-align:center"><b>(S.C. Code § 36-2-314)</b></p>

1220. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1221. Honda is and was at all relevant times a merchant with respect to motor vehicles under S.C. CODE § 36-2-314 .

<p style="text-align:center">- 235 -</p>

1222. A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to S.C. CODE § 36-2-314.

1223. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1224. Honda was provided notice of IMA battery issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1225. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT III**

**VIOLATIONS OF THE SOUTH CAROLINA
UNFAIR TRADE PRACTICES ACT**

**(S.C. Code Ann. § 39-5-10, *et seq.*)**

</div>

1226. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1227. Defendant is a "person" under S.C. CODE ANN. § 39-5-10.

- 236 -

1228. Defendant participated in unfair or deceptive acts or practices that violated the South Carolina Unfair Trade Practices Act (the "Act"), S.C. CODE ANN. § 39-5-10, *et seq.*, as described herein.  Defendant is directly liable for these violations of law.

1229. By failing to disclose and actively concealing the premature deterioration of the IMA batteries during normal operation, Defendant engaged in unfair or deceptive practices prohibited by the Act, S.C. CODE ANN. § 39-5-10, *et seq.*, including (1) representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are not, (3) representing that the Software Update corrected defects in the IMA battery when it did not, (4) representing that a transaction involving Defective Hybrids confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Hybrids has been supplied in accordance with a previous representation when it has not.

1230. As alleged above, Defendant made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading. Each of these statements contributed to the deceptive context of Honda's unlawful representations as a whole.

1231. Defendant knew that the IMA batteries in the Defective Hybrids prematurely deteriorated during their normal useful life.  Defendant nevertheless failed to warn Plaintiffs about this defect despite having a duty to do so.

- 237 -

1232. Defendant owed Plaintiffs a duty to disclose the defective nature of Defective Hybrid, including the dangerous risk of power failure, the loss of power and diminished fuel efficiency, because it:

    a. Possessed exclusive knowledge of the defects rendering Defective Hybrids inherently more dangerous and unreliable than similar vehicles;

    b. Intentionally concealed the hazardous situation with Defective Hybrids through its deceptive Service Bulletins that it designed to hide the IMA battery defect from Plaintiffs; and/or

    c. Made incomplete representations about the reliability, power, fuel efficiency and the purpose of the Software Update, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1233. Defective Hybrids equipped with defective IMA batteries pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they may lose power and/or fail to operate while on roadways.

1234. Whether or not a vehicle (a) operates reliably and (b) has the power and fuel efficiency it was designed to achieve are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Plaintiffs bought a Defective Hybrid for personal, family, or household purposes, they reasonably expected the vehicle would (a) operate reliably and (b) have the power and fuel efficiency for which it was designed.

- 238 -

1235. Honda's unfair or deceptive trade practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update.

1236. As a result of its violations of the Act detailed above, Defendant caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease Defective Hybrids that are defective and inherently unsafe.

1237. Plaintiffs risk irreparable injury as a result of Honda's acts and omissions in violation of the Act, and these violations present a continuing risk to Plaintiffs as well as to the general public.

1238. Pursuant to S.C. CODE ANN. § 39-5-140, Plaintiffs seek monetary relief against Honda to recover for their sustained losses.

1239. Plaintiffs further allege that Defendant's malicious and deliberate conduct warrants an assessment of punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendant intentionally and willfully misrepresented the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update, deceived Plaintiffs on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting the IMA battery defect in the Defective Hybrid. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

1240. The repairs instituted by Honda have not been adequate.  Defective Hybrids still are defective and the Software Update does not fix the defective IMA

- 239 -

batteries but rather further degrades the performance and efficiency of the Defective Hybrid.

1241. Plaintiffs further seek an order enjoining Defendant's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Act.

## COUNT IV

### VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT

### (S.C. Code Ann. § 56-15-10, *et seq.*)

1242. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1243. Defendant is a "manufacturer" as set forth in S.C. CODE ANN. § 56-15-10, as it is engaged in the business of manufacturing or assembling new and unused motor vehicles.

1244. Defendant participated in unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. CODE ANN. § 56-15-30.  Defendant is directly liable for these violations of law.

1245. Defendant has engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs, the class, and to the public. Defendant has directly participated in the wrongful conduct.

1246. Defendant's bad faith and unconscionable actions include, but are not limited to:  (1) representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective

- 240 -

Hybrids are of a particular standard, quality, and grade when they are not, (3) representing that the Software Update repaired the defective IMA batteries when it did not, (4) representing that a transaction involving Defective Hybrids confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Hybrids has been supplied in accordance with a previous representation when it has not.

1247. Defendant has resorted to and used false and misleading advertisement in connection with their business.  As alleged above, Defendant made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading. Each of these statements contributed to the deceptive context of Honda's unlawful representations as a whole.

1248. Pursuant to S.C. CODE ANN. § 56-15-110(2), Plaintiffs bring this action on behalf of themselves and the class, as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the court.

1249. Plaintiffs and the class are entitled to double the actual damages, the cost of the suit, attorney's fees pursuant to S.C. CODE ANN. § 56-15-110, and Plaintiffs also seek injunctive relief under S.C. CODE ANN. § 56-15-110.  Plaintiffs also seek treble damages because Defendant has acted maliciously.

- 241 -

## COUNT V

### BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On South Carolina Law)

1250. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1251. To the extent Honda's repair or replace commitment is deemed not to be a warranty under South Carolina's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1252. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1253. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### SOUTH DAKOTA
### COUNT II
### BREACH OF EXPRESS WARRANTY
### (S.D. Codified Laws § 57A-2-313)

1254. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 242 -

1255. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1256. Under S.D. CODIFIED LAWS § 57A-2-318, Plaintiffs have the same standing as any direct purchaser of a vehicle from Honda.

1257. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1258. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1259. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1260. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1261. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

- 243 -

1262.  Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1263.  Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1264.  As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (S.D. Codified Laws § 57A-2-314)

1265.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1266.  Honda is and was at all relevant times a merchant with respect to motor vehicles.

1267.  A warranty that the Defective Hybrids were merchantable is implied by law in the instant transactions.

- 244 -

1268.  Under S.D. CODIFIED LAWS § 57A-2-318, Plaintiffs have the same standing as any direct purchaser of a vehicle from Honda.

1269.  The Defective Hybrids, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1270.  As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT IV

## VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES ACT

### (S.D. Codified Laws § 37-24-6)

1271.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1272.  The conduct of Honda as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life which Honda failed to adequately investigate, disclose and remedy, and Honda's misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

- 245 -

1273. Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

1274. Honda's conduct proximately caused the injuries to Plaintiffs and the class.

1275. Under S.D. CODIFIED LAWS § 37-24-31, Plaintiffs and the class are entitled to a recovery of their actual damages suffered as a result of Honda's acts and practices.

<div align="center">

**COUNT V**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Based On South Dakota Law)**

</div>

1276. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1277. To the extent Honda's repair or replace commitment is deemed not to be a warranty under South Dakota's Codified Laws, Plaintiffs plead in the alternative under common law warranty and contract law. Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1278. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1279. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to

<div align="center">- 246 -</div>

be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<div align="center">

**TENNEESSEE**

**COUNT II**

**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**

**(Tenn. Code Ann. § 47-18-101,** *et seq.***)**

</div>

1280. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1281. Defendant misrepresented the safety of the Defective Hybrids after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease, service and/or use of the Defective Hybrid.

1282. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease, service and/or use of the Defective Hybrid.

1283. Through these misleading and deceptive statements and false promises, Defendant violated the Tennessee Consumer Protection Act.

1284. The Tennessee Consumer Protection Act applies to Defendant's transactions with Plaintiffs because Defendant's deceptive scheme was carried out in Tennessee and affected Plaintiffs.

1285. Defendant also failed to advise the NHSTA and the public about what it knew about premature deterioration of the IMA batteries in the Defective Hybrid.

1286. Plaintiffs relied on Defendant's silence as to known defects in connection with their decision regarding the purchase, lease, service and/or use of the Defective Hybrid.

<div align="center">

- 247 -

</div>

1287.  As a direct and proximate result of Defendant's deceptive conduct and violation of the Tennessee Consumer Protection Act, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

<div align="center">

**COUNT III**

**BREACH OF EXPRESS WARRANTY**

**(Tenn. Code Ann. § 47-2-313)**

</div>

1288.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1289.  Defendant is and at all relevant times was a seller as defined by TENN. CODE ANN. § 47-2-103.

1290.  Defendant expressly affirmed – through uniform statements – that the Defective Hybrids were of high quality, and, at a minimum, would actually work properly and safely.  These affirmations became part of the basis of the bargain.

1291.  Defendant breached this warranty by knowingly selling the Defective Hybrids with defective IMA batteries that prematurely deteriorated, and which were not of high quality.

1292.  Plaintiffs have been damaged as a direct and proximate result of the breaches by Defendant in that the Defective Hybrids purchased by Plaintiffs do not operate reliable, have diminished power and fuel efficiency and were and are worth far less than what the Plaintiffs paid to purchase, which was reasonably foreseeable to Defendants.

- 248 -

1293. Plaintiffs were unaware of these defects and could not have reasonably discovered them when they purchased their vehicles from Honda.

1294. Plaintiffs and the class are entitled to damages, including the diminished value of their vehicles and the value of the non-use of the vehicles pending successful repair, in addition to any costs associated with purchasing safer vehicles, incidental and consequential damages, and all other damages allowable under the law, including such further relief as the Court deems just and proper.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Tenn. Code Ann. § 47-2-314)

1295. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1296. Defendant impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

1297. As described above, there were dangerous defects in the Defective Hybrid, which Plaintiffs purchased, including, but not limited to, defects that caused the vehicles to completely lose power, to operate unreliably and to operate with diminished power and diminished fuel efficiency.

1298. These dangerous defects existed at the time the vehicles left Defendant's manufacturing facilities and at the time they were sold to the Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the

- 249 -

benefit of their bargain and the vehicles have lost use, had to pay additional sums for fule and suffered a diminution in value.

1299. These dangerous defects were the direct and proximate cause of damages to the Plaintiffs.

## TEXAS

## COUNT II

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)

1300. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1301. Defendant's above-described acts and omissions constitute false, misleading or deceptive acts or practices under the Texas Deceptive Trade Practices–Consumer Protection Act, TEX. BUS. & COM. CODE § 17.41, *et seq.* ("Texas DTPA").

1302. By failing to disclose and actively concealing the premature deterioration of the IMA batteries during normal operation, Defendant engaged in deceptive business practices prohibited by the Texas DTPA, including (1) representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are not, (3) representing that the Software Update was a repair to the defective IMA batteries when it was not, (4) representing that a transaction involving Defective Hybrids confers or involves rights, remedies, and obligations which it does not, and (5) failing to disclose information concerning Defective Hybrids with the intent to induce consumers to purchase or lease the Defective Hybrid.

- 250 -

1303.  As alleged above, Defendant made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading.  Each of these statements contributed to the deceptive context of Honda's unlawful representations as a whole.

1304.  Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update.

1305.  In purchasing or leasing their vehicles, the Plaintiffs relied on the misrepresentations and/or omissions of Honda with respect of the reliability, power, fuel efficiency and the purpose of the Software Update of the vehicles.  Honda's representations turned out not to be true because the IMA batteries prematurely deteriorate and the Software Update does not fix this defect, it merely causes the gasoline engine in the Defective Hybrids to run more often and reduce the power of the electric engine, thus decreasing the power and fuel efficiency of the Defective Hybrid.  Had the Named Plaintiffs known this they would not have purchased or leased their Defective Hybrids and/or paid as much for them.

1306.  Defendant also breached express and implied warranties to Plaintiffs and the class, as set out above, and are, therefore liable to Plaintiffs and the class for damages under §§ 17.50(a)(2) and 17.50(b) of the Texas DTPA.   Defendant's actions also constitute an unconscionable action or course of action under § 17.50(a)(3) of the Texas DTPA.

1307.  Plaintiffs and the class sustained damages as a result of Defendant's unlawful acts and are, therefore, entitled to damages and other relief provided for

- 251 -

under § 17.50(b) of the Texas DTPA.  Because Defendant's conduct was committed knowingly and/or intentionally, the Plaintiffs and the class are entitled to treble damages.

1308. For those Plaintiffs and the class who wish to rescind their purchases, they are entitled under § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

1309. Plaintiffs and the class also seek court costs and attorneys' fees under § 17.50(d) of the Texas DTPA.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (Tex. Bus. & Com. Code § 2.313)

1310. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1311. Honda is and was at all relevant times a merchant with respect to motor vehicles under TEX. BUS. & COM. CODE § 2.104.

1312. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1313. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1314. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has

- 252 -

failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1315. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1316. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

1317. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1318. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable

- 253 -

amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1319.  As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Tex. Bus. & Com. Code § 2.314)

1320.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1321.  Honda is and was at all relevant times a merchant with respect to motor vehicles under TEX. BUS. & COM. CODE § 2.104.

1322.  A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to TEX. BUS. & COM. CODE § 2.314.

1323.  The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1324.  Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable

- 254 -

amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public

1325. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Texas Law)

1326. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1327. To the extent Honda's repair or replace commitment is deemed not to be a warranty under the Texas Business and Commerce Code, Plaintiffs plead in the alternative under common law warranty and contract law. Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1328. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1329. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

- 255 -

# UTAH

## COUNT II

## BREACH OF EXPRESS WARRANTY

### (Utah Code Ann. § 70A-2-313)

1330. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1331. Honda is and was at all relevant times a merchant as defined by the Uniform Commercial Code.

1332. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1333. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1334. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1335. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1336. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently

- 256 -

misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

1337. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1338. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1339. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Utah Code Ann. § 70A-2-314)

1340. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 257 -

1341. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1342. A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transactions.

1343. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1344. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1345. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Utah Law)

1346. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 258 -

1347. To the extent Honda's repair or replace commitment is deemed not to be a warranty under the Utah Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1348. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1349. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## VERMONT

## COUNT II

## VIOLATION OF VERMONT CONSUMER FRAUD ACT

### (Vt. Stat. Ann. tit. 9, § 2451 *et seq.*)

1350. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1351. The Vermont Consumer Fraud Act ("VCFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce.…" Vt. Stat. Ann. tit. 9, § 2453(a).

1352. Honda is a seller within the meaning of the VCFA.  Vt. Stat. Ann. tit. 9, § 2451(a)(c).

- 259 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1353. In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation as described above.  This was a deceptive act in that Honda represented that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have; represented that Defective Hybrids are of a particular standard and quality when they are not; and represented that the Software Update repaired the defecting IMA battery when it did not.  Honda knew or should have known that its conduct violated the VCFA.

1354. Honda engaged in a deceptive trade practice under the VCFA when it failed to disclose material information concerning the Honda vehicles which was known to Honda at the time of the sale.  Honda deliberately withheld the information about the premature deterioration of the IMA batteries in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

1355. The information withhold was material in that it was information that was important to consumers and likely to affect their choice of, or conduct regarding, the purchase of their cars.  Honda's withholding of this information was likely to mislead consumers acting reasonably under the circumstances.  The reliability of the Defective Hybrid, their power and fuel efficiency were material to Plaintiffs and the class.  Had Plaintiffs and the class known that their Hondas had these serious safety defects, they would not have purchased the Defective Hybrids or allowed the installation of the Software Update.

1356. Honda's conduct has caused or is to cause a substantial injury that is not reasonably avoided by consumers, and the harm is not outweighed by a countervailing benefit to consumers or competition.

1357. Plaintiffs and the class have suffered injury and damages as a result of Honda's false or fraudulent representations and practices in violation of § 2453. Plaintiffs and the class overpaid for their vehicles and did not receive the benefit of their bargain.  The Defective Hybrids do not operate reliably and have diminished power and fuel efficiency.  The value of the Defective Hybrids has diminished now that the IMA battery issues have come to light, and Plaintiffs and the class own vehicles that are not safe.

1358. Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]" pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (Vt. Stat. Ann. tit. 9A § 2-313)

1359. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1360. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1361. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

- 261 -

1362. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1363. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1364. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1365. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

1366. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

- 262 -

1367.  Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1368.  As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amounted to be determined at trial.

<div align="center">

**COUNT IV**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Vt. Stat. Ann. tit. 9A §2-314)**

</div>

1369.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1370.  Honda is and was at all relevant times a merchant with respect to motor vehicles.

1371.  A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

1372.  The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions.  Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

<div align="center">

- 263 -

</div>

1373. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and members of the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1374. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT
### (Based On Vermont Law)

1375. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1376. To the extent Honda's repair or replace commitment is deemed not to be a warranty under Vermont's Commercial Code, Plaintiffs plead in the alternative under common law contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1377. Honda breached this contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1378. As a direct and proximate result of Defendant's breach of contract, Plaintiffs and the class have been damaged in an amount to be proven at trial, which

- 264 -

shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## WASHINGTON

## COUNT II

## VIOLATION OF THE CONSUMER PROTECTION ACT
### (Rev. Code Wash. Ann. §§ 19.86.010, *et seq.*)

1379. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1380. The conduct of Honda as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Honda's manufacture and sale of vehicles with IMA batteries that prematurely deteriorate during their normal useful life, which Honda failed to adequately investigate, disclose and remedy, its misrepresentations concerning the Software Update, and its misrepresentations and omissions regarding the reliability, power and fuel efficiency of the Defective Hybrid.

1381. Honda's actions as set forth above occurred in the conduct of trade or commerce.

1382. Honda's actions impact the public interest because Plaintiffs were injured in exactly the same way as thousands of others purchasing and/or leasing Defective Hybrids as a result of Honda's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.

1383. Plaintiffs and the class were injured as a result of Defendant's conduct. Plaintiffs did not receive the benefit of their bargain in that the Defective Hybrids do

- 265 -

not operate reliably and have diminished power and fuel efficiency, and their vehicles have suffered a diminution in value.

1384. Honda's conduct proximately caused the injuries to Plaintiffs and the class.

1385. Honda is liable to Plaintiffs and the class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

1386. Pursuant to WASH. REV. CODE. ANN. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

<div align="center">

**COUNT III**

**BREACH OF EXPRESS WARRANTY**

**(Rev. Code Wash. § 62A.2-313)**

</div>

1387. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1388. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1389. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1390. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1391. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has

<div align="center">- 266 -</div>

failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1392. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1393. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiff and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

1394. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1395. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 267 -

1396. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Rev. Code Wash. § 62A.2-614)

1397. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1398. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1399. A warranty that the Defective Hybrids were in merchantable condition is implied by law in the instant transactions.

1400. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1401. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

- 268 -

1402. Privity is not required in this case because Plaintiffs and the class are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

1403. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

<div align="center">

**COUNT V**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based On Washington Law)**

</div>

1404. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1405. To the extent Honda's repair or replace commitment is deemed not to be a warranty under Washington's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1406. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1407.  As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**WEST VIRGINIA**

**COUNT II**

**VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT**
**(W. Va. Code § 46A-1-101, *et seq.*)**

1408.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1409.  Defendant is a "person" under W.VA. CODE § 46A-1-102(31).

1410.  Plaintiffs are "consumers," as defined by W.VA. CODE §§ and 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Defective Hybrids.

1411.  Defendant participated in unfair or deceptive acts or practices that violated the Consumer Credit and Protection Act ("CCPA"), W. VA. CODE § 46A-1-101, *et seq.* as described herein.  Defendant is directly liable for these violations of law.

1412.  By failing to disclose and actively concealing the premature deterioration of the IMA batteries during normal operation, Defendant engaged in deceptive business practices prohibited by the CCPA, W. VA. CODE § 46A-1-101, *et seq.*, including (1) representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are not, (3) representing that the Software Update was a repair for the IMA batteries when it

- 270 -

was not, (4) representing that a transaction involving Defective Hybrids confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Hybrids has been supplied in accordance with a previous representation when it has not.

1413. As alleged above, Defendant made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading. Each of these statements contributed to the deceptive context of Honda's unlawful representations as a whole.

1414. Defendant knew that the IMA batteries in the Defective Hybrids prematurely deteriorated during their normal useful life.  Defendant nevertheless failed to warn Plaintiffs about this defect despite having a duty to do so.

1415. Defendant owed Plaintiffs a duty to disclose the defective nature of Defective Hybrid, including the dangerous risk of power failure, the loss of power and diminished fuel efficiency, because it:

a.      Possessed exclusive knowledge of the defects rendering Defective Hybrids inherently more dangerous and unreliable than similar vehicles;

b.      Intentionally concealed the hazardous situation with Defective Hybrids through its deceptive Service Bulletins that it designed to hide the IMA battery defect from Plaintiffs; and/or

c.      Made incomplete representations about the reliability, power, fuel efficiency and the purpose of the Software Update, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1416. Defective Hybrids equipped with defective IMA batteries pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other

- 271 -

motorists, pedestrians, and the public at large, because they may lose power and/or fail to operate while on roadways.

1417. Whether or not a vehicle (a) operates reliably and (b) has the power and fuel efficiency it was designed to achieve are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiffs bought a Defective Hybrid for personal, family, or household purposes, they reasonably expected the vehicle would (a) operate reliably and (b) have the power and fuel efficiency for which it was designed.

1418. Honda's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiffs, about the true reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update.

1419. As a result of its violations of the CCPA detailed above, Defendant caused ascertainable loss to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.  Plaintiffs currently own or lease Defective Hybrids that are defective and inherently unsafe.

1420. Plaintiffs risk irreparable injury as a result of Honda's acts and omissions in violation of the CCPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

1421. On [date], notice was sent to Honda in compliance with W. VA. CODE § 46A-6-106.  Specifically, Plaintiffs sent a notice and demand letter via certified mail to Honda's principal place of business in California, thereby satisfying W. VA. CODE § 46A-1-106(b).  Over twenty days have since passed without Honda taking, or agreeing to take, the appropriate corrective measures.

1422. Pursuant to W. VA. CODE § 46A-1-106, Plaintiffs seek monetary relief against Honda measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the CCPA for each Plaintiff and each member of the class they seek to represent.

1423. Plaintiffs also seek punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendant intentionally and willfully misrepresented the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a defect in the Defective Hybrid. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

1424. The repairs instituted by Honda have not been adequate. Defective Hybrids still are defective and the Software Update does not fix the defective IMA batteries but rather further degrades the performance and efficiency of the Defective Hybrid.

1425. Plaintiffs further seek an order enjoining Defendant's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W. VA. CODE § 46A-5-101, *et seq.*, and any other just and proper relief available under the CCPA.

**COUNT III**

**BREACH OF EXPRESS WARRANTY**

**(W. Va. Code § 46-2-313)**

1426. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1427. Honda is and was at all relevant times a seller of motor vehicles under W. VA. CODE § 46-2-313, and is also a "merchant" as the term is used in W. VA. CODE § 46A-6-107.

1428. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1429. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship. Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1430. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1431. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1432. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently

- 274 -

misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

1433.  Additionally, the enforcement under these circumstances of any limitations on the recovery of incidental and/or consequential damages, or indeed any limitations whatsoever on any express warranty, is unenforceable pursuant to W. VA. CODE § 46A-6-107 (2).

1434.  Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1435.  Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1436.  As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

- 275 -

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (W. Va. Code § 46-2-314)

1437. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1438. Honda is and was at all relevant times a seller of motor vehicles under W. VA. CODE § 46-2-314, and is also a "merchant" as the term is used in W. VA. CODE § 46A-6-107 and § 46-2-314.

1439. A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to W. VA. CODE § 46-2-314.

1440. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1441. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1442. Plaintiffs and the class have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and Honda. Notwithstanding this, privity is not required in this case for the

- 276 -

Plaintiffs pursuant to W. VA. CODE § 46A-6-107.  Moreover, privity is not required as to any Plaintiff because Plaintiffs and the class are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate users or owners only.  Finally, privity is also not required because Plaintiffs' and class members' Hondas are dangerous instrumentalities due to the aforementioned defects and nonconformities.

1443. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V

### BREACH OF CONTRACT/COMMON LAW WARRANTY/BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

### (Based On West Virginia Law)

1444. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1445. To the extent Honda's repair or replace commitment is deemed not to be a warranty under West Virginia's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

- 277 -

1446. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1447. Moreover all contracts in West Virginia carry with them an implied duty of good faith and fair dealing. Honda breached that duty by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or the replace them, and in other ways.

1448. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## WISCONSIN

## COUNT II

### VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT

### (Wisc. Stat. § 110.18)

1449. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1450. Defendant's above-described acts and omissions constitute false, misleading or deceptive acts or practices under the Wisconsin Deceptive Trade Practices Act § 110.18 ("Wisconsin DTPA").

1451. By failing to disclose and misrepresenting the premature deterioration of the IMA batteries in Defective Hybrid, Defendant engaged in deceptive business practices prohibited by the Wisconsin DTPA, including (1) representing that Defective Hybrids have characteristics, uses, benefits, and qualities which they do

- 278 -

not have, (2) representing that Defective Hybrids are of a particular standard, quality, and grade when they are not, (3) representing that the Software Update repaired the defective IMA batteries when it did not, (4) representing that a transaction involving Defective Hybrids confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Defective Hybrids has been supplied in accordance with a previous representation when it has not.

1452. As alleged above, Defendant made numerous material statements about the reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update that were either false or misleading. Each of these statements contributed to the deceptive context of Honda's unlawful representations as a whole.

1453. Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true reliability, power, and fuel efficiency of the Defective Hybrids and the purpose of the Software Update.

1454. In purchasing or leasing their vehicles, the Plaintiffs relied on the misrepresentations and/or omissions of Honda with respect of the reliability, power, fuel efficiency and the purpose of the Software Update of the vehicles. Honda's representations turned out not to be true because the IMA batteries prematurely deteriorate and the Software Update only further degrades the performance and efficiency of the Defective Hybrid. Had Plaintiffs known this they would not have purchased or leased their Defective Hybrids and/or paid as much for them.

1455. Plaintiffs and the class sustained damages as a result of Defendant's unlawful acts and are, therefore, entitled to damages and other relief provided for

- 279 -

under § 110.18(11)(b)(2) of the Wisconsin DTPA.  Because Defendant's conduct was committed knowingly and/or intentionally, the Plaintiffs and the class are entitled to treble damages.

1456. Plaintiffs and the class also seek court costs and attorneys' fees under § 110.18(11)(b)(2) of the Wisconsin DTPA.

<div align="center">

**COUNT III_**

**BREACH OF EXPRESS WARRANTY**

**(Wisc. Stat. § 402.313)**

</div>

1457. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1458. Honda is and was at all relevant times a merchant with respect to motor vehicles under WISC. STAT. § 402.104.

1459. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1460. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1461. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

- 280 -

1462.  Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1463.  Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid. Plaintiffs and the class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.  The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

1464.  Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1465.  Plaintiffs and the class had sufficient direct dealings with Defendant to establish privity of contract between Plaintiffs and the class.  Notwithstanding this, privity is not required in this case because Plaintiffs and class are intended third-party beneficiaries of contracts between Honda and its dealers; specifically, they are the intended beneficiaries of Honda's warranties.  The dealers were not intended to be the ultimate consumers of the Defective Hybrids and have no rights under the

- 281 -

warranty agreements provided with the Defective Hybrid; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

1466. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1467. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

<div align="center">

**COUNT IV**

**BREACH OF CONTRACT/COMMON LAW WARRANTY**

**(Based On Wisconsin Law)**

</div>

1468. Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

1469. To the extent Honda's repair or replace commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in Wisconsin, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1470. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

<div align="center">- 282 -</div>

1471.  As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## WYOMING

## COUNT II

## VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT
### (Wyo. Stat. §§ 45-12-105 *et seq.*)

1472.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1473.  The Wyoming Consumer Protection Act describes that a person engages in a deceptive trade practice under this act when, in the course of his business and in connection with a consumer transaction he knowingly does one or more of the following, including:  "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not"; "(v) Represents that merchandise has been supplied in accordance with a previous representation, if it has not…"; "(viii) Represents that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false"; and "(xv) Engages in unfair or deceptive acts or practices." WYO. STAT. § 45-12-105.

1474.  In the course of Honda's business, it willfully failed to disclose and actively concealed the premature deterioration of the IMA batteries during normal operation as described above.  Accordingly, Honda engaged in deceptive trade practices, including representing that Defective Hybrids are of a particular standard

- 283 -

and grade, which they are not; representing that Defective Hybrids have been supplied with a previous representation when they are not; representing that the Software Update is a repair for the defective IMA batteries when it is not; representing that its transaction involves a warranty, rights, remedies, or obligations that are false; and overall engaging in unfair and deceptive acts or practices.

1475. Honda knowingly made false representations to consumers with the intent to induce consumers into purchasing Honda vehicles. Plaintiffs reasonably relied on false representations by Honda and were induced to each purchase, service and use a Defective Hybrid, to his/her detriment. As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

1476. Plaintiffs and the class suffered ascertainable loss caused by Honda's false representations and failure to disclose material information. Plaintiffs and the class overpaid for their vehicles and did not receive the benefit of their bargain. The Defective Hybrids do not operate reliably and have diminished power and fuel efficiency. The value of the Defective Hybrids has diminished now that the IMA battery issues have come to light, and Plaintiffs and the class own vehicles that are not safe.

1477. Honda is a "person" as required under the statute.

1478. Honda's actions as set forth above occurred in the course of business and in connection with a consumer transaction.

1479. As required under the Wyoming Consumer Protection Act, a notice letter was sent on behalf of the class in connection with the case.

- 284 -

# COUNT III

## BREACH OF EXPRESS WARRANTY

### (Wyo. Stat. § 34.1-2-313)

1480. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1481. Honda is and was at all relevant times a merchant with respect to motor vehicles under the Uniform Commercial Code.

1482. In the course of selling its vehicles, Honda expressly warranted in writing that the Defective Hybrids were covered by a warranty.

1483. Honda breached the express warranty to repair or replace to correct defects in materials and workmanship.  Honda has not repaired or replaced, and has been unable to repair or replace, the defective IMA batteries in the Defective Hybrid.

1484. Furthermore, the limited warranty of repair and/or replacement of defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the class whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1485. Accordingly, recovery by the Plaintiffs is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1486. Also, as alleged in more detail herein, at the time that Defendant warranted and sold the vehicles it knew that the vehicles did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Hybrid.

- 285 -

Plaintiffs and the class were therefore induced to purchase, service and use the Defective Hybrids under false and/or fraudulent pretenses. The enforcement under these circumstances of any limitations whatsoever precluding the recovery of incidental and/or consequential damages is unenforceable.

1487. Moreover, many of the damages flowing from the Defective Hybrids cannot be resolved through the limited remedy of repair or replacement as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the class's remedies would be insufficient to make Plaintiffs and the class whole.

1488. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1489. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the class have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Wyo. Stat. §§ 34.1-2-314)

1490. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 286 -

1491. Honda is and was at all relevant times a merchant with respect to motor vehicles under the Uniform Commercial Code.

1492. A warranty that the Defective Hybrids were in merchantable condition was implied by law in the instant transaction, pursuant to the Uniform Commercial Code.

1493. The Defective Hybrids, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Hybrids are inherently defective in that the IMA batteries prematurely deteriorate under normal operating conditions. Deteriorated IMA batteries render the Defective Hybrids inoperable and/or cause the Defective Hybrids to have diminished power and obtain diminished fuel efficiency.

1494. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the class before or within a reasonable amount of time after Honda issued the Service Bulletins and the allegations of vehicle defects became public.

1495. As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the class have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based On Wyoming Law)

1496. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 287 -

1497. To the extent Honda's repair or replace commitment is deemed not to be a warranty under Wyoming's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Honda limited the remedies available to Plaintiffs and the class to just repairs and replacements needed to correct defects in materials or workmanship.

1498. Honda breached this warranty or contract obligation by failing to repair the Defective Hybrids evidencing premature deterioration of the IMA battery, or to replace them.

1499. As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiffs and the class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Based On Wyoming Law)

1500. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1501. As set forth above, Plaintiffs and the class have entered into individual sales transactions and agreements with Honda for the purchase Honda vehicles.

1502. Plaintiffs and the class have fully performed their obligations with Honda under such transactions and agreements.

- 288 -

1       1503.  At all times, Honda owed Plaintiffs and the class a duty to exercise and

2   act in good faith and deal fairly with them in the performance of repairs of Defective

3   Hybrid.

4       1504.  Honda has breached these duties and obligations in the manner and

5   particulars set forth above, including, but not limited to, failing to repair the

6   Defective Hybrids evidencing premature deterioration of the IMA battery, or to

7   replace them.

8

9       1505.  As a direct and proximate result of Defendant's failure to abide and

10  comply with their obligations and duties, Plaintiffs and the class have suffered

11  pecuniary damages in an amount that has not yet been determined.

12  //

- 289 -

# PRAYER FOR RELIEF

(a)     Injunctive relief, restitution, disgorgement, statutory, and punitive damages under the laws of each state and the District of Columbia as set forth above;

(b)     For appropriate damages for breach of express and implied warranties;

(c)     For damages under the Magnuson-Moss Warranty Act;

(d)     Punitive damages;

(e)     Attorneys' fees; and

(f)     An injunction ordering Honda to actually repair or replace the defective IMA batteries in the Defective Hybrid.

DATED:  February 10, 2012.

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____

_____

Steve W. Berman
   Thomas E. Loeser (SBN 202724)
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email:     steve@hbsslaw.com
                toml@hbsslaw.com

Elaine T. Byszewski (SBN 222304)
*elaine@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

*Counsel for Plaintiffs and the Class*

1

## DEMAND FOR JURY TRIAL

2

3

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by

4

jury on all issues so triable.

5

6

DATED:  February 10, 2012.

7

HAGENS BERMAN SOBOL SHAPIRO LLP

8

By:

9

10

Steve W. Berman
Thomas E. Loeser (SBN 202724)

11

1918 Eighth Avenue, Suite 3300
Seattle, WA  98101

12

Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

13

Email:      steve@hbsslaw.com
toml@hbsslaw.com

14

15

Elaine T. Byszewski (SBN 222304)
*elaine@hbsslaw.com*

16

HAGENS BERMAN SOBOL SHAPIRO LLP

17

301 North Lake Avenue, Suite 203
Pasadena, California 91101

18

Telephone: (213) 330-7150
Facsimile: (213) 330-7152

19

20

*Counsel for Plaintiffs and the Class*

21

22

23

24

25

26

27

28

- 291 -

# *Exhibit A*

 **HONDA** *Service Bulletin* **09-058** 

Applies To: **2006–08 Civic Hybrid** – ALL | **July 30, 2009**

# Low-Charged IMA Battery Causes Low Power When Accelerating From a Stop

### SYMPTOM

The vehicle has low power when accelerating from a stop (generally up to 15 mph) with the charge level indicator showing less than half charged. The symptom becomes worse with the air conditioning on.

### PROBABLE CAUSE

A low-charged IMA battery causes sluggish acceleration.

### CORRECTIVE ACTION

Verify the customer complaint and, if needed, update the IMA battery software, the PGM-FI software, and the A/T (CVT) software.

NOTE: This new software increases the rate of charge and will prevent auto stop if the IMA battery is low. It will improve energy available for acceleration, but will not prevent a total loss of power from the IMA battery in all cases.

### SOFTWARE INFORMATION

HDS Software Version:
    2.018.016 (July 2009) **or later**

Control Module (CM) Update:
    Application Version V6.17.08 **or later**
    Database Update 24-JUN-2009 **or later**

To avoid an incorrect repair that would not be covered under warranty, use the software version listed above or a later version.

The updated PGM-FI, IMA battery, and A/T (CVT) software program IDs and P/Ns are shown below. If one of these, **or later** Program IDs, are the current Program ID displayed during the update, the software for this service bulletin is already installed.

| Year/Model/ System | Program ID | Program P/N |
|---|---|---|
| 2006–08 Civic Hybrid PGM-FI | MX3150 | 37805-RMX-315 (or later) |
| 2006–08 Civic Hybrid IMA Battery | MXA210 | 1K101-RMX-A21 (or later) |
| 2006–08 Civic Hybrid CVT | MX3050 | 37806-RMX-305 (or later) |

NOTE: Beginning with this HDS software release, three new DTCs may be stored after the software is installed. These DTCs can be erased only after all updates (PGM-FI, A/T (CVT), and IMA battery) are completed. For more information on the three new DTCs, refer to Service Bulletin 09-026, *2006–09 Civic Hybrid: New DTCs U0301, U0302, and U0312*.

### WARRANTY CLAIM INFORMATION

**In warranty:** The normal warranty applies.

| OP# | Description | FRT |
|---|---|---|
| 125517 | Update the PGM-FI software. | 0.3 |
| A | Add for updating the IMA battery software. | 0.3 |
| D | Add for updating the A/T software. | 0.3 |

Failed Part: P/N 37820-RMX-A05
H/C 8939829

Defect Code: 07201

Symptom Code: 03237

Template ID: 09-058A

Skill Level: Repair Technician

**Out of warranty:** Any repair performed after warranty expiration may be eligible for goodwill consideration by the District Parts and Service Manager or your Zone Office. You must request consideration, and get a decision, before starting work.

© 2009 American Honda Motor Co., Inc. – All Rights Reserved

ATB 42057 (0907)

**1 of 2**

**Skill Level** **R** REPAIR

**CUSTOMER INFORMATION:** The information in this bulletin is intended for use only by skilled technicians who have the proper tools, equipment, and training to correctly and safely maintain your vehicle. These procedures should not be attempted by "do-it-yourselfers," and you should not assume this bulletin applies to your vehicle, or that your vehicle has the condition described. To determine whether this information applies, contact an authorized Honda automobile dealer.

**REPAIR PROCEDURE**

1. Update the PGM-FI, the A/T (CVT), and the IMA battery software with the HDS. Refer to Service Bulletin 01-023, *Updating Control Units/Modules.*

2. Do the CKP pattern learn procedure with the HDS:
   - In the ADJUSTMENT MENU of the HDS, select **CRANK PATTERN**.
   - Select **CRANK PATTERN LEARNING**, and follow the screen prompts.

3. Do the idle learn procedure:
   - Make sure all electrical accessories (A/C, radio, lights, etc.) are off.
   - Start the engine, and let it run until it reaches normal operating temperature (the cooling fans have cycled twice).
   - Let the engine idle for 10 minutes.

4. Select **START CLUTCH FEEDBACK LEARN** in the HDS, and follow the screen prompts to calibrate the start clutch pressure control.

5. Use the HDS to clear all DTCs from all systems.

09-058

# *Exhibit B*

 **HONDA** *Service Bulletin* **10-034** IMA

Applies To: **2006–08 Civic Hybrid** – ALL                                                    **July 23, 2010**

# Product Update: New Software to Help Prevent IMA Battery Deterioration

## BACKGROUND

American Honda is announcing a product update to help prevent IMA battery deterioration.

Frequent stop-and-go driving with A/C use, especially during warm weather, can keep the IMA battery in a low state-of-charge (SOC). Over time, this may cause battery deterioration and eventual failure.

## CUSTOMER NOTIFICATION

Owners of affected vehicles will be sent a notification of this product update. An example of the customer notification is at the end of this service bulletin.

To verify vehicle eligibility, check for at least one of these items:

- The customer has a notification letter.
- The vehicle is shown as eligible on a VIN status inquiry.

In addition, check for a punch mark below the fifth character of the engine compartment VIN. A punch mark in that location means this product update has already been completed.

Some of the vehicles affected by this product update may be in your used vehicle inventory. **These vehicles must be updated before they are sold or leased.** To see if a vehicle is affected by this campaign, do a VIN status inquiry before selling it or returning it to a service customer.

Should an unrepaired vehicle that was in inventory, or that came in for service after this service bulletin was issued, cause an injury or property damage because of the campaigned item, the dealership will be solely responsible to the damaged party, and will be required to defend and indemnify American Honda for any resulting claims.

## CORRECTIVE ACTION

Update the PGM-FI software and the IMA battery software with the HDS. Then, if needed, update the A/T (CVT) software.

NOTE: **This software update is needed even if the vehicle was repaired using Service Bulletin 09-058,** *Low-Charged IMA Battery Causes Low Power When Accelerating*. As with the previous software update, the new software increases the IMA battery rate of charge, which helps to prevent early battery deterioration.

## SOFTWARE INFORMATION

HDS Software Version:
2.022.101 (July 2010) (aqua) **or later**.

Control Module (CM) Update:
Database Update 02-JUL-2010 **or later**.

The updated PGM-FI, IMA battery, and A/T (CVT) software program IDs and P/Ns are shown below. If the HDS is loaded with the latest software, and it displays **No Update Needed** during the update, the software for this service bulletin is already installed.

| Year/Model/System | Program ID | Program P/N |
|---|---|---|
| 2006 Civic Hybrid PGM-FI | MXA630 | 37805-RMX-A63 (or later) |
| 2007–08 Civic Hybrid PGM-FI | MX3250 | 37805-RMX-325 (or later) |
| 2006–08 Civic Hybrid IMA Battery | MXA230 | 1K101-RMX-A23 (or later) |
| 2006 Civic Hybrid CVT | MXA560 | 37806-RMX-A56 (or later) |
| 2007–08 Civic Hybrid CVT | MX3050 | 37806-RMX-305 (or later) |

## WARRANTY CLAIM INFORMATION

NOTE: **This product update ends on July 30, 2013.** After that, any applicable warranty would apply.

| OP# | Description | FRT |
|---|---|---|
| 1255B2 | Update the PGM-FI software. | 0.3 |
| A | Add for updating the IMA battery software. | 0.3 |
| B | Add for updating the A/T software. | 0.3 |
| C | Add for start clutch learning. | 0.1 |
| D | Add for CKP learning. | 0.1 |
| E | Add for PCM idle learning. | 0.1 |

Failed Part:        P/N 1K100-RMX-A07

Defect Code:        5KC00

Symptom Code:       R4200

Skill Level:        Repair Technician

© 2010 American Honda Motor Co., Inc. – All Rights Reserved                   ATB 44563 (1007)                                                    **1 of 3**

 **Skill Level** **R** REPAIR

**CUSTOMER INFORMATION:** The information in this bulletin is intended for use only by skilled technicians who have the proper tools, equipment, and training to correctly and safely maintain your vehicle. These procedures should not be attempted by "do-it-yourselfers," and you should not assume this bulletin applies to your vehicle, or that your vehicle has the condition described. To determine whether this information applies, contact an authorized Honda automobile dealer.

## REPAIR PROCEDURE

NOTE: After you do the software update(s), the IMA system will have the following differences. All of them are normal operating characteristics:

- When at an auto idle stop, the engine restarts sooner. It also now restarts with only two bars displayed on the IMA battery level gauge.

- Even with up to four bars displayed on the IMA battery level gauge, auto idle stop may not occur.

- The IMA system reserves battery power to ensure enough power is available to start the vehicle from a stop and for initial acceleration. This reduces the IMA assist as the vehicle speed increases. This change increases the battery's stored energy and overall performance.

- The IMA battery level gauge more accurately indicates the battery's state-of-charge. Customers will also notice that the level bars stay in the middle of the gauge much longer.

1. Use the HDS to update the PGM-FI software. If needed, also update the IMA battery software and the A/T (CVT) software. For updating information, refer to Service Bulletin 01-023, *Updating Control Units/Modules.*

   NOTE: Three DTCs may be stored after the software is installed. These DTCs can be erased only after all updates (PGM-FI, A/T (CVT), and IMA battery) are completed. For more information on the three DTCs, refer to Service Bulletin 09-026, *2006–09 Civic Hybrid, 2010 Insight: New DTCs U0301, U0302, and U0312.*

2. Do the CKP pattern learn procedure with the HDS:

   - In the ADJUSTMENT MENU of the HDS, select CRANK PATTERN.

   - Select CRANK PATTERN LEARNING, and follow the screen prompts.

3. Do the idle learn procedure:

   - Make sure all electrical accessories (A/C, radio, lights, etc.) are off.

   - Start the engine, and let it run until it reaches normal operating temperature (the cooling fans have cycled twice).

   - Let the engine idle for 10 minutes.

4. If you updated the CVT software, select START CLUTCH FEEDBACK LEARN in the HDS, and follow the screen prompts to calibrate the start clutch pressure control.

5. If needed, use the HDS to clear all DTCs from all systems.

6. Center-punch a completion mark below the fifth character of the engine compartment VIN:

   - Slide open the FRAME NUMBER door on the center cowl cover.

   - Use a long punch to reach the VIN.



JHMFA3XXXXXXXXXXX

Center-punch here.

---

**Example of Customer Letter**

August 2010

### Product Update: New Software Is Needed for Integrated Motor Assist (IMA) Battery

Dear Civic Hybrid Owner:

This letter is to notify you of a potential problem with your vehicle and what you should do to resolve it.

**What is the problem?**
Your vehicle's integrated motor assist (IMA) battery may deteriorate and eventually fail before its normal usable life is reached. Frequent stop-and-go driving with A/C use during warm weather speeds up the IMA battery deterioration. **To help prevent early IMA battery deterioration, a software update is needed for the IMA battery.**

**What should you do?**
**Contact any authorized Honda dealer to schedule an appointment.** If you need help locating your local dealer, go to *automobiles.honda.com* or call Honda Automobile Customer Service at 800 999-1009. **The dealer will update the IMA battery software, free of charge.** Please plan to leave your vehicle at the dealer for half a day to allow some flexibility in scheduling. If you cannot leave your vehicle for half a day, please contact the dealer to discuss other options.

After your vehicle is updated, you may notice one or more of the following changes to the IMA system. All of them are normal, and will greatly improve the life of the IMA battery:

- When the vehicle is in auto idle stop, the engine restarts sooner. It also now restarts with only two bars displayed on the IMA battery level gauge.

- Even with up to four bars displayed on the IMA battery level gauge, auto idle stop may not occur.

- To ensure there's plenty of power for engine starting and accelerating from a stop, the IMA system reserves more battery power. This reduces the IMA assist as the vehicle speed increases.

- The IMA battery level gauge more accurately indicates the battery's state-of-charge. You will also notice that the level bars stay in the middle of the gauge much longer.

10-034

**What to do if you feel this notice is in error**
Our records show that you are the current owner or lessee of a 2006, 2007, or 2008 Civic Hybrid involved in this product update. If this is not the case, or the name/address information is not correct, please fill out and return the enclosed, postage-paid Information Change Card. We will then update our records.

**This product update ends on July 30, 2013.** After that, any applicable warranty would apply.

We apologize for any inconvenience this product update may cause you. Our goal is to ensure that your vehicle continues to be as reliable and enjoyable as possible.

Sincerely,

**American Honda Motor Co., Inc.**

**Honda Automobile Division**

July 23, 2010

Dear Service Manager:

Honda is announcing a product update campaign for 2006–08 Civic Hybrids.

Frequent stop-and-go driving with A/C use, especially during warm weather, can keep the IMA battery in a low state-of-charge (SOC). Over time, this may cause battery deterioration and eventual failure.

**Repair Strategy**
The repair is to update the IMA battery software and, if needed, the PGM-FI software and the CVT software. For repair and warranty information, refer to Service Bulletin 10-034, *Product Update: New Software to Help Prevent IMA Battery Deterioration.*

**Customer Notification**
Customers will be sent a notification of this campaign on July 30, 2010. Before beginning work on a vehicle, verify its eligibility by checking at least one of these items:

- The customer has a notification letter.
- The vehicle is shown as eligible on a VIN status inquiry.

Some vehicles affected by this product update may be in your used vehicle inventory. **These vehicles must be updated before they are sold.** To see if a vehicle is affected by this campaign, do a VIN status inquiry before selling it, leasing it, or returning it to a service customer.

Should an unrepaired vehicle that was in inventory, or that came in for service after this service bulletin was issued, cause an injury or property damage because of the campaigned item, the dealership will be solely responsible to the damaged party, and will be required to defend and indemnify American Honda for any resulting claims.

**Parts Information**
No parts are needed.

Sincerely,

**American Honda Motor Co., Inc.**
**Honda Automobile Division**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV12- 1193 PSG (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Steve W. Berman
Thomas E. Loeser (SBN 202724)
Hagens Berman Sobol Shapiro LLP
1918 Eighth Ave., Suite 3300
Seattle, WA 98101

COPY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| See Attachment A hereto | CASE NUMBER |
|---|---|
| PLAINTIFF(S)<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.<br><br>DEFENDANT(S). | CV 12 1193 ~PSG (FFM)<br><br>**SUMMONS** |

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Steve W. Berman & Thomas E. Loeser_, whose address is _Hagens Berman Sobol Shapiro LLP, 1918 8th Ave., Suite 3300, Seattle, WA 98101_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __FEB 10 2012__

By: _____
MARILYN DAVIS
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                    SUMMONS

**Attachment A to Summons**


JON REGO, CAROLINE KHRIPIN, RON BIERMANN, SR.,
LANI and TREVER BUTTON, husband and wife,
REBECCA and IAN SCHRADER, husband and wife,
STEPHEN PUSTELNIK, and all persons similarly situated

Plaintiffs,

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
JON REGO, CAROLINE KHRIPIN, RON BIERMANN, SR., LANI and TREVER BUTTON, husband and wife, REBECCA and IAN SCHRADER, husband and wife, STEPHEN PUSTELNIK, and all persons similarly situated

**DEFENDANTS**
AMERICAN HONDA MOTOR CO., INC.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Steve W. Berman, Thomas E. Loeser (SBN 202724)
Hagens Berman Sobol Shapiro LLP
1918 Eighth Ave., Suite 3300, Seattle, WA 98101 / (206) 623-7292

Attorneys (If Known)

COPY

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No      ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332 / Breach of Warranty and Contract

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☑ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: _____ **CV 12   1193**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No   ☑ Yes
If yes, list case number(s):  5:07-cv-287-VAP; 2:10-cv-6148-VAP; 2:10-cv-6236-VAP

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
                              ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Rego: Contra Costa County; Pustelnik: Santa Clara County; Khripin: Maryland; Biermann: North Carolina; Buttons: Oregon; Schraders: Florida |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | All other counties in California |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____     Date February 10, 2012

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |